
FILED
April 06, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002539961

Mitchell L. Abdallah, CSB #: 231804
1006 4th Street, 4th Floor
Sacramento, CA 95814
Telephone: 916-446-1974
Fax: 916-446-3371

Attorney for Debtor: Rickie Walker

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

In re:

RICKIE WALKER,

        Debtor.

_____/

Case No.: 10-21656

DCN: MLA-003
Chapter 11

Judge: Ronald H. Sargis
Date: May 20, 2010
Time: 10:30 a.m.
Place: Dept. E, Ctrm. 33
      501 I Street, 6th Flr.
      Sacramento, CA 95814

## MEMORANDUM IN SUPPORT OF OBJECTION TO PROOF OF CLAIM OF CITIBANK

Debtor Rickie Walker, by and through his undersigned counsel, submits this Memorandum in Support of his Objection to Proof of Claim of Citibank filed March 19, 2010 as Court Docket No. 49.

### SUMMARY

Debtor executed a promissory note payable to Bayrock Mortgage Corporation. The security interest is in the form of a Deed of Trust and it named Mortgage Electronic

Registration Systems, Inc. (hereafter "MERS") as the beneficiary of the Deed of Trust. Nothing in the record shows the current owner of the promissory note or its chain of title.

A number of documents were filed in the Placer County Recorder's Office relating to the Deed of Trust. No documents were filed relating to the promissory note, which Debtor has not seen since it was executed. Of the various documents filed in the recorder's office, including the Deed of Trust, one states that MERS is the beneficiary of the Deed of Trust, one states that EMC Mortgage Corporation is the beneficiary of the Deed of Trust, another suggests that a cryptically identified "investor" (CA-GTI) is the beneficiary of the Deed of Trust and another states that the Certificate holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-through Certificates Series 2007-3 are the beneficiary of the Deed of Trust. There is no recorded "Assignment of Deed of Trust". Additionally, the Deed of Trust carries on its face a particular loan number which subsequent documents have never correctly duplicated.

Statistically, Citibank has a 1 in 4 chance of being the beneficiary based on the documents in the recorders office. However, statistics are not how a true beneficiary should be determined, rather, that is based on the Note and the Note alone. In an attempt to support its claim to an interest in the Note, Citibank attaches to its Proof of Claim an Assignment of Deed of Trust purporting to transfer from Mortgage Electronic Registration Systems, Inc. (hereafter, "MERS") to Citibank its interest in said Note. However, MERS has no interest in the Note to transfer as described herein.

There can be no beneficial ownership in the Deed of Trust as it is nothing more than security for the promissory note. As such, MERS could not transfer any interest in the Deed of Trust to another. The only interest that exists in this mortgage loan is the beneficial interest in the promissory note and the record is deficient in demonstrating who that person is or who that person's agent, is any, is. The creditor has not demonstrated standing.

## BACKGROUND

1.  On November 21, 2006, Debtor executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of $1,076,250.00. (Exhibit A, Declaration of Rickie Walker, Attachment 1 thereto, page 1 and 2)(Note: all reference to "Attachments" is to the attachments of the Declaration of Rickie Walker) This document was filed as document number 2006-0125992-00 in the Placer County Recorder's Office. This document identifies the loan number as 010005958. The lender/payee of the promissory note is Bayrock Mortgage Corporation. (Attachment 1, page 1, para (C) and (F). Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for lender as the beneficiary of the security interest Deed of Trust. (Attachment 1, para. (E). The trustee under this Deed of Trust is Financial Title Co. (Attachment 1, para. D) Paragraph R provides in part "This Security Instrument secures to Lender: (i) the repayment of the Loan . . ." (Attachment 1, page 3, para. R) Paragraph 20 of the Deed of Trust provides "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. (Attachment 1, page 15, para. 20)

2.  On May 23, 2008, Document number 2008-0042464-00 (Notice of Default) was filed in the Placer County Recorder's Office. (Attachment 2 thereto, page 1) This document properly identifies the amount of the mortgage loan that debtor obtained on November 22, 2006, but it identifies the Deed of Trust as being document number 2006-0125993-00, when the Deed of Trust Debtor signed was 2006-0125992-00. It also identifies the loan as 0020962502 when Debtor's loan number is 010005958. This document now names the current beneficiary as EMC Mortgage Corporation. Contrarily, the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search indicates that EMC Mortgage Corporation is the servicer. (Attachment 2, page 3) This document was not executed by the Trustee, nor was there a substitution of trustee filed.

3.  The May 23, 2008 Notice of Default was rescinded by the filing in the Placer County Recorder's Office of Document number 2008-0047089-00. (Attachment 3) This document no longer names EMC Mortgage Corporation as the beneficiary, but instead names MERS as

the beneficiary. (Attachment 3) This document was not executed by the Trustee, nor was there a substitution of trustee filed.

