MITCHELL L. ABDALLAH, #231804

ABDALLAH LAW GROUP
1006 4TH STREET, 4TH FLOOR
SACRAMENTO, CA 95814
TEL:/ (916) 446-1974
FAX:/ (916) 446-3371
MITCH@ABDALLAHLAW.NET

Attorneys for Debtors:
RICKIE WALKER

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

**RICKIE WALKER,**

Debtors.

**Case No. 2010-21656-E-11**

## RICKIE WALKER'S DISCLOSURE STATEMENT
## TO PLAN OF REORGANIZATION DATED OCTOBER 22, 2010

### I. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of RICKIE WALKER (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the RICKIE WALKER Plan of Reorganization dated October 22, 2010 (the "Plan") filed by the Debtors on October 25, 2010. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** The proposed distributions under the Plan are discussed at pages 6-10 of this Disclosure Statement. General unsecured creditors are classified in Class 3, and will receive a distribution of approximately 5.26% of their allowed claims, to be distributed as follows: entire monthly plan payment of $921.00 will be paid to class 3 claims of unsecured debtors.

- 1 -

## A. **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims or equity interests of the type you hold *(i.e.,* what you will receive on your claim or equity interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B. **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1. Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether the Plan will take place **on**

_____, at _____ \_\_.m. in Department E of the United States Courthouse, **located at 501 I Street, Courtroom 33, California.**

*2. Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the Abdallah Law Group Attn: Mitchell Abdallah, 1006 4th Street, 4th Floor, Sacramento, CA 95814.   See section IV. A. below for a discussion of voting eligibility requirements.

Your ballot must be received **by** _____ **or** it will not be counted.

3. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Mitchell Abdallah, Abdallah Law Group, 1006 4th Street, 4th Floor Sacramento, CA (916) 446-1974.

C. **Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be*

*accepted.*

## II. BACKGROUND

A. **Description and History of the Debtors**

The Debtor is an individual. Debtor has owned a janitorial service for the past 7 years. Due to the economic downturn, several of Debtor's janitorial contracts with commercial buildings were terminated. As a result, Debtor was left without any contract or employment opportunities for more than 2 years. Currently, Debtor has contracted with 3 new commercial buildings and is successfully rebuilding his janitorial business. Debtor expects to increase his contractual work to at least 5 commercial contracts within the next 6 months.

Since the economy is now arguably on the upswing, and debtor is an experienced, qualified janitor, Debtor should not experience any other lengthy gaps in work. Additionally, Debtor continues to receive contribution to support his household from his non-debtor spouse.

B. **Management of the Debtor Before and During the Bankruptcy**

RICKIE WALKER'S DISCLOSURE STATEMENT

Debtor, Rickie Walker managed the estate prior to the bankruptcy filing and he will continue to manage the Debtor's estate. Debtor's proposed plan will provide sufficient revenue to make the proposed plan payments.

## C. Events Leading to Chapter 11 Filing

The significant events leading to the Chapter 11 filing were disputed secured and unsecured debt that continued to accrue in the years following debtor's unemployment and prior to filing the case. What is more, Debtor disputed the right of his secured lenders to receive the stated mortgage payments. As a result, Debtor elected not to pay the disputed secured mortgages for either of his real properties located at 3830 Whitney Oaks Drive, Rocklin, California 95765 and 1518 Michael Drive, Tracy, California 95377 respectively.

Debtor executed a Note payable to Bayrock Mortgage, Inc.. The security interest is in the form of a Deed of Trust and it named Mortgage Electronic Registry System, Inc. (hereafter "MERS") as the beneficiary of the Deed of Trust. Nothing in the record shows the current owner of the Note or its chain of title.

A number of documents were filed in the Placer County Recorder's Office relating to the Deed of Trust. No documents were filed relating to the Note, which Debtor has not seen since it was executed. Of the various documents filed in the recorder's office, including the Deed of Trust, one states that MERS is the beneficiary of the Deed of Trust, one states that EMC is the beneficiary of the Deed of Trust; another suggests that a cryptically identified "investor" CA-GTI is the beneficiary of the Deed of Trust; and yet another states that the Certificate holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-through Certificates Series 2007-3 are the beneficiary of the Deed of Trust. There is no recorded "Assignment of Deed of Trust." Additionally, the Deed of Trust carries on its face a particular loan number which subsequent documents have never correctly duplicated.

Statistically, CITI has a 1 in 4 chance of being the beneficiary based on the documents in the Recorder's Office. However, statistics are not how a true beneficiary should be determined; rather, that is based on the Note and the Note alone.

## D. Significant Events During the Bankruptcy

In an attempt to support its claim to an interest in the Note CITI filed a proof of claim to the Bankruptcy court #0002497618 asserting that it is the entity secured to the promissory note

- 4 -

and is entitled to all the benefits thereto pursuant to an Assignment of Deed of Trust purporting to transfer from MERS to CITI its interest in said Note. However, the Court was convinced after reading Debtor's moving papers, and ruled on May 17, 2010, to sustain Debtor's objection and disallow CITI's claim in its entirety. What is more, the owner of the Note never stepped up to file a claim by June 18, 2010 as required in the Court's ruling. CITI provided nothing to the Court.

