Mitchell L. Abdallah, #231804
George M. Gingo, #147897

ABDALLAH LAW GROUP
1006 4TH STREE, 4TH FLOOR
SACRAMENTO, CA 95814
TEL:/ (916) 446-1974
FAX:/ (916) 446-3371
MITCH@ABDALLAHLAW.NET

Attorneys for Debtor: Rickie Walker

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:

**Rickie Walker,**

Debtor.

Case No. 10-21656-E-11
DCN: MLA-006

Judge: Ronald H. Sargis
Date: March 3, 2011
Time: 10:30 a.m.
Place: Dept. E, Ctrm. 33
501 I Street, 6th Flr.
Sacramento, CA 95814

**DEBTOR'S OBJECTION TO CLAIM NUMBER 5
THE AMENDED CLAIM OF CITIBANK, N.A. AS TRUSTEE
MEMORANDUM OF LAW IN SUPPORT**

COMES NOW, RICKIE WALKER ("Debtor"), and files this Objection to Proof of Claim number 5 as filed by the alleged Creditor, CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-3 (hereafter, "Citibank") pursuant to Bankruptcy Rule 3007 and states the following:

A security interest in the property of the debtor is claimed; however, the proof of claim is accompanied by incompetent and inconsistent evidence that fails to support the claim that Citibank has authority to bring the claim, has standing or that

- 1 -

the security interest has been perfected as required under F.R.B.P. Rule 3001(d) and is facially defective and does not constitute prima facie validity of the claim.

The proof of claim does not set forth Citibanks claim with proper specificity, pursuant to F.R.B.P. Rule 3001(a) & (c).

WHEREFORE, the Debtor objects to Claim number 5 as filed by Citibank and respectfully requests this Court enter an order requiring Citibank to file an amended claim to correct the defect within 30 days and if not corrected, upon expiration of that time, the claim is disallowed in its entirety.

## II
## MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM #5

A.  FACTS

Citibank filed an Amended Proof of Claim and in support thereof, attached a promissory note and a Deed of Trust. The promissory note states that the originator of the loan – the lender – is "Bayrock Mortgage Corporation, A Georgia Corporation" (hereafter, "Bayrock") (See Citibank's Amended Proof of Claim, Promissory Note, para. 1) The note was executed on November 21st, 2006. (Promissory Note, caption) The Deed of Trust, like the note, also states that the lender is Bayrock. (See Citibank's Amended Proof of Claim, Deed of Trust, para. (C)). And, the Deed of Trust states MERS is the beneficiary of the Deed of Trust (MERS = "Mortgage Electronic Registration Systems, Inc."). (Deed of Trust, para. E).

As to the Deed of Trust, Citibank failed to attach any evidence of an assignment of the Deed of Trust from MERS or Bayrock to itself.

Attached to the note is a multi-generational copy of a document called an "Assignment of Note". This document is patently a multi-generational copy because it is clearly superimposed on another document entitled "Allonge". This document does not carry a date upon which the assignment of the note occurred.

This document is signed by Bob Brown, Vice President of Strategic Development, who on information and belief, stopped working for Bayrock in 2006. (Exhibit 1, Section A, Declaration of George Gingo in Support of Objection to Claim #5)  Mr. Brown indicates on the Assignment of Note that the assignment is from Bayrock to "Citibank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A – Trust Mortgage Pass-Through Certificate Series 2007-3", however, the PSA indicates on its cover that it didn't even exist until April 1, 2007 which makes his signature highly suspect as fraudulent.

Citibank identifies itself as a trustee of a securitized trust. That trust agreement is an IRS REMIC known as a "Pooling and Servicing Agreement" (hereafter "PSA") and is publicly available on the United States Securities and Exchange Commissions website at http://sec.gov/Archives/edgar/data/1393737/000106823807000668/exhibit_10-1.htm.[1]  (PSA, Article 11.01)

---

[1] *How to Fight to Save Your Home in California*, by George Gingo, Layne Hayden and Berenice De La Salle, Outskirts Press (2011), Chapter 5, states how to find a Pooling and Servicing Agreement by:

...placing in your internet search box the name of your original lender followed by "8-K", or a variant, such as "8k" or "8K" and hitting the search button. It would look something like this "Wells Fargo 8-k". You should get hits with the names of securitized pools (trusts) frequently in a form similar to this - "X Mortgage Security Asset Backed Pass-Through Certificates Series 200Y-Z", where "X" is the name of the original lender, "Y" is the year you got your loan, and "Z" is the month you got your loan ("Z" may be up to four months after you got your loan as the trust closing date must be funded within 90 days of the trust's "cut-off" date – not your closing date.