4. On June 3, 2008, another Notice of Default was filed, this one as document number 2008-0045036-00 in the Placer County Recorder's Office. (Attachment 4) This document provides notice that the person or entity who signed it is utterly unsure of the capacity in which it was executed - "NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 11/21/2006, executed by Rickie Walker, . . .".(Attachment 4, page 2) This document was not executed by the Trustee, nor was there a substitution of trustee filed.

5. On July 7, 2008, a Substitution of Trustee was filed as document number 2008-0054639-00 in the Placer County Recorder's Office. (Attachment 5) This document, like the Deed of Trust, states that MERS was the beneficiary under the Deed of Trust – it does not state that MERS was the beneficiary under the promissory note. This document properly identifies the amount of the mortgage loan that debtor obtained on November 22, 2006, but it identifies the Deed of Trust as being document number 2006-0125993-00, when the Deed of Trust Debtor signed was 2006-0125992-00. It also identifies the loan as 0020962502 when Debtor's loan number is 010005958. This document purports to be executed by MERS.

6. On August 29, 2008, another Substitution of Trustee was filed as document number 2008-0069961-00 in the Placer County Recorder's Office. (Attachment 6) This document references the Deed of Trust the Debtor signed (2006-0125992-00), but it again misstates the loan number as 0020962502. This document purports to be executed by MERS, who substitutes Quality Loan Service Corporation as trustee. (Attachment 6)

7. On September 5, 2008, a Notice of Trustee's Sale was filed as document number 2008-0071581-00. (Attachment 7)

8. On September 3, 2009, a Rescission of Notice of Default was filed as document number 2009-0077151-00 in the Placer County Recorder's Office. (Attachment 8) This document rescinds the June 3, 2008 Notice of Default. This document also indicates that the true beneficiary is an "investor" with the identification number of 0020962502.

9. On December 10, 2009, a Notice of Default was filed as document number 2009-0105268-00. (Attachment 9) This document indicates that it was ordered not by MERS but by CA-GTI as order number 090836866. (Attachment 9, page 1) It also references EMC Mortgage Corporation again, but it does not state that entity is the beneficiary.

10. On December 16, 2009, Debtor received another Substitution of Trustee. This time the document was not executed by MERS but instead was executed by Citibank, N.A. As Trustee for the Certificate holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-through Certificates Series 2007-3, by EMC Mortgage Corporation as Attorney in Fact. (Attachment 10)

## ARGUMENTS

### A. STANDING

Stay-relief requests are governed by FED. R. BANKR. P. 4001(a)(1), to which FED. R. Bankr. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017, which makes FED. R. Civ. P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest.";). The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128-29, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2D 343 (1975)).

Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. (Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)(citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). As a prudential matter, a

plaintiff must assert "his own legal interests as the real party in interest". (Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest.")

In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At page 10) the Court found that "MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation." In *In re Maisel*, the Bankruptcy Court for the District of Massachusetts found that a lender did not have standing to seek relief from the automatic stay because it did not have an interest in the property at the time it filed its motion for relief. 378 B.R. 19, 22 (2007)

### B. ARGUMENTS

#### 1. THE PROMISSORY NOTE EVIDENCES THE REAL PARTY IN INTEREST, AND THAT PARTY IS NOT MERS OR CITIBANK

Transfers of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.). In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalidated as a fraudulent conveyance (under Civil Code § 3440), and a transfer in pledge could be invalidated as an unperfected (under Com Code §§ 9313-9314). (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26) One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose *ab initio*. (Watkins v. Bryant (1891) 91C 492, 27 P 77)

The Note in this case is not a bearer instrument, but is an instrument payable to a specifically identified person. California Com. Code section 3109 states:

(a) A promise or order is payable to bearer if it is any of the following:

(1) States that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment.
(2) Does not state a payee.

(3) States that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

(b) A promise or order that is not payable to bearer is payable to order if it is payable (1) to the order of an identified person or (2) to an identified person or order. A promise or order that is payable to order is payable to the identified person.

(c) An instrument payable to bearer may become payable to an identified person if it is specially indorsed pursuant to subdivision (a) of Section 3205. An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to subdivision (b) of Section 3205.

A promissory note that is payable to a specifically identified person is not transferred merely by possession, instead, transfer requires that it be indorsed. California Com. Code 3201 states:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

An endorsement is not made by purchasing a note, or by purchasing a debt, or by an assignment, instead, an endorsement is made by the signature of the specifically identified person to whom the note is owed. California Com. Code section 3204 states:

(a) "Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument, (2) restricting payment of the instrument, or (3) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

(b) "Endorser" means a person who makes an endorsement.

(c) For the purpose of determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument.