CITI has utterly failed to provide a scintilla of evidence that it has standing to pursue its claim under the Note. To be sure, there can be no beneficial ownership in the Deed of Trust as it is nothing more than security for the Note. As such, MERS could not and obviously did not transfer any interest in the Deed of Trust to another. The only interest that exists in the mortgage loan is the beneficial interest in the Note and the record is completely deficient in demonstrating who is that person or person's agent.

Under California Law, a person entitled to enforce an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 (Cal.Com.Code § 3301). A person qualifies as the holder of a note if the note is in the person's possession and is payable to the person (See Cal.Com.Code § 1201(21)(a)). There is nothing in the record whatsoever to support that CITI is the holder of the Note. In fact, CITI filed a proof of claim based on the Note, but this court ruled that CITI had not established that it is the owner of the note, and ruled that CITI had no standing to assert a proof of claim for lack of an interest in the property. Since this ruling, CITI has failed to come forward with proof of ownership of the note.

CITI has made no claim that it is in possession of the Note, but states that it is "entitled" to possession of the note. CITI's empty and conclusory statement of entitlement has no meaning whatsoever it establishing that it has an interest in the property. Section 3309 of the California Commercial Code provides:

a) A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument

- 5 -

because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

b) A person seeking enforcement of an instrument under subdivision (a) shall prove the terms of the instrument and the person's right to enforce the instrument.

Not only has CITI been unable to provide proof of ownership of the Note, there is no evidence that CITI was ever in possession of the Note or that the Note was lost or destroyed.

This court, in sustaining the objection to CITI's proof of claim, allowed until June 18, 2010 for any party claiming to be the owner of the Note to come forward. To this date, no other party has come forward as the owner of the Note. CITI remains the only party to come forward with a claim of ownership. The last entity known to have ownership of the Note was Bayrock Mortgage Inc., who is no longer in business.

Because there is nothing in the record showing the true owner of the Note, and the only party claiming ownership, CITI, has been unable to prove ownership of the note, and because no other entity has come forward by the court imposed deadline, the Note should be extinguished and title should be quieted to the debtor.

The fact that CITI has been unable to provide proof of ownership of the Note has not prevented them from attempting to claim an interest in the subject property. CITI also claims an interest based on the assignment of the deed of trust by Mortgage Electronic Registry System, Inc. to CITI. The law is well settled in that the mortgage or deed of trust follows the note, not the other way around. *Hill v. Favour, 52 Ariz. 561, 568 (1938).* "[T]he mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note. The mortgage goes with the note. If the latter is transferred or assigned, the mortgage automatically goes along with the assignment or transfer." *Ord v. McKee, 5 Cal. 515, 516 (1855).* At no time was MERS ever the holder of the Note. MERS was simply a "nominee" for the deed of trust. MERS never had an interest that was assignable to CITI, or anyone else. The assignment by MERS to CITI was a nullity. "A mortgage is a conveyance within the meaning of the record laws of this state, though it is a conveyance of a chattel interest only. Title to it passes to an assignee by assignment of the debt or obligation secured by it; for the mortgage is but an incident-a security-and, independent of the debt, has no

assignable quality. Such assignment is a mere nullity". *National Bank of Saco v. Vagg, 65 Mont. 34, 212 P. 509, 510.* "[A]n assignment of the mortgage alone, without the debt, is nugatory, and confers no rights whatever upon the assignee". *Nagle v. Macy, 9 Cal. 426.*

Even if CITI was in possession of the deed of trust, absent possession of the Note they would have no interest in the property. As the law is clear in that the deed of trust always follows the Note, CITI cannot rely on the assignment of the deed of trust to support their claim of an interest in the property.

As is the case with the Note, there has been no entity other than CITI to claim an interest in the subject property. It makes no difference whether the deed of trust is in the hands of MERS, or has been transferred to CITI. Only the owner of the Note is entitled to come forward to prove an interest in the subject property.

In conclusion, none of the adverse parties, or any other entity has come forward with proof of ownership of the Note, and only the owner of the Note is entitled to its enforcement. This court previously ruled that CITI, the only adverse party to assert a claim for payment, had not established that it is the owner of the Note, and sustained the objection to its proof of claim. In doing so, the court allowed until June 18, 2010 for the actual owner of the Note to come forward with its claim. No such person has come forward.

It is only the holder of the Note who is entitled to its enforcement. Having possession of the deed of trust means nothing without also having possession of the Note. The transfer of the deed of trust by MERS to CITI did nothing more to establish CITI's interest in the subject property.

For the reasons discussed above, title to the subject property should be quieted to the debtors, and the Chapter 11 bankruptcy plan should be confirmed without consideration of the proof of claim filed by CITI.

E. **Projected Recovery of Avoidable**

The Debtor does intend to pursue preference, fraudulent conveyance, or other avoidance actions.

F. **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting

RICKIE WALKER'S DISCLOSURE STATEMENT

purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan. Debtors or any party in interest will have 90 days from the effective date of the Plan to object to any claim.

## G. **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit B. The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.