If you get too many hits, narrow it down a bit by adding to your search terms different configurations of the year and month that the trust closed. The earliest the trust could have closed would be the year and month you got your loan. If you got your loan in January, 2006, you would write it like this: "2006-1"; or try this: "2006 1." ....  The whole format would look something like this: "Wells Fargo 8-k 2006-2."

If that's not successful, go to http://www.sec.gov and click on "Search for Company Filings" under "Filing & Forms (EDGAR)." Under "General-Purpose Searches," click on "Companies & other filers." Then, in the "Enter your search information" box, type in the name of your original lender next to "Company name" and click on the "Find Companies" button. Companies' names are often made up of more than one word, so you may have to try your search using the full name, as well as only part of the name. Try it every way you must to get a "hit." Several companies

The provisions of the PSA which are discussed are found in Exhibit 1, Section B, Declaration of George Gingo in Support of Objection to Claim #5.

The PSA describes the Sponsor as "EMC Mortgage Corp." (hereafter, "EMC"), the Depositor is "Structured Asset Mortgage Investments II, Inc." (hereafter, "SAMIII") and the Trustee is "Citibank, N.A.". (PSA, Article I, Definitions) The PSA provides in Article I a Preliminary Statement and a definition section, both of which indicate that on or before the closing date of April 30, 2007, that the Sponsor is to sell and transfer all the mortgage loans to the Depositor, and that on the closing date of April 30, 2007, the Depositor is to sell and transfer all the mortgage loans to the Trust.

Article II of the PSA describes the sale of the mortgage loans as a true sale. (PSA, section 2.01(a)) Article II of the PSA also requires that the transfer of each mortgage note carry an unbroken chain of endorsements from the Originator all the way to the Trustee. (PSA, section 2.01(b)). Therefore, the PSA requires that the chain of endorsements must be as follows:

| **Originator** | → | **Sponsor** | → | **Depositor** | → | **Trustee** |
|---|---|---|---|---|---|---|
| Bayrock | → | EMC | → | SAMIII | → | Citibank |

---

may have similar names, so watch out for that.
    You will see a long list of the names of securitized pools of loans. You will be looking for all the names that are similar to the name of your original lender. Once you find them, your next must narrow down the search to the right time period for your loan. . . .
    Once you find a match – or matches – write down their names and the document numbers associated with them (called a CIK). Then click on the CIK. Click on that number. There will be a list of documents filed with the SEC that are related to this pool of loans. Search as you scroll down, looking for a document titled "Prospectus" and "Pooling and Servicing Agreement." If you find them, save them to your computer and also bookmark the page you found them on. If you don't see either of these, go to the Table of Contents and search again.

The PSA also requires that a certified copy of the assignment be filed within the jurisdiction in which the property is located. (PSA, section 2.01(b)(iii)) Citibank did not provide any evidence that it recorded the assignment of note. The PSA provides that New York law shall apply. (PSA, section 11.06)

# III
# ARGUMENT

*Citibank has failed to produce competent evidence that has standing.*

### A. Only A Real Party In Interest Has Standing

The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Kowalski v. Tesmer, 543 U.S. 125, 128-29, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2D 343 (1975)).

Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. (Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)(citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest". (Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest.")

Debtor Objection to Claim #5 of Citibank, N.A.; Memorandum of Law in Support

In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At page 10) the Court found that "MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation." In In re Maisel, the Bankruptcy Court for the District of Massachusettes found that a lender did not have standing to seek relief from the automatic stay because it did not have an interest in the property at the time it filed its motion for relief. 378 B.R. 19, 22 (2007)

**B.     Citibank Produced Evidence That It Does Not Have Standing**

In the case of In re Kang Jin Hwang, 393 B.R. 701, 712 (C.D. Cal. 2008), the Court stated that a loan servicer cannot bring an action without the holder of the promissory note. In Carpenter v. Longan, 83 U.S. 271, 274 (1872), the Supreme Court stated that for there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned, stating that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident"; adding that "[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity". In the case of In re Leisure Time Sports, Inc., 194 B.R. 859, 861 (9th Cir. 1996) the Court stated that "[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures" and that, "[i]f the debt is not transferred, neither is the security interest"); In the case of Kelley v. Upshaw, 39 Cal. 2d 179, 192 (1952) the Court stated that assigning only the deed without a transfer of the promissory note is completely ineffective.