(d)If an instrument is payable to a holder under a name that is not the name of the holder, endorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

If one bought a note and intends to enforce it, but the note does not carry the endorsement of the payee, that person can bring an action in court to specifically enforce the right to an endorsement. Then, once that is done, the creditor can enforce the note against its maker. California Com. Code section3203 states:

(a)An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b)Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c)Unless otherwise agreed, if an instrument is transferred for value and the transferee \ does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d)If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.

The promissory note in this case was made payable to Bayrock Mortgage Corporation. No record document suggests that it has been indorsed to MERS or any other named entity. The Deed of Trust states that MERS is the beneficiary of it. No record document suggests that MERS transferred its beneficial interest in the Deed of Trust; however, record documents do suggest that other entities claim an interest in the Deed of Trust, one of which being the Certificate holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-through Certificates Series 2007-3, another being EMC Mortgage Corporation and another being CA-GTI.

## 2. MERS HELD NO ENFORCEABLE BENEFICIAL INTEREST AND COULD NOT PASS ANY SUCH INTEREST TO CITIBANK

Citibank's interests – if any - flow from MERS interests. CitiBank ignores the plain language of the mortgage that names MERS as a nominee:

> (E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. (Attachment 1, Deed of Trust)

Therefore, if CitiBank is going to demonstrate an equitable assignment of the note, it must first show that MERS had rights to the unendorsed Note which it could assign to CitiBank. However, the terms and provisions of the MERS mortgage expressly refute the notion that MERS owned or held the note at inception. The mortgage was not countersigned by the original note holder/lender (Bayrock) such as to give MERS any rights or interests in the note. As well the Note itself admits of no rights or interests in MERS. Only the Debtor signed the mortgage and it is indisputable that he cannot award, grant or otherwise deign to transfer the rights of his obligee, the note holder, to another. Indeed, the mortgage granted no power or authority to MERS (a mere nominee holding only the lien, not the note) to sell or transfer the note or mortgage or to assign its duties as nominee.

Since the Note was not indorsed to CitiBank, CitiBank didn't take the Note pursuant to negotiation under the UCC. That left CitiBank with taking whatever rights MERS had by the Assignment of Mortgage from MERS to CitiBank. MERS could not assign any greater rights to CitiBank than MERS had.

In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying

existing obligation. (Hensley v. Hotaling (1871) 41 C 22; Turner v. Gosden (1932) 121 CA 20, 8 P. 2d 505; Lee v. Joseph (1968) 267 CA2d 30, 72 CR 471) It is impossible to define security apart from its relationship to the promise or obligation it secures. (Civil Code §§ 2872, 2909, 2920; California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, § 1.11) The obligation and the security are commonly drafted as separate documents - typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. (Civil Code § 2936; Seidell v. Tuxedo Land Co. (1932) 216 c 165, 13 P.2d 686. Lewis v. Booth (1935) 3 C.2d 345, 44 P.2d 560) (endorsement of note transferred deed of trust). If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw (1952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30 C 685)

Consequently, when one transferee receives the note and another receives the deed of trust, the one holding the note prevails, regardless of who first received a transfer. Adler v. Sargent (1895) 109 C. 42, 41 P. 799. (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.25)

Transfers of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.) In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalidated as a fraudulent conveyance (under Civil Code § 3440), and a transfer in pledge could be invalidated as unperfected (under Com Code §§ 9313-9314). (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26) One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose *ab initio*. (Watkins v. Bryant (1891) 91C 492, 27 P 77)

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000); In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At

page 12) MERS website admits at pages 10, 20, 22, 26, 34, 38, 40, 42, 44, 46, 62, 68, 72, 76, 78, 88, 89, 99:

> MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will be the ultimate owner of the note. (fn)
>
> Foot Note:
> Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

In the consolidated cases of In re Foreclosure Cases, 521 F. Supp. 2D 650, 653 (S.D. Oh. 2007), a standing challenge was made and the Court found that there was no evidence of record that New Century ever assigned to MERS the promissory note or otherwise gave MERS the authority to assign the note. Beginning with this case, courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

In LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp. 2006), the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage. In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009), the Court stated "In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under state law to act for the note's holder." (At page 9) The Court found that MERS has no ownership interest in the promissory note. The Court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, it in fact is not a beneficiary. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talks like a duck, and quack like a duck, then it's not a duck." (At page 7) MERS Terms and Conditions say this:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged

properties securing such mortgage loans. MERS agrees not to assert any
rights (other than rights specified in the Governing Documents) with respect
to such mortgage loans or mortgaged properties. References herein to
"mortgage(s)" and "mortgagee of record" shall include deed(s) of trust
and beneficiary under a deed of trust and any other form of security
instrument under applicable state law.