## III. SUMMARY OF THE PLAN OF REORGANIZATION

## A. **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

////

////

////

## B. **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with what is required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

## *1. Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter

11 case which are allowed under § 507(a)(2) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan.

| Type | Estimate of Amount Owed | Treatment |
|------|-------------------------|-----------|
| Expenses arising in the Ordinary course of Business After the Petition Date | Estimated current at confirmation | Paid in full on effective date of the plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court | Estimated to be $15,000.00 or less | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. Counsel for the Debtor received a significant retainer prior to filing which will likely pay his fees. |
| Clerk's Office Fees | Estimated None | Paid in full on the effective date of the plan. |
| Other Administrative Expenses | Estimated None | Paid in full on the effective date of the plan or according to separate written agreement. |
| Office of the United States Trustee Fees | Estimated current at confirmation | Paid in full on the effective date of the plan. |
| Total | $15,000.00 | |

1 *2. Priority Tax Claims*

2   Priority tax claims are unsecured income, employment, and other taxes described by

3 § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise,

4 it must receive the present value of such claim, in regular installments paid over a period not

5 exceeding 5 years from the order of relief. The Debtor believes that there are no priority tax claims

6 owing in this case.

7

8 *3. Priority Claims*

9   There are no known Class 1 priority claims owing in this case.

10

11 C. **Classes of Claims and Equity Interests**

12   The following are the classes set forth in the Plan, and the proposed treatment that they will

13 receive under the Plan:

14

15 Class 2. Secured claims. Currently, no secured claims exist.

16

17 Class 3. Includes all unsecured claims allowed under § 502 of the Code. There are unsecured claims

18 in the approximate amount of $1,050,334.00. Debtor proposes to pay creditor in this class a total of

19 $55,260.00 or a dividend amount of 5.26% of their total claims.

20

21 Class 4. Equity interests of the Debtor.

22

23 **D. Means of Implementing the Plan**

24 1. *Source of Payments*

25   Payments and distributions under the Plan will be funded by the following:

26 Debtor will fund Plan payments from his business income, rents received, and household

27 contributions from non-debtor spouse. Funds shall first be used to pay U. S. Trustee fees, allowed

28

RICKIE WALKER'S DISCLOSURE STATEMENT

administrative priority claims, secured creditor payments and then distributed pro rata to general unsecured claims on a monthly basis.

2. *Post-confirmation Management*

Rickie Walker will continue to earn income from his janitorial business. His income coupled with rental income and non-debtor spouse contribution will be the source of payments under the Plan.

E. Risk Factors

The proposed Plan has the following risks:

Rickie Walker has current janitorial clients who are not contractually liable to maintain their agreements. Therefore, Debtor does face the potential risk of terminated contracts and loss of income.

/////

/////

/////

F. Executory Contracts and Unexpired Leases

There are no executory contracts or unexpired leases provided for in the plan. As such, all other executory contracts and unexpired leases (if any) will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the*

*Rejection of a Lease or Contract is sixty days following Plan Confirmation.* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

RICKIE WALKER'S DISCLOSURE STATEMENT

G. Tax Consequences of Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect*
*Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or*
*Advisors.*

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of
the Code. These include the requirements that: the Plan must be proposed in good faith; at
least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan
must distribute to each creditor and equity interest holder at least as much as the creditor or equity
interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest
holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only
requirements listed in § 1129, and they are not the only
requirements for confirmation.

A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the
requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.
A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or
equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting
purposes and (2) impaired.

In this case, the Plan Proponent believes that class 3 is impaired and that holders of claims in
this class is therefore entitled to vote to accept or reject the Plan.

RICKIE WALKER'S DISCLOSURE STATEMENT

1

2      1. *What Is an Allowed Claim or an Allowed Equity Interest*

3 Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the

4 right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has

5 scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed,

6 contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an

7 objection has been filed to such proof of claim or equity interest. When a claim or equity interest is

8 not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote

9 unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity

10 interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

11

12 *The deadline for filing a proof of claim in this case was June 2, 2010.*

13 ////

14 ////

15 2. *What Is an Impaired Claim or Impaired Equity Interest*

16  As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in

17 a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered

18 impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

19

20 3. *Who is Not Entitled to Vote?*

21

22 The holders of the following five types of claims and equity interests are *not* entitled to vote: •

23 holders of claims and equity interests that have been disallowed by an order of the Court; • holders

24 of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as

25 discussed above), unless they have been "allowed" for voting purposes;

26 • holders of claims or equity interests in unimpaired classes;

27 • holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

28

1  • holders of claims or equity interests in classes that do not receive or retain any value under the

2  Plan; and

3  • Administrative expenses.

4

5  *Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of*

6  *the Plan.*

7

8  4. *Who Can Vote in More Than One Class*

9       A creditor whose claim has been allowed in part as a secured claim and in part as an

10  unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a

11  Plan in each capacity, and should cast one ballot for each claim.

12

13  B. Votes Necessary to Confirm the Plan

14       If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired

15  class of creditors has accepted the Plan without counting the votes of any insiders within that class,

16  and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed

17  by a cram down on non-accepting classes, as discussed later in Section B.2.

18

19  1. *Votes Necessary for a Class to Accept the Plan*

20

21       A class of claims accepts the Plan if both of the following occur: (1) the holders of more than

22  one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2)

23  the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote,

24  cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at

25  least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes

26  to accept the Plan.

27

28

- 14 -

1    *2. Treatment of Nonaccepting Classes*

2          Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the

3    Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A

4    plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code

5    allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the

6    requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the

7    Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that

8    has not voted to accept the Plan.