The note and the mortgage have to rest in the same entity to be enforceable. The note is made payable to Bayrock and the Deed of Trust states that the beneficiary is MERS. Assuming for a moment that the Assignment of Note is valid, there still is no evidence that the Deed of Trust has been transferred to Citibank.

Debtor Objection to Claim #5 of Citibank, N.A.; Memorandum of Law in Support

This case is similar to the case of <u>In The Matter Of John T. Kemp Debtor v. Countrywide Home Loans Inc.</u>, Case No. 08-18700-JHW, Adversary No. 08-2448 (Bankr.N.J., 2010), where the pooling and servicing agreement required certain indorsements on the note, but the note did not carry those indorsements. The Court found that Countrywide had no right to enforce the note. The Court stated:

> On behalf of the Bank of New York, Countrywide contends that the written mortgage assignment in this case, which purports to assign both the note and mortgage in this case, and which was properly executed and recorded with the appropriate county clerk's office, serves to properly transfer the note to the new owner, enabling the new owner to enforce both the note and the mortgage. The recorded assignment of mortgage does include provision for the assignment of the note as well. However, the recorded assignment of the mortgage does not establish the enforceability of the note. As discussed above, the UCC governs the transfer of a promissory note. <u>See</u> 29 Myron C. Weinstin, New Jersey Practice, Law of Mortgages, § 11.2 at 749. The attempted assignment of the note in the assignment of mortgage document, together with the terms of the Pooling and Servicing Agreement, created an ownership issue, but did not transfer the right to enforce the note.
>
> The right to enforce an instrument and ownership of the instrument are two different concepts.... Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.
> (At pages 19 and 20)

**C.     The "Assignment of Note" directly from the Originator – Bayrock – to the Trustee – Citibank, failed for violation of the PSA and IRS Codes.**

The PSA describes itself as an IRS approved REMIC, which is a tax pass-through conduit. (PSA, Preliminary Statement) The PSA specifies that the mortgage note must be indorsed with an unbroken chain of endorsements from the Originator all the way to the Trustee on or before the cut-off date of April 30, 2007.

(PSA, Article I, definitions; Article II, section 2.01(b)). The indorsements that must be on the note are as follows:

| **Originator** | → | **Sponsor** | → | **Depositor** | → | **Trustee** |
|---|---|---|---|---|---|---|
| Bayrock | → | EMC | → | SAMIII | → | Citibank |

The closing date for this REMIC trust was April 30, 2007. The closing date is also known as the start-up date of each Trust REMIC within the meaning of Section 860G(a)(9) of the IRS Code. REMIC laws prohibit the transfer of a note into a REMIC trust more than 90 days after the closing date, with an exception of a "qualified replacement note" if within two years of the closing date. (IRC section 860G(a)(3)(A)(i)-(ii)(2006). If a mortgage loan is contributed after the three month window, it must qualify as a "qualified replacement mortgage". (IRC 860G(a)(4)(A)-(B)(2006)). A "qualified replacement" must be traded for a defective obligation and may not be conducted more than two years after the start-up date. 26 U.S.C. 860G(a)(4)(B)(ii)(2006)). [2]

Sections 2.01 through and including 2.04 of the PSA provides that on or before the closing date the Trustee had to receive the original Note with its *full chain of indorsements.* The Trustee could not accept any mortgage loan after the start-up date other a Qualified Substitute Mortgage Loan. Because the necessary indorsements are lacking, this note was never transferred into the REMIC trust. Because the IRS code prohibits transfers of notes into a REMIC more than 90 days after the Closing Date, and because there is no evidence from Citibank that this note was a qualified replacement mortgage, this note now cannot be held by the Trustee, regardless of any indorsements or assignments.