In the case of In re Vargas, 396 B.R. 511, 520 (Bankr.C.D.Cal., 2008), the Court stated:

MERS is not in the business of holding promissory notes. (fn 10: MERS,
Inc. is an entity whose sole purpose is to act as mortgagee of record for
mortgage loans that are registered on the MERS System. This system is
a national electronic registry of mortgage loans, itself owned and operated by
MERS, Inc.'s parent company, MERSCORP, Inc.)

In the case of In re Sheridan, Case No. 08-20381-TLM (Bankr.Idaho, 2009) MERS moved for relief from the stay. The Court stated that MERS "Counsel conceded that MERS is not an economic "beneficiary" under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid." The Court stated "Further, the Deed of Trust's designation of MERS as "beneficiary" is coupled with an explanation that "MERS is . . . acting *solely* as nominee for Lender and Lender's successors and assigns." The Court stated "Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative."

In Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the facts in that case and other non-binding court cases and concluded that MERS is only a digital mortgage tracking service. (At page 168) The Court recited that MERS never held the promissory note, did not own the mortgage instrument (though the documents identified it as "mortgagee"), that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan.

Christopher L. Peterson, Associate Professor of Law, University of Florida, testified at a hearing before the U.S. Senate Committee on Banking, Housing, and Urban Affairs Subcommittee on Securities, Insurance, and Investment and stated:[1]

> MERS is merely a document custodian. . . . The system itself electronically tracks ownership and servicing rights of mortgages. . . . The parties obtain two principal benefits from attempting to use MERS as a "mortgagee of record in nominee capacity." First, under state secured credit laws, when a mortgage is assigned, the assignee must record the assignment with the county recording office, or risk losing priority vis-à-vis other creditors, buyers, or lienors. Most counties charge a fee to record the assignment, and use these fees to cover the cost of maintaining the real property records. Some counties also use recording fees to fund their court systems, legal aid organizations, or schools. In this respect, MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool. By paying MERS a fee, the parties to a securitization lower their operating costs. The second advantage MERS offers its customers comes later when homeowners fall behind on their monthly payments. In addition to its document custodial role, and its tax evasive role, MERS also frequently attempts to bring home foreclosure proceedings in its own name. This eliminates the need for the trust—which actually owns the loan—to foreclose in its own name, or to reassign the loan to a servicer or the originator to bring the foreclosure.

R.K. Arnold, Senior Vice President, General Counsel and Secretary of Mortgage Electronic Registration Systems, Inc., stated:

> MERS® will act as mortgagee of record for any mortgage loan registered on the computer system MERS® maintains, called the MERS® System. It will then track servicing rights and beneficial ownership interests in those loans and provide a platform for mortgage servicing rights to be traded electronically among its members without the need to record a mortgage assignment in the public land records each time. . . . Members pay annual fees to belong and transaction fees to execute electronic transactions on the MERS® System. . . . A mortgage note holder can sell a mortgage note to another in what has become a gigantic secondary market. . . . For these servicing companies to perform their duties satisfactorily, the note and mortgage were bifurcated. The investor or its designee held the note and named the servicing company as mortgagee, a structure that became standard. . . . When a mortgage loan is registered on the MERS® System, it receives a mortgage identification number (MIN). The borrower executes a traditional paper mortgage naming the lender as mortgagee, and the lender executes an assignment of the mortgage to MERS®. Both documents are executed according to state law and recorded in the public land records, making MERS® the mortgagee of record. From that

---

[1] Subprime Mortgage Market Turmoil: Examining the Role of Securitization, http://banking.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=4f40e1b9-ec5b-4752-ba8f-0c14afc44884. (At page 6 -8)

point on, no additional mortgage assignments will be recorded because MERS® will remain the mortgagee of record throughout the life of the loan. . . . MERS® keeps track of the new servicer electronically and acts as nominee for the servicing companies and investors. Because MERS® remains the mortgagee of record in the public land records throughout the life of a loan, it eliminates the need to record later assignments in the public land records. Usually, legal title to the property is not affected again until the loan is paid and the mortgage is released. (R.K. Arnold, *Yes, There is Life on MERS*, Prob.& Prop., Aug. 1997, at p.16; http://www.abanet.org/genpractice/magazine/1998/spring-bos/arnold.html)

Courts around this country are clearly recognizing that MERS is not an owner of the promissory note and that it is also only a mortgagee in name alone and have no beneficial interest in the mortgage instrument. Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009); Mortgage Electronic Registration System, Inc. v. Southwest Homes of Arkansas, 08-1299 (Ark. 3/19/2009) (Ark., 2009)

## CONCLUSION

Debtor does not contend that he didn't obtain a mortgage loan. Debtor contends that the real party in interest has not come forward and the creditor lacks standing.

Dated: April 5, 2010

MITCHELL L. ABDALLAH
Attorney for Debtor
RICKIE WALKER