9

10    *You should consult your own attorney if a cram down confirmation will affect your claim or equity*

11    *interest, as the variations on this general rule are numerous and complex.*

12    C. Liquidation Analysis

13          To confirm the Plan, the Court must find that all creditors and equity interest holders who do

14    not accept the Plan will receive at least as much under the Plan as such claim and equity interest

15    holders would receive in a chapter 7 liquidation.

16

17    D. Feasibility

18          The Court must find that confirmation of the Plan is not likely to be followed by the

19    liquidation, or the need for further financial reorganization, of the Debtor or any successor to

20    the Debtor, unless such liquidation or reorganization is proposed in the Plan.

21

22    *1. Ability to Initially Fund*

23          The Plan Proponent believes that the Debtor will have enough cash on hand on the effective

24    date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

25

26    *2. Ability to Make Future Plan Payments and Operate Without Further Reorganization*

27          The Plan Proponent must also show that it will have enough cash over the life of the

28

1  Plan to make the required Plan payments.

2

3  *You Should Consult with Your Accountant or other Financial Advisor If You Have*

4  *Any Questions Pertaining to These Projections.*

5

6  V. EFFECT OF CONFIRMATION OF PLAN

7

8  A. DISCHARGE OF DEBTOR

9

10  Discharge. Confirmation of this Plan does not discharge any debt provided for in this

11  Plan until the court grants a discharge on completion of all payments under this Plan, or as

12  otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any

13  debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the

14  Federal Rules of Bankruptcy Procedure.

15

16  B. **Modification of Plan**

17  The Plan Proponent may modify the Plan at any time before confirmation of the Plan.

18  However, the Court may require a new disclosure statement and/or revoting on the Plan.

19  The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

20  (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed

21  modifications after notice and a hearing.

22

23  C. **Final Decree**

24  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of

25  Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the

26  Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

27  Alternatively, the Court may enter such a final decree on its own motion.

28

Respectfully submitted,

Dated: October 22, 2010

_Rickie Walker_ (signature)

RICKIE WALKER, Debtor and
Plan Proponent

Dated:  October 22, 2010

ABDALLAH LAW GROUP

(signature)

Digitally signed by Mitchell
Abdallah
DN: cn=Mitchell Abdallah,
o=ABDALLAH LAW GROUP,
ou=Attorney,
email=mitch@abdallahlaw.n
et, c=US
Date: 2010.10.25 18:14:04
-07'00'

MITCHELL L. ABDALLAH
COUNSEL FOR DEBTOR

**EXHIBITS**

**Exhibit A** – Copy of Proposed Plan of Reorganization

RICKIE WALKER'S DISCLOSURE STATEMENT

1  MITCHELL L. ABDALLAH, #231804
2  ABDALLAH LAW GROUP
   1006 4ᵀᴴ STREET, 4ᵀᴴ FLOOR
   SACRAMENTO, CA 95814
3  TEL:/ (916) 446-1974
   FAX:/ (916) 446-3371
   MITCH@ABDALLAHLAW.NET
4
5  Attorneys for Debtors:
   Rickie Walker
6
7
              UNITED STATES BANKRUPTCY COURT
8
              EASTERN DISTRICT OF CALIFORNIA
9
10 In re:                              Case No. 2010-21656-E-11
11 **Rickie Walker,**
12
   Debtors.
13

14 **RICKIE WALKER'S PLAN OF REORGANIZATION, DATED OCTOBER 22, 2010**

15                          **ARTICLE I**

16                          **SUMMARY**
17

18     This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the

19 "Code") proposes to pay creditors of RICKIE WALKER ("Debtor") from future income.

20     This Plan provides for a one class of secured claims, one class of unsecured claims and one

21 class of equity security holders.  Unsecured creditors holding allowed claims will receive

22 distributions, which the proponent of this Plan has valued at approximately 5.26 cents on the dollar.

23 All administrative claims will be provided for through this plan.

24     All creditors should refer to Articles III through VI of this Plan for information regarding the

25 precise treatment of their claim.  A disclosure statement that provides more detailed information

26 regarding this Plan and the rights of creditors has been circulated with this Plan.  **Your rights may**

27

28

-1-

be affected. **You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01** **Class 1.** All allowed claims entitled to priority under §507 of the Code (except administrative expense claims under §507(a)(2), and priority tax claims under §507(a)(8)).

**2.02** **Class 2.** All secured claims to the extent allowed as a secured claim under §506 of the Code.

**2.03** **Class 3.** All unsecured claims allowed under the §502 of the Code.

**2.04** **Class 4.** The interests of the individual Debtor in property of the estate.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

**3.01** Unclassified Claims. Under section§1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**3.02** Administrative Expense Claims. Each holder of an administrative expense claim allowed under §502(f) of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

**3.03** Priority Tax Claims. Each holder of a priority tax claim will be paid consistent with the terms of §1129(a)(9)(C) of the Code. Although, there are currently no priority tax claims owed by the Debtors.