---

[2]The IRS imposes a 100% tax on net income derived from prohibited transactions. (26 U.S.C. 860F(a)(1)) If it is found that 1% of the notes in this REMIC did not exist within the REMIC rules, this REMIC will fail to qualify as an IRS Tax Pass-Through conduit and the Trustee would likely owe the IRS hundreds of millions of dollars in back taxes. The IRS now has a whistle blower statute where anyone who reports to the IRS that an entity has unpaid taxes can recover a 15% - 30% finders fee of the recovered tax if two million dollars or more is owed. A whistleblower may be anyone, even one who is unrelated to a cause. 26 USC 7623

Additionally, section 11.06 of the PSA provides that the laws of the State of New York shall provide the governing law for the PSA. The PSA provides that the law of New York applies to any dispute over the PSA. New York law provides that *any transfers beyond the stated powers of the trust are void.* "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance, or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." *McKinney's Consolidated Law of New York Annotated, Estates Powers and Trust Laws*, section 7-2.4 (2003); see *Allison & Ver Valen Co. v. McNee*, 9 N.Y.S. 2D 708 (N.Y. Sur. 1939). Because the PSA provides that the Trustee cannot accept any mortgage loan after the closing date (except for certain substitute mortgage loans which replace deleted mortgage loans) and because this note lacks all necessary indorsements, this note in not now held by the Trustee, nor can it ever be held by the Trustee, regardless of any indorsements or assignments.

### D. The "Assignment of Note" Carries Strong Indicia of Fraud.

The only document that Citibank produced to support its contention that it has standing is the one-page "Assignment of Note" that follows the note in the attachment to the Proof of Claim. This document is clearly superimposed upon another piece of paper that is entitled "Allonge", but placing it on another paper entitled allonge doesn't change its nature – it is what it originally was.

The assignment of note is undated. The PSA didn't even exist until April 1, 2007. But if we presume it was made on 11/21/06, then Bob Brown somehow knew way before the PSA was even made, the name of the trust to which he had assigned the note. That's one problem that Citibank needs to explain. The second problem that Citibank needs to explain is how an assignment to a non-existent entity has any effect. The third problem that Citibank has is that the PSA says that assignments are not valid unless they are recorded, and this one wasn't recorded. (PSA, section 2.01(b)(iii)) The fourth problem Citibank needs to explain is how

9

Debtor Objection to Claim #5 of Citibank, N.A.; Memorandum of Law in Support

Bob Brown could make an assignment if he quit working for Bayrock in 2006. The fifth problem is that attorney Lynn Szymoniak is a nationally recognized expert witness who specializes in detecting fraudulent documents. She has examined the "Assignment of Note"/"Allonge" and found numerous points that lead her to opine that the document is fraudulent. In fact, she states in her affidavit that in her entire career, she has not ever seen a document such as this where there are so many indicators of fraud. (Exhibit 2, Affidavit of Lynn Szymoniak in Support of Objection to Claim #5)

## IV
## CONCLUSION

Citibank's evidence demonstrates that it does not have standing, and it's proof of claim is not supported by any competent evidence. The only evidence it does provide – the Assignment of Note - contradicts the Deed of Trust which lists the beneficiary as MERS.

Citibank, as trustee of an IRS REMIC, must conform its actions not only to the dictates of the IRS Code, but also to the PSA because that document is regulated by New York law which states that the Trustee has no powers outside of the trust document. And, since both the PSA and the IRS Code provide that the trust could not take a note more than 90 days after the closing date (the exception being the qualified replacement note, but Citibank offered no evidence that this was such a note), this note was never transferred into the trust because the PSA required a full chain of indorsements on the note – which don't exist - and because the Assignment of Note carries strong indicia of fraud, as pointed out by the Affidavit of Lynn Szymoniak.

This is the second challenge to the standing of Citibank. Citibank has utterly failed again to demonstrate that it has standing. Wherefore, Debtor requests this Court deny Citibank its proof of claim.

10

Debtor Objection to Claim #5 of Citibank, N.A.; Memorandum of Law in Support

/s/ Mitchell L. Abdallah
Mitchell Abdallah, CSB #: 231804
George M. Gingo, CSB #: 147897
1006 4th Street, 4th Floor
Sacramento, CA 95814
916-446-1974
Attorney for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of January, 2011, I electronically filed the foregoing Objection to Proof of Claim of Creditor with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Anne W. Hamann, Pite Duncan, LLP, 4375 Jutland Drive, Suite 200, P.O. Box 17933, San Diego, CA 92177-0933 and the U.S. Trustee, 501 I Street, Room 7-500, Sacramento, CA 95814.

/s/ Mitchell L. Abdallah
Mitchell Abdallah, CSB #: 231804
George M. Gingo, CSB #147897
1006 4th Street, 4th Floor
Sacramento, CA 95814
916-446-1974
Attorney for Debtor


George M. Gingo
ggingo@yahoo.com
http://www.gingolaw.com
P.O. Box 838
Mims, Florida 32754
321-264-9624