**3.04** United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed or converted to

another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01** Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1- Priority Claims | Un-impaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash , upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – Secured Claim | Un-impaired | Class 2 is unimpaired by this Plan, and each holder of a Class 2 Secured Claim will be paid in full. Currently, there are no secured claims in this class. |
| Class 3- General Unsecured Creditors | Impaired | Class 3 claims are impaired. Each holder of an alleged Class 3 claim will receive a monthly pro-rata distribution after payment of secured claims and administrative priority claims including U.S. Trustee Fees, allowed professional fees and expenses including the fees of the Debtor's counsel. The payments estimated to be approximately 5.26% of claims will be completed within 60 months of Plan confirmation. The debtors reserve the right to accelerate payments and conclude payments in less than 60 months. |
| Class 4 – Equity Security Holders of Debtor | Impaired | The Debtors are individuals. |

4.02 Nonconsensual confirmation. In the event that any impaired class of claims does not accept the Plan in accordance with the Bankruptcy Code Sections 1126 and 1129(a)(8), the Debtor hereby reserves the right to either (a) request the Bankruptcy Court to confirm the Plan pursuant to

Bankruptcy Code § 1129(b) on the basis the Plan is fair and equitable or (b) amend or modify the Plan in accordance with its terms or as otherwise permitted.

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01**   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or un-liquidated.

**5.02**   Delay of Distribution on a Disputed Claim. No distribution will be made on an account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03**   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01**   Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII: **none**.

(b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above or before the date of the order confirming this Plan, upon the effective date of the Plan. A poof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 90 days after the date of the order confirming this Plan.

RICKIE WALKER'S PLAN OF REORGANIZATION

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01**    The plan will be implemented and funded by debtor's income derived from his sole proprietorship, rental income, and household contributions of family members. Additionally, Debtor is actively seeking other permanent employment and or contract opportunities that will enable debtor to maintain all plan payments to his creditors as well as quarterly United States Trustee payments. Debtor shall make monthly payments of **$921.00** to creditors for 60 months following the effective date of the plan. Payments shall be made first to administrative priority claims, upon satisfaction of all allowed administrative priority claims, then to Class 3 claims. Monthly distributions will continue for at 60 months or until distributions total **$55,260.00**.

## ARTICLE VIII

## GENERAL PROVISIONS

**8.01**    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this plan.

**8.02**    Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is an effect on the date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**8.03**    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04** <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05** <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06** <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by Federal Law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

**9.01** <u>Discharge.</u> Confirmation of this Plan will not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## OTHER PROVISIONS

None.

Respectfully submitted,

Dated: October 22, 2010

By: _Rickie Walker_
RICKIE WALKER, DEBTOR

Dated: October 22, 2010



Digitally signed by Mitchell
Abdallah
DN: cn=Mitchell Abdallah,
o=ABDALLAH LAW GROUP,
ou=Attorney,
email=mitch@abdallahlaw.net,
c=US
Date: 2010.10.25 17:27:01
-07'00'

By: _____

MITCHELL ABDALLAH, Attorney for Debtor,
RICKIE WALKER

RICKIE WALKER'S PLAN OF REORGANIZATION

**Exhibit B** – Identity and Value of Material Assets of Debtor

1.      3830 WHITNEY OAKS DRIVE - $750,000.00
         ROCKLIN, CA 95765

2.      1518 MICHAEL DRIVE - $320,800
         TRACY, CA 95377

RICKIE WALKER'S DISCLOSURE STATEMENT

1
2          **Exhibit C** – Most Recently Filed Monthly Operating Report
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RICKIE WALKER'S DISCLOSURE STATEMENT

| In re: RICKIE WALKER | Case No. | 2010-21656 |
|---|---|---|
| Debtors | CHAPTER 11 MONTHLY OPERATING REPORT (SMALL REAL ESTATE/INDIVIDUAL CASE) | |

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** 09/30/10          **PETITION DATE:** 01/25/10

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
Dollars reported in ___$1___

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2. **Asset and Liability Structure** | | | |
| a. Current Assets | $1,450,000 | $1,450,000 | |
| b. Total Assets | $1,450,000 | $1,450,000 | $1,450,000 |
| c. Current Liabilities | $15,275 | $15,275 | |
| d. Total Liabilities | $15,275 | $15,275 | $79,100 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3. **Statement of Cash Receipts & Disbursements for Month** | | | |
| a. Total Receipts | $2,915 | $4,800 | $35,433 |
| b. Total Disbursements | $2,108 | $5,334 | $35,292 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $807 | ($534) | $141 |
| d. Cash Balance Beginning of Month | ($807) | ($273) | $11,838 |
| e. Cash Balance End of Month (c + d) | $0 | ($807) | $14,545 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. **Post-Petition Liabilities** | $0 | $0 | |
| 7. **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

| At the end of this reporting month: | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | | X |

15. Check if paid: Post-petition taxes ___ ;     U.S. Trustee Quarterly Fees  x  ; Check if filing is current for: Post-petition tax reporting and tax returns: ___ .
(Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date: ___10/15/2010 0:00___          _Rickie Walker_ (signature)
Responsible Individual

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

| | | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 1518 Michael Drive | | |
| 2 | Scheduled Gross Rents | $1,196 | | |
| | Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | $481 | | |
| 6 | Total Deductions | $481 | $0 | $0 |
| 7 | Scheduled Net Rents | $715 | $0 | $0 |
| 8 | Less: Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $715 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

| | | Account 1 | Account 2 | Account 3 |
|---|---|---|---|---|
| 10 | Bank | | | |
| 11 | Account No. | | | |
| 12 | Account Purpose | | | |
| 13 | Balance, End of Month | | | |
| 14 | Total Funds on Hand for all Accounts | $0 | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended ___06/30/10___

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $715 | |
| 2 | Cash Received from Sales | $2,200 | |
| 3 | Interest Received | | |
| 4 | Borrowings | | |
| 5 | Funds from Shareholders, Partners, or Other Insiders | | |
| 6 | Capital Contributions | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $2,915 | $0 |
| | **Cash Disbursements** | | |
| 13 | Selling | | |
| 14 | Administrative | | |
| 15 | Capital Expenditures | | |
| 16 | Principal Payments on Debt | | |
| 17 | Interest Paid | | |
| | Rent/Lease: | | |
| 18 | Personal Property | | |
| 19 | Real Property | | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | | |
| 21 | Draws | | |
| 22 | Commissions/Royalties | | |
| 23 | Expense Reimbursements | | |
| 24 | Other | | |
| 25 | Salaries/Commissions (less employee withholding) | | |
| 26 | Management Fees | | |
| | Taxes: | | |
| 27 | Employee Withholding | | |
| 28 | Employer Payroll Taxes | | |
| 29 | Real Property Taxes | | |
| 30 | Other Taxes | | |
| 31 | Other Cash Outflows: | | |
| 32 | Busness Expenses inc. Equipt & Supples | | |
| 33 | Business Transportation | | |
| 34 | Business Telephone | | |
| 35 | Business Insurance | | |
| 36 | Personal Exp. inc. Utilities, taxes, medical, transport, Ins. & food | | |
| 37 | **Total Cash Disbursements:** | $2,108 | $0 |
| 38 | **Net Increase (Decrease) in Cash** | $807 | $0 |
| 39 | **Cash Balance, Beginning of Period** | ($807) | |
| 40 | **Cash Balance, End of Period** | $0 | $0 |

## RICKIE WALKER – CASE NO. 10-21656

## CASH FLOW WORKSHEET – SEPTEMBER 2010

| | |
|---|---|
| BEGINNING CASH | $ (807) |
| CASH INFLOWS | |
|     RENT (TRACY) | 715.00 |
|     SALES & RECEIPTS(JANITORIAL) | 2200.00 |
| **TOTAL CASH INFLOWS** | $ 2915.00 |
| AVAILABLE CASH BALANCE: | $ 2108.00 |
| | |
| BUSINESS EXPENSES | |
|     TRANSPORTATION | 375.00 |
|     TELEPHONE | 125.00 |
|     INSURANCE | 150.00 |
| PERSONAL EXPENSES | |
|     PROPERTY INSURANCE(ROCKLIN) | 160.00 |
|     PROPERTY INSURANCE (TRACY) | 90.00 |
|     UTILITIES | 275.00 |
|     PROPERTY TAXES | 480.00 |
|     FOOD | 350.00 |
|     TRANSPORTATION (PERSONAL) | 325.00 |
|     COMPUTER/INTERNET | 103.00 |
| **TOTAL EXPENSES** | $ 2108.00 |
| **TOTAL OUTFLOWS** | $ 2108.00 |
| **ENDING CASH BALANCE** | $ 0.00 |



Uni-Statement

Account Number:
1 534 6572 6757

Statement Period:
Aug. 14, 2010
through
Sep. 15, 2010

Page 1 of 3

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5261          TRN                    X      ST01

000022117 1 AV 0.335 10648174615515 P
ESTATE OF RICKIE L WALKER
DEBTOR IN POSSESSION
BANKRUPTCY CASE #10-21656-E-11
3830 WHITNEY OAKS DR
ROCKLIN  CA 95765-4633



☎                          **To Contact U.S. Bank**

By Phone:                  1-800-US BANKS
                           (1-800-872-2657)

Telecommunications Device
for the Deaf:              1-800-685-5065

Internet:                  usbank.com

## INFORMATION YOU SHOULD KNOW

Effective November 14, 2010, the four free Non-U.S. Bank ATM Transactions per cycle has been eliminated. The Non-U.S. Bank ATM Transaction fee of $2.00 will be charged for every ATM transaction that does not take place at a U.S. Bank ATM, unless the ATM fee is waived as part of a designated Checking Account Product, or an Account Package waiver.

**Important Changes to U.S. Bank Overdraft Protection Policies and Fees**
Effective Nov. 14, 2010, if your checking account has another account(s) linked to it for Overdraft Protection, a $10 Overdraft Protection Transfer fee will be charged to your checking account each day funds are transferred from the account(s) linked for Overdraft Protection. If your checking account is overdrawn less than $10, a total of $10 will be transferred to your checking account and the Overdraft Protection Transfer Fee will be waived. The Overdraft Protection Transfer fee is $5 for U.S. Bank Gold Checking accounts and waived for U.S. Bank Platinum Checking accounts.

If you have another deposit account (savings, money market or checking) or Reserve Line linked for Overdraft Protection to your checking account, the amount transferred will be in multiples of $50. If the account used for Overdraft Protection does not have an available balance that will be enough to cover the overdrawn amount in your checking account, the remaining available balance will be transferred. If the checking account is overdrawn less than $10, a maximum of $10 will be transferred from the account used for Overdraft Protection.

Please refer to the "Important Changes to Your Consumer Deposit Account" pamphlet for complete details on changes to U.S. Bank Overdraft Protection policies and fee.

## FREE CHECKING                                                                      Member FDIC

U.S. Bank National Association                              Account Number 1-534-6572-6757

**Account Summary**

| | | | | |
|---|---|---|---|---|
| Beginning Balance on Aug. 14 | $ | 2,691.92 | | |
| Deposits / Credits | | 2,792.17 | Number of Days in Statement Period | 28 |
| Card Withdrawals | | 1,906.09- | | |
| Other Withdrawals | | 3,578.00- | | |
| **Ending Balance on Sep. 15, 2010** | $ | 0.00 | | |

### Deposits / Credits

| Date | | Description of Transaction | | Ref Number | | Amount |
|---|---|---|---|---|---|---|
| Aug. | 17 | Deposit | | 5830637770 | $ | 1,000.00 |
| Sep. | 7 | Addition | | 5730747484 | | 615.00 |
| Sep. | 9 | Charge Off | Account Credit | | | 1,177.17 |
| | | | Total Deposits / Credits | | $ | 2,792.17 |

### Card Withdrawals

| Date | | Description of Transaction | | Ref Number | | Amount |
|---|---|---|---|---|---|---|
| Aug. | 16 | Fee | ATM Withdrawal At Other Network | 1600012195 | $ | 2.00 |
| Aug. | 16 | Fee | ATM Withdrawal At Other Network | 1600012196 | | 2.00 |
| | | Card Number xxxx-xxxx-xxxx- 0452 | | | | |
| Aug. | 16 | Visa Purchase (Non-PIN) | On 081310 VALLEJO CA | 6548697050 | | 1.89 |
| | | SHELL OIL 574444 | REF # 24316050226548697050 US2 | | | |
| Aug. | 16 | Purchase w PIN | WAL-MART #1988 ROSEVILLE | 5408140252 | | 17.74 |
| | | 623254 | On 081410 ILNKILNK REF 022603623254 | | | |



## BALANCE YOUR ACCOUNT
To keep track of all your transactions, you should balance your account every month. Please examine this statement immediately. We will assume that the balance and transactions shown are correct unless you notify us of an error.

**Outstanding Deposits**

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
| TOTAL | $ |

**Outstanding Withdrawals**

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
| TOTAL | $ |

1. List any deposits that do not appear on your statement in the Outstanding Deposits section at the left. Record the total.

2. Check off in your checkbook register all checks, withdrawals (including Check Card and ATM) and automatic payments that appear on your statement. Withdrawals that are NOT checked off should be recorded in the Outstanding Withdrawals section at the left. Record the total.

3. Enter the ending balance shown on this statement.  $_____

4. Enter the total deposits recorded in the Outstanding Deposits section.  $_____

5. Total lines 3 and 4.  $_____

6. Enter the total withdrawals recorded in the Outstanding Withdrawals section.  $_____

7. Subtract line 6 from line 5. This is your balance.  $_____

8. Enter in your register and subtract from your register balance any checks, withdrawals or other debits (including fees, if any) that appear on your statement but have not been recorded in your register.

9. Enter in your register and add to your register balance any deposits or other credits (including interest, if any) that appear in your statement but have not been recorded in your register.

10. The balance in your register should be the same as the balance shown in #7. If it does not match, review and check all figures used, and check the addition and subtraction in your register, if necessary, review and balance your statement from the previous month.

## IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS
### In Case of Errors or Questions About Your Checking, Savings, ATM, Check Card, ACH, Bill Pay and Other Electronic Transfers
If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, we must hear from you no later than 60 days* after we sent you the FIRST statement on which the error or problem appeared. Telephone us at the number listed on the front of this statement or write to us at U.S. Bank P.O. Box 64991 St. Paul, MN 55164-9505.
- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you all the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. In that case, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

*Please note: Paper draft and paper check claims must be disputed within 30 days per Your Deposit Account Agreement.

## CONSUMER BILLING RIGHTS SUMMARY
### In Case of Errors or Questions About Your Credit Card or Line of Credit Statement
If you think your statement is wrong, or if you need more information about a transaction on your statement, write to us on a separate sheet at the address shown on your credit card or line of credit statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, provide us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Date the transaction occurred.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

## SPECIAL RULE FOR CREDIT CARD PURCHASES
If you have a problem with the quality of the goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.

## RESERVE LINE
Reserve Line Balance Computation Method: To calculate the Balance Subject to Interest Rate (sometimes referred to as the "average daily balance"), we take the beginning balance of your account each day, add any new advances, and subtract any payments, credits and unpaid interest charges. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This is your Balance Subject to Interest Rate. The ***INTEREST CHARGE*** begins from the date of each advance.

## REPORTS TO AND FROM CREDIT BUREAUS
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

Member FDIC

EQUAL HOUSING LENDER



ESTATE OF RICKIE L WALKER
DEBTOR IN POSSESSION
BANKRUPTCY CASE #10-21656-E-11
3830 WHITNEY OAKS DR
ROCKLIN CA 95765-4633

**Uni-Statement**

Account Number
1 534 6572 6757

Statement Period
Aug. 14, 2010
through
Sep. 15, 2010

Page 2 of 3



## FREE CHECKING (CONTINUED)
U.S. Bank National Association     Account Number 1-534-6572-6757

### Card Withdrawals (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|------|----------------------------|--|-----------|--------|
| Aug. 16 | Visa Purchase (Non-PIN) SUNRISE NATURAL | On 081410 ROSEVILLE CA REF # 2432300227263226010 US2 | 7253226010 | 23.04 |
| Aug. 16 | Purchase w PIN 710346 | WAL-MART #1988 ROSEVILLE On 081410 ILNKILNK REF 022615710346 | 4608141459 | 23.04 |
| Aug. 16 | Purchase w PIN 803598 | ARCO PAYPOINT ROCKLIN On 081410 ILNKILNK REF 022616803598 | 9808141509 | 30.48 |
| Aug. 16 | Purchase w PIN 371456 | 7-ELEVEN ROCKLIN On 081310 ILNKILNK REF 022522371456 | 5608131853 | 38.81 |
| Aug. 16 | ATM Withdrawal | *EASTMONT MALL OAKLAND CA Serial No. 332043001744PLUSTERM | | 43.00 |
| Aug. 16 | Purchase w PIN 762005 | SHELL Service St VALLEJO On 081510 ILNKILNK REF 022717762005 | 0508151634 | 47.18 |
| Aug. 16 | Purchase w PIN 348406 | WAL-MART #1988 ROSEVILLE On 081610 ILNKILNK REF 022802348406 | 0608160113 | 99.38 |
| Aug. 16 | ATM Withdrawal | US BANK STANFORD ROCKLIN CA Serial No. 008401204709SUS4P837 | | 100.00 |
| Aug. 16 | Visa Purchase (Non-PIN) SPRINT *WIRELESS | On 081610 800-639-6111 VA REF # 2469216022800067184 US2 | 8000067184 | 117.65 |
| Aug. 16 | Visa Purchase (Non-PIN) DTV*DIRECTV SERV | On 081510 800-347-3288 CA REF # 2469216022700971318 US2 | 7000971318 | 196.43 |
| Aug. 16 | ATM Withdrawal | GCA* THUNDER VAL LINCOLN CA Serial No. 881101011216PLUSTERM | | 203.50 |
| Aug. 16 | ATM Withdrawal | US BANK STANFORD ROCKLIN CA Serial No. 008400204628SUS4P837 | | 300.00 |
| Aug. 16 | ATM Withdrawal | US BANK STANFORD ROCKLIN CA Serial No. 008355221215SUS4P837 | | 300.00 |
| Aug. 16 | ATM Withdrawal | US BANK STANFORD ROCKLIN CA Serial No. 008320143130SUS4P837 | | 360.00 |

| | | | |
|--|--|--|--|
| | Card 0452 Withdrawals Subtotal | $ | 1,902.09 |
| | Total Card Withdrawals | $ | 1,906.09 |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|------|----------------------------|--|-----------|--------|
| Aug. 17 | Returned Deposited Item | Fee | 1000104067 | $ 19.00 |
| Aug. 17 | Overdraft Charge | | | 33.00 |
| Aug. 17 | Overdraft Charge | | 5608131853 | 33.00 |
| Aug. 17 | Overdraft Charge | | 9808141509 | 33.00 |
| Aug. 17 | Deposited Item Returned | | 1000104067 | 1,375.00 |
| Aug. 18 | Returned Deposited Item | Fee | 1000103059 | 19.00 |
| Aug. 18 | Overdraft Charge | | 1000104067 | 33.00 |
| Aug. 18 | Deposited Item Returned | | 1000103059 | 1,925.00 |
| Aug. 19 | Overdraft Charge | | 1000103059 | 33.00 |
| Aug. 23 | Extended Overdraft Fee | | 2300008521 | 25.00 |
| Aug. 30 | Extended Overdraft Fee | | 3000008396 | 25.00 |
| Sep. 7 | Extended Overdraft Fee | | 0700012439 | 25.00 |

| | | | |
|--|--|--|--|
| | Total Other Withdrawals | $ | 3,578.00 |

| | Total for Statement Period | | Total Year-to-Date | |
|--|----------------------------|--|--------------------|--|
| Total Returned Item Fees | $ | 0.00 | $ | 0.00 |
| Total Overdraft Fees | $ | 240.00 | $ | 951.00 |
| Less: Waives | $ | 0.00 | $ | 140.00- |
| TOTAL | $ | 240.00 | $ | 811.00 |

*A "waive" occurs when an assessed fee is credited back automatically.*



ESTATE OF RICKIE L WALKER
DEBTOR IN POSSESSION
BANKRUPTCY CASE #10-21656-E-11
3830 WHITNEY OAKS DR
ROCKLIN CA 95765-4833

**Uni-Statement**
Account Number:
1 534 6572 6757
Statement Period:
Aug. 14, 2010
through
Sep. 15, 2010

Page 3 of 3

## FREE CHECKING (CONTINUED)
U.S. Bank National Association      Account Number 1-534-6572-6757

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|------|---------------|------|---------------|------|---------------|
| Aug. 16 | 785.83 | Aug. 19 | 1,717.17- | Sep. 7 | 1,177.17- |
| Aug. 17 | 292.83 | Aug. 23 | 1,742.17- | Sep. 9 | 0.00 |
| Aug. 18 | 1,684.17- | Aug. 30 | 1,767.17- | | |

Balances only appear for days reflecting change.

3190&5828