FILED
**January 26, 2011**
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003236521

MITCHELL L. ABDALLAH, #231804

ABDALLAH LAW GROUP
1006 4ᵀᴴ STREE, 4TH FLOOR
SACRAMENTO, CA 95814
TEL:/ (916) 446-1974
FAX:/ (916) 446-3371
MITCH@ABDALLAHLAW.NET

Attorneys for Debtor: Rickie Walker

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **Case No. 10-21656-E-11** |
| **Rickie Walker,** | **DCN:   MLA-006** |
| Debtor. | Judge: Ronald H. Sargis |
| | Date:   March 3, 2011 |
| | Time:  10:30 a.m. |
| | Place: Dept. E, Ctrm. 33 |
| | 501 I Street, 6ᵗʰ Flr. |
| | Sacramento, CA 95814 |

**EXHIBIT LIST**

The attached are the Exhibits in support of the Debtor's objection to claim number 5, the

amended claim of Citibank, N.A. as trustee:

| Exhibit: | Description: | Attached as Pages: |
|---|---|---|
| 1 | Declaration of George Gingo In Support of Objection To Claim #5 | 3-46 |
| 2 | Affidavit of Lynn Szymoniak In Support of Objection to Claim #5 | 47-56 |

- 1 -

1  Executed at Sacramento, California on January 25, 2011.

2

3                                        Respectfully submitted,

4                                        

5

6                                        MITCHELL L. ABDALLAH
                                         Attorney for Debtor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## Declaration of George Gingo
## in Support of Objection to Claim #5

3

Mitchell Abdallah, CSB #: 231804
George M. Gingo, CSB #: 147897
1006 4th Street, 4th Floor
Sacramento, CA 95814
916-446-1974
Attorney for Debtor

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

Case No.: 10-bk-21656

In re:

RICKIE WALKER,

                                Debtor.
_____/

### DECLARATION OF GEORGE GINGO
### IN SUPPORT OF OBJECTION TO CLAIM #5 OF CITIBANK, N.A.

1.    I, George M. Gingo,, hereby declare as follows:

2.    I am an attorney at law duly licensed to practice law in the State of California
      and Florida.    If called as a witness in this matter, I could  and would
      competently testify to the following facts which are within my personal
      knowledge.

3.    I am a foreclosure defense attorney. I have handled in excess of 100 contested
      judicial foreclosures in the State of Florida, including 5 appellate cases
      involving foreclosure defense. As part of my practice it is necessary for me to
      know how to find Pooling and Servicing Agreements. I routinely find Pooling
      and Servicing Agreements on the internet and thereafter introduce the relevant
      sections of the Pooling and Servicing Agreement in evidence in my cases.

4.    On January 20, 2011, I caused an internet search of the business social
      networking site known as "SPOKE". The search parameters were "Bob Brown"
      and "Bayrock Mortgage". The search returned one hit, indicating that Bob
      Brown was the vice-president of strategic development of Bayrock Mortgage
      Corporation of Georgia. Upon a further refined search within the results I found
      an indication that Bob Brown only worked for Bayrock Mortgage Corporation
      during 2005 – 2006.

1

4

5.   On January 20, 2011, I caused to be generated a two-page document from the SPOKE website at http://www.spoke.com that I have attached hereto as "Section A").

6.   On January 20, 2011, I utilized the internet to directly access the United States Securities and website http://sec.gov/Archives/edgar/data/1393737/000106823807000668/exhibit_10-1.htm. This is a document that extends almost 200 pages in length which is the Pooling and Servicing Agreement that regulates the trust that Citibank claims is entitled to enforce the debt in Claim #5.

7.   On January 20, 2011, I caused to be downloaded the Pooling and Servicing Agreement referenced in paragraph 6, above.  I attached selected parts of that Pooling and Servicing Agreement to this declaration as "Section B" because the overall document is exceedingly large, and not necessary for analysis of the issues.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 21, 2011, at Mims, Florida.

George Gingo

2

Declaration of George Gingo in Support of Objection to Claim #5 of Citibank, N.A.

5

# Section A

# Attachment to
# Declaration of George Gingo

Bob Brown, Vice President Strategic Development, Bayrock Mortgage Corp | Spoke

1/20/11 3:18 PM

Sign out | Help | Upgrade |

# sp🔲ke

Find **a person**  ·] Name    | Title    | Company    Search

Welcome | Your Connections | Lists | SpokeMail | Your Profile | Your Account   Sponsored search

Spoke help is here!
Network?
Find out with the
Spoke Outlook
Toolbar
Download

## Public Records Search  Get Instant Results

Bob    Brown



No Photo Available

✉ Email
Save to List
Purchase Contact
Like
0  Tweet

### Bob Brown
People named Bob Brown

Title and Company:
Vice President Strategic Development at
Bayrock Mortgage Corp

Company Address:
11575 Great Oaks Way
Alpharetta, GA 30022-2473

Company Phones:
6788025500

**Learn more about Bob Brown**
View Background Information on Bob Brown

View Social Profiles for Bob Brown

powered by
US**SEARCH**

Public Records and other Info about Bob Brown on Archives™

**9,872** Vital Records
**48** Death Records
**61** Birth Records
**2,264** Divorce Records
**7,499** Marriage Records

More on
**Archives™**

Web Search Results
powered by Google™
Web (0)

Signed in as
george gingo

Profile completion

Saved searches & alerts
Recent searches

### Get more when you upgrade

Need to connect with potential customers or partners? Looking for great job candidates? Spoke has the solution for you!

Upgrade today!

### Search for Bob
- Search for Bob on Facebook
- Search for Bob on LinkedIn
- Search for Bob on Twitter
- Search for Bob on Myspace
- Find Contact Info for Bob on Peoplesmart™
- Find Background Report for Bob on Peoplesmart™
- Find Public Records on Bob on Peoplesmart™

### Bob Brown's Biography

Tags: Bayrock Mortgage Corp, GA, Mortgage bankers/correspondent, People named Bob Brown, Vice President Strategic Development

### Bob Brown's Public Records and Other Information

Robert L Brown , age 44
Known Cities: Alpharetta, GA
Possible Relatives: Bernice, Celestia, Cynthia, Donald, Donald

Robert S Brown , age 49
Known Cities: Alpharetta, GA
Possible Relatives: Elizabeth, Steve

Robert E Brown , age 46
Known Cities: Alpharetta, GA
Possible Relatives: Kelly, Mildred, Richard, Robert, Robert

Robert V Brown , age 41
Known Cities: Alpharetta, GA
Possible Relatives: Francis, Janice, Lisa, Nadine, Robert

Robert Brown
Known Cities: Alpharetta, GA
Possible Relatives: Richard, Rodney

Click to see more on

*see page 2*

7

Bob Brown, Vice President Strategic Development, Bayrock Mortgage Corp | Spoke

1/20/11 3:18 PM

## peoplesmart

### Bob Brown's Job History

Bayrock Mortgage Corporation                  2005 to 2006

Vice President Strategic Development (since 2005)

Vice President

### Bob Brown's Coworkers    View all (115)

 Chris Shover
Production
Manager

 Kurt Segendorph
Account Manager

 Chris Holland
Vice President -

 Jennifer Neva
Executive
Mortgag...

 Terry Lann
Vice President
Op .

 Dan Solocco
Senior Vice
Presi..

 Michael Medley
V.P. Special
Markets

 Mark Farrar
Chief Financial
O. .

 Christine Carcel
DM & LA
Manager

### Protect Your Reputation & Privacy

Spoke has partnered with ReputationDefender in protecting your
privacy. Remove your private information from dozens of databases
at the touch of a button.



Has this info changed?

**Person Search-Search Free** 1) Enter Any Name & Search Free! 2) Get Phone, Address, Age & More. www.Intelius.com/Perso
**University of Phoenix®** Degrees in Today's Most Popular Fields. Online and Campus Classes. Phoenix.edu
**Ditech® Home Mortgage** Reach 'e mortgage consultant now! We Provide Best in Class Service. www.Ditech.com
**Fha Secure Mortgage** Refinance Rates as Low as 2.875%. $150,000 Mortgage for Only $622/mo TheEasyLoanSite.com/FHASer

 **FOLLOW US**

  

FAQ | Community Resources | Company Info | Blog | Help | Deactivate Account | Membership Options
| Feedback

Contact Sales | Privacy | News & Press | Advertise | Certified by TRUSTe

**Browse the Open Network for Business People**
People Directory | Company Directory | User Profiles | Featured People | Featured Companies
Company Location Directory | Person Location Directory

**Industrial Directory**

Version 9.19.821 © copyright 2002 — 2011 Spoke Software

Ads by Google        Leads            E Mail Leads            Online Jobs            Get More Leads            Exchange Server



# Section B

# Attachment to
# Declaration of George Gingo

9

EX-10.1 2 exhibit_10-1.htm

EXHIBIT 10.1

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.,
DEPOSITOR

CITIBANK, N.A.,
TRUSTEE

WELLS FARGO BANK, NATIONAL ASSOCIATION,
MASTER SERVICER AND SECURITIES ADMINISTRATOR

FEDERAL NATIONAL MORTGAGE ASSOCIATION
GUARANTOR (WITH RESPECT TO THE CLASS IX-A-1 CERTIFICATES)

and

BMC MORTGAGE CORPORATION
SPONSOR AND COMPANY

POOLING AND SERVICING AGREEMENT

Dated as of April 1, 2007

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.,
Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates

Series 2007-3

ARTICLE I
DEFINITIONS

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.    Conveyance of Mortgage Loans to Trustee.............................................57
Section 2.02.    Acceptance of Mortgage Loans by Trustee............................................59
Section 2.03.    Assignment of Interest in the Mortgage Loan Purchase Agreement and Subsequent Mortgage
                 Loan Purchase Agreement..........................................................62
Section 2.04.    Substitution of Mortgage Loans...................................................63
Section 2.05.    Issuance of Certificates.........................................................65
Section 2.06.    Representations and Warranties Concerning the Depositor..........................66
Section 2.07.    Conveyance of Subsequent Mortgage Loans..........................................67
Section 2.08.    Purposes and Powers of the Trust.................................................70

ARTICLE III
ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.    Master Servicer..................................................................71
Section 3.02.    REMIC-Related Covenants..........................................................72
Section 3.03.    Monitoring of Servicers..........................................................72
Section 3.04.    Fidelity Bond....................................................................74
Section 3.05.    Power to Act; Procedures.........................................................74
Section 3.06.    Due-on-Sale Clauses; Assumption Agreements.......................................75
Section 3.07.    Release of Mortgage Files........................................................75
Section 3.08.    Documents, Records and Funds in Possession of Master Servicer To Be Held for Trustee......76
Section 3.09.    Standard Hazard Insurance and Flood Insurance Policies...........................77
Section 3.10.    Presentment of Claims and Collection of Proceeds.................................77
Section 3.11.    Maintenance of the Primary Mortgage Insurance Policies...........................78
Section 3.12.    Trustee to Retain Possession of Certain Insurance Policies and Documents.........78
Section 3.13.    Realization Upon Defaulted Mortgage Loans........................................79
Section 3.14.    Compensation for the Master Servicer.............................................79
Section 3.15.    REO Property.....................................................................80
Section 3.16.    Annual Statement as to Compliance................................................85
Section 3.17.    Assessments of Compliance and Attestation Reports................................86
Section 3.18.    Reports Filed with Securities and Exchange Commission............................92
Section 3.19.    The Company......................................................................92
Section 3.20.    UCC..............................................................................92
Section 3.21.    Optional Purchase of Defaulted Mortgage Loans....................................92
Section 3.22.    Agreement to Appoint a Special Servicer..........................................94
Section 3.23.    Intention of the Parties and Interpretation......................................94
Section 3.24.    Monitoring of Amendments, Modifications and Waivers of the Mortgage Loans........95

*10*

Section 3.25.    Books and Records of the Master Servicer.................................95
Section 3.26.    Lender-Paid PMI Policy............................................96

ARTICLE IV
ACCOUNTS

Section 4.01.    Protected Accounts...............................................97
Section 4.02.    [Reserved].......................................................98
Section 4.03.    [Reserved].......................................................99
Section 4.04.    Distribution Account.............................................99
Section 4.05.    Permitted Withdrawals and Transfers from the Distribution Account.....101
Section 4.06.    Reserve Fund.....................................................103
                 (b) The Reserve Fund is an "outside reserve fund within the meaning of Treasury
                 Regulation Section 1.860G-2(h) and shall be an asset of the Trust Fund but not an asset
                 of any 2007-3 REMIC......................................................103
Section 4.07.    Class XP Reserve Account.........................................104
Section 4.08.    Posted Collateral Account........................................104
Section 4.09.    Pre-Funding Account and Pre-Funding Reserve Account.................104
Section 4.10     Interest Coverage Account........................................106

ARTICLE V
CERTIFICATES

Section 5.01.    Certificates.....................................................106
Section 5.02.    Registration of Transfer and Exchange of Certificates...............115
Section 5.03.    Mutilated, Destroyed, Lost or Stolen Certificates..................118
Section 5.04.    Persons Deemed Owners............................................118
Section 5.05.    Transfer Restrictions on Residual Certificates.....................119
Section 5.06.    Restrictions on Transferability of Certificates....................120
Section 5.07.    ERISA Restrictions...............................................120
Section 5.08.    Rule 144A Information.............................................121
Section 5.09.    The Guaranty.....................................................121

ARTICLE VI
PAYMENTS TO CERTIFICATEHOLDERS

Section 6.01.    Distributions on the Certificates.................................123
Section 6.02.    Allocation of Losses and Subsequent Recoveries on the Certificates....128
Section 6.03.    Payments.........................................................128
Section 6.04.    Statements to Certificateholders..................................129
Section 6.05.    Monthly Advances.................................................132
Section 6.06.    Compensating Interest Payments....................................133
Section 6.07.    Distributions on REMIC Regular Interests..........................139

ARTICLE VII
THE MASTER SERVICER

Section 7.01.    Liabilities of the Master Servicer................................135
Section 7.02.    Merger or Consolidation of the Master Servicer....................135
Section 7.03.    Indemnification by the Master Servicer and the Trust Fund..........135
Section 7.04.    Limitations on Liability of the Master Servicer and Others.........136
Section 7.05.    Master Servicer Not to Resign....................................137
Section 7.06.    Successor Master Servicer........................................137
Section 7.07.    Sale and Assignment of Master Servicing...........................137

ARTICLE VIII
DEFAULT

Section 8.01.    Events of Default................................................139
Section 8.02.    Successor to Act; Appointment of Successor.........................141
Section 8.03.    Notification to Certificateholders................................142
Section 8.04.    Waiver of Defaults...............................................142
Section 8.05.    List of Certificateholders.......................................143

ARTICLE IX
CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 9.01.    Duties of Trustee and Securities Administrator....................144
Section 9.02.    Certain Matters Affecting the Trustee and the Securities Administrator....146
Section 9.03.    Trustee and Securities Administrator Not Liable for Certificates or Mortgage Loans......147
Section 9.04.    Trustee and Securities Administrator May Own Certificates..........148
Section 9.05.    Trustee's and Securities Administrator's Fees and Expenses.........148
Section 9.06.    Eligibility Requirements for Trustee and Securities Administrator....148
Section 9.07.    Insurance........................................................149
Section 9.08.    Resignation and Removal of the Trustee and Securities Administrator....149
Section 9.09.    Successor Trustee and Successor Securities Administrator...........150
Section 9.10.    Merger or Consolidation of Trustee or Securities Administrator.....151
Section 9.11.    Appointment of Co-Trustee or Separate Trustee.....................151
Section 9.12.    Federal Information Returns and Reports to Certificateholders; REMIC Administration......152

ARTICLE X
TERMINATION

Section 10.01.   Termination Upon Repurchase by EHC or its Designee or Liquidation of the Mortgage Loans..156
Section 10.02.   Additional Termination Requirements...............................158

ARTICLE XI
MISCELLANEOUS PROVISIONS

Section 11.01.     Intent of Parties.................................................160
Section 11.02.     Amendment........................................................160
Section 11.03.     Recordation of Agreement.........................................161
Section 11.04.     Limitation on Rights of Certificateholders.......................162
Section 11.05.     Acts of Certificateholders.......................................163
Section 11.06.     Governing Law....................................................163
Section 11.07.     Notices..........................................................164
Section 11.08.     Severability of Provisions.......................................164
Section 11.09.     Successors and Assigns...........................................164
Section 11.10.     Article and Section Headings.....................................164
Section 11.11.     Counterparts.....................................................164
Section 11.12.     Notice to Rating Agencies and the Guarantor......................164

## EXHIBITS

Exhibit A-1      -   Form of Class I-A Certificates
Exhibit A-2      -   Form of Class M Certificates
Exhibit A-3      -   Form of Class B-1, I-B-2 and I-B-3 Certificates
Exhibit A-4      -   Form of Class B-4 Certificates
Exhibit A-5-1    -   Form of Class R Certificates
Exhibit A-5-2    -   Form of Class R-X Certificates
Exhibit A-6      -   Form of Class B-IO Certificates
Exhibit A-7      -   Form of Class XP Certificates
Exhibit A-8      -   Form of Class II-A-1 Certificates
Exhibit B        -   Mortgage Loan Schedule
Exhibit C        -   [Reserved]
Exhibit D-1      -   Request for Release of Documents (Treasury Bank)
Exhibit D-2      -   Request for Release of Documents (Wells Fargo)
Exhibit E        -   Form of Affidavit pursuant to Section 860G(e)(4)
Exhibit F-1      -   Form of Investment Letter
Exhibit F-2      -   Form of Rule 144A and Related Matters Certificate
Exhibit F-3      -   Form of Transferor Representation Letter
Exhibit G-1      -   Form of Treasury Bank Custodial Agreement
Exhibit G-2      -   Form of Wells Fargo Bank Custodial Agreement
Exhibit H-1      -   EMC Servicing Agreement
Exhibit H-2      -   HSBC Servicing Agreement
Exhibit I        -   Assignment Agreements
Exhibit J        -   Form of Mortgage Loan Purchase Agreement
Exhibit K        -   Form of Subsequent Mortgage Loan Purchase Agreement
Exhibit L        -   Form of Securities Administrator Back-up Certification
Exhibit M        -   Servicing Criteria to Be Addressed in Assessment of Compliance
Exhibit N        -   Form of Back-Up Certification
Exhibit O        -   Form of Trustee Limited Power of Attorney
Exhibit P        -   Form of Cap Contracts
Exhibit Q        -   Form 10-D, Form 8-K and Form 10-K Reporting Responsibility
Exhibit R        -   Additional Disclosure Information
Exhibit S        -   Form of Subsequent Transfer Instrument

## POOLING AND SERVICING AGREEMENT

Pooling and Servicing Agreement dated as of April 1, 2007, among Structured Asset Mortgage Investments II Inc., a Delaware corporation, as depositor (the "Depositor"), Citibank, N.A., a banking association organized under the laws of the United States, not in its individual capacity but solely as trustee (the "Trustee"), Federal National Mortgage Association, as guarantor of the Class II-A-1 Certificates (the "Guarantor"), Wells Fargo Bank, National Association, as master servicer (in such capacity, the "Master Servicer") and as securities administrator (in such capacity, the "Securities Administrator"), and EMC Mortgage Corporation, as sponsor (in such capacity, the "Sponsor") and as company (in such capacity, the "Company").

### PRELIMINARY STATEMENT

On or prior to the Closing Date or a Subsequent Transfer Date, in the case of Subsequent Transfer Loans, the Depositor acquired the Mortgage Loans or the Subsequent Mortgage Loans as the case may be, from the Sponsor. On the Closing Date, the Depositor will sell the Mortgage Loans and certain other property to the Trust Fund and receive in consideration therefor Certificates evidencing the entire beneficial ownership interest in the Trust Fund.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC I to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC I Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC II to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC II Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC III to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC III Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC IV to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC IV Regular Interest will be designated the "regular interest" in such REMIC.

The Class R Certificates will evidence ownership of the "residual interest" in each of REMIC I, REMIC II and REMIC III. The Class R-X Certificates will evidence ownership of the "residual interest" in REMIC IV.

Loan Group I will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $504,262,776.66. Loan Group II will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $414,807,444.92.

In consideration of the mutual agreements herein contained, the Depositor, the Guarantor, the Master Servicer, the

Securities Administrator, the Sponsor, the Company and the Trustee agree as follows:

---

## ARTICLE I
### Definitions

Whenever used in this Agreement, the following words and phrases, unless otherwise expressly provided or unless the context otherwise requires, shall have the meanings specified in this Article.

Accepted Master Servicing Practices: With respect to any Mortgage Loan, those customary mortgage servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Trustee in its capacity as successor Master Servicer (or the Master Servicer (except in its capacity as successor to a Servicer).

Account: The Distribution Account, the Interest Coverage Account, the Pre-Funding Account, the Pre-funding Reserve Account, the Protected Account, the Reserve Fund, the Posted Collateral Account or the Class XP Reserve Account, as the context may require.

Additional Disclosure: As defined in Section 3.18(a)(iv).

Additional Form 10-D Disclosure: As defined in Section 3.18(a)(i).

Additional Form 10-K Disclosure: As defined in Section 3.18(a)(iii).

Affiliate: As to any Person, any other Person controlling, controlled by or under common control with such Person. "Control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise. "Controlled" and "Controlling" have meanings correlative to the foregoing. The Trustee may conclusively presume that a Person is not an Affiliate of another Person unless a Responsible Officer of the Trustee has actual knowledge to the contrary.

Agreement: This Pooling and Servicing Agreement and all amendments hereof and supplements hereto.

Applicable Credit Rating: For any long-term deposit or security, a credit rating of AAA in the case of S&P or Aaa in the case of Moody's (or with respect to investments in money market funds, a credit rating of "AAAm" or "AAAm-G" in the case of S&P and the highest rating given by Moody's for money market funds in the case of Moody's). For any short-term deposit or security, or a rating of A-1+ in the case of S&P or Prime-1 in the case of Moody's.

Applicable State Law: For purposes of Section 9.12(e), the Applicable State Law shall be (a) the law of the State of New York and (b) such other state law whose applicability shall have been brought to the attention of the Securities Administrator and the Trustee by either (i) an Opinion of Counsel reasonably acceptable to the Securities Administrator and the Trustee delivered to it by the Master Servicer or the Depositor, or (ii) written notice from the appropriate taxing authority as to the applicability of such state law.

Applied Realized Loss Amount: With respect to any Distribution Date and a Class of Principal Certificates, the sum of the Realized Losses with respect to the Mortgage Loans, which are to be applied in reduction of the Certificate Principal Balance of such Class of Principal Certificates pursuant to this Agreement in an amount equal to the amount, if any, by which, (i) the aggregate Certificate Principal Balance of all of the Principal Certificates (after all distributions of principal on such Distribution Date) exceeds (ii) the aggregate Stated Principal Balance of the related Mortgage Loans for such Distribution Date. The Applied Realized Loss Amount shall be allocated first to the Class B-4 Certificates, the Class B-3 Certificates, the Class B-2 Certificates, the Class B-1 Certificates, the Class M-2 Certificates and the Class M-1 Certificates, in that order (so long as their respective Certificate Principal Balances have not been reduced to zero), and thereafter the Applied Realized Loss Amount with respect to Loan Group I shall be allocated first to the Class I-A-2 Certificates and then to the Class I-A-1 Certificates and with respect to Loan Group II, shall be allocated to the Class II-A-1 Certificates, in each case until the Certificate Principal Balance of each such Class has been reduced to zero.

Appraised Value: For any Mortgaged Property related to a Mortgage Loan, the amount set forth as the appraised value of such Mortgaged Property in an appraisal made for the mortgage originator in connection with its origination of the related Mortgage Loan.

Assessment of Compliance: As defined in Section 3.17.

Assignment Agreements: The agreements attached hereto as Exhibit I, whereby the Servicing Agreements (as defined therein), if applicable, were assigned to the Trustee for the benefit of the Certificateholders.

Attestation Report: As defined in Section 3.17.

Attesting Party: As defined in Section 3.17.

Back-Up Certification: As defined in Section 3.18(a)(iii).

Bankruptcy Code: The United States Bankruptcy Code, as amended, as codified in 11 U.S.C. §§ 101-1330.

Bankruptcy Loss: With respect to any Mortgage Loan, any Deficient Valuation or Debt Service Reduction related to such Mortgage Loan as reported by the Servicer to the Master Servicer.

Basis Risk Shortfall: With respect to any Distribution Date and each Class of Principal Certificates for which the Pass-Through Rate is based upon the related Net Rate Cap, the excess, if any, of (a) the amount of Current Interest that such Class would have been entitled to receive on such Distribution Date had the applicable Pass-Through Rate been calculated at a per annum rate equal to the lesser of (i) One-Month LIBOR plus the related Margin and (ii) 11.50% over (b) the amount of Current Interest on such Class of Offered Certificates calculated using a Pass-Though Rate equal to the related Net Rate Cap for such Distribution Date.

Basis Risk Shortfall Carry Forward Amount: With respect to any Distribution Date and each Class of Principal Certificates, the sum of the Basis Risk Shortfall for such Distribution Date and the Basis Risk Shortfall for all previous Distribution Dates not previously paid, together with interest thereon at a rate equal to the lesser of (i) One-Month LIBOR plus the related Margin and (ii) 11.50% per annum, for such Distribution Date.

Book-Entry Certificates: Initially, the Principal Certificates.

Business Day: Any day other than (i) a Saturday or a Sunday, or (ii) a day on which the New York Stock Exchange or Federal Reserve is closed or on which banking institutions in any jurisdiction in which the Trustee, the Guarantor, the Master Servicer, the related Custodian, any Servicer or the Securities Administrator are authorized or obligated by law or executive order to be closed.

Cap Contract: With respect to any of the Class I-A-1, Class I-A-2, Class II-A-1, Class M-1, Class M-2, Class B-1, Class B-2,

Class B-3 or Class B-4 Certificates, the respective cap contracts, dated as of April 30, 2007, between the Trustee, on behalf of the Trust for the benefit of the Class I-A-1, Class I-A-2, Class II-A-1, Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 or Class B-4 Certificateholders, as the case may be, and the Counterparty, together with any scheduling, confirmations or other agreements related thereto, attached hereto as Exhibit N.

Cap Contract Payment Amount: With respect to any Distribution Date and a Cap Contract, the amounts received from such Cap Contract, if any, on such Distribution Date.

Certificate: Any mortgage pass-through certificate evidencing a beneficial ownership interest in the Trust Fund signed and countersigned by the Securities Administrator in substantially the forms annexed hereto as Exhibits A-1, A-2, A-3, A-4, A-5-1, A-5-2, A-6, A-7 and A-8 with the blanks therein appropriately completed.

Certificates: The Senior Certificates, the Subordinate Certificates and the Residual Certificates.

Certificate Owner: Any Person who is the beneficial owner of a Certificate registered in the name of the Depository or its nominee.

Certificate Principal Balance: With respect to any Principal Certificate as of any Distribution Date, the initial principal amount of such Certificate plus, any Subsequent Recoveries added to the Certificate Principal Balance of such Certificates pursuant to Section 6.03 or Section 6.04 hereof, and reduced by (i) all amounts distributed on previous Distribution Dates on such Certificate with respect to principal and (ii) any Applied Realized Loss Amounts allocated to such Class on previous Distribution Dates. With respect to any Class of Certificates, the Certificate Principal Balance thereof will equal the sum of the Certificate Principal Balances of all Certificates in such Class. The initial Certificate Principal Balance (if any) for each Class of Certificates is set forth in Section 5.01(c)(iii) and (iv).

Certificate Register: The register maintained pursuant to Section 5.02.

Certificateholder: A Holder of a Certificate.

Certification Parties: As defined in Section 3.18(m)(iii).

Certifying Person: As defined in Section 3.18(m)(iii).

Class: With respect to the Certificates, any of Class I-A-1, Class I-A-2, Class II-A-1, Class M-1, Class M-2, Class B, Class B-X, Class B-1, Class B-2, Class B-3, Class B-4, Class B-IO and Class Xr Certificates.

Class A Certificates: The Class I-A Certificates and Class II-A-1 Certificates.

Class A Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class A Certificates immediately prior to such Distribution Date over (ii) the excess of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the product of (i) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (2) the sum of (x) 14.20% and (y) the Current Specified Overcollateralization Percentage for such Distribution Date.

Class I-A Certificates: The Class I-A-1 Certificates and Class I-A-2 Certificates.

Class I-A Principal Distribution Amount: With respect to any applicable Distribution Date, an amount equal to the lesser of (i) the Class I-A Principal Distribution Percentage multiplied by the Class A Principal Distribution Amount and (ii) the Certificate Principal Balance of the Class I-A Certificates.

Class I-A Principal Distribution Percentage: With respect to any applicable Distribution Date, a percentage equal to the Principal Funds allocable to Loan Group I divided by the aggregate Principal Funds.

Class II-A-1 Principal Distribution Amount: With respect to any applicable Distribution Date, an amount equal to the lesser of (i) the Class II-A-1 Principal Distribution Percentage multiplied by the Class A Principal Distribution Amount and (ii) the Certificate Principal Balance of the Class II-A-1 Certificates.

Class II-A-1 Principal Distribution Percentage: With respect to any applicable Distribution Date, a percentage equal to the Principal Funds allocable to Loan Group II divided by the aggregate Principal Funds.

Class B Certificates: The Class B-1, the Class B-2, the Class B-3 and the Class B-4 Certificates.

Class B-IO Advances: As defined in Section 6.01(b).

Class B-IO Distribution Amount: With respect to any Distribution Date, the Current Interest for the Class B-IO Certificates for such Distribution Date (which shall be deemed distributable with respect to the REMIC III Regular Interest B-IO-P); provided, however, that on and after the Distribution Date on which the aggregate Certificate Principal Balance of the Principal Certificates has been reduced to zero, the Class B-IO Distribution Amount shall include the Overcollateralization Amount (which shall be deemed distributable, first, with respect to the REMIC III Regular Interest B-IO-X in respect of accrued and unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and, thereafter, with respect to the REMIC III Regular Interest B-IO-P in respect of the principal balance thereof).

Class B-IO Pass-Through Rate: With respect to the Class B-IO Certificates and any Distribution Date or the REMIC III Regular Interest B-IO-X, a per annum rate equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (1) through (8) below, and the denominator of which is the aggregate principal balance of the REMIC II Regular Interests. For purposes of calculating the Pass-Through Rate for the Class B-IO Certificates, the numerator is equal to the sum of the following components:

1. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT1 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT1;

2. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT2 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT2;

3. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT4 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT4;

4. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LTY-X-1 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LTY-X-1;

5. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT5 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT5;

6. the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT6 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT6;

7.  the Uncertificated Pass-Through Rate for REMIC IX Regular Interest LT8 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC IX Regular Interest LT8; and

8.  the Uncertificated Pass-Through Rate for REMIC II Regular Interest LGY-I-2 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LGY-I-2,

Class B-1 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class B-1 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date) and (4) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the sum of 3.10% and the Current Specified Overcollateralization Percentage for such Distribution Date.

Class B-2 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class B-2 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date), and (5) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the sum of 2.10% and the Current Specified Overcollateralization Percentage for such Distribution Date.

Class B-3 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class B-3 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class B-2 Certificates (after taking into account the payment of the Class B-2 Principal Distribution Amount on such Distribution Date), and (6) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the sum of 1.10% and the Current Specified Overcollateralization Percentage for such Distribution Date.

Class B-4 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class B-4 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class B-2 Certificates (after taking into account the payment of the Class B-2 Principal Distribution Amount on such Distribution Date), (6) the Certificate Principal Balance of the Class B-3 Certificates (after taking into account the payment of the Class B-3 Principal Distribution Amount on such Distribution Date) and (7) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the Current Specified Overcollateralization Percentage for such Distribution Date.

Class Factor: With respect to each Certificate, as determined by the Securities Administrator following distributions on any Distribution Date, an amount equal to the Certificate Principal Balance of such Certificate as of such Distribution Date divided by the Certificate Principal Balance of such Certificate as the Closing Date.

Class M Certificates: The Class M-1 Certificates and the Class M-2 Certificates.

Class M-1 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class M-1 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date) and (2) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the sum of (I) 8.70% and (II) the Current Specified Overcollateralization Percentage for such Distribution Date.

Class M-2 Principal Distribution Amount: For any Distribution Date, an amount equal to the excess, if any, of (i) the Certificate Principal Balance of the Class M-2 Certificates immediately prior to such Distribution Date over (ii) the excess of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date over (b) the sum of (1) the Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class I-A Principal Distribution Amount and the Class II-A-1 Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date) and (3) the product of (x) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and (y) the sum of (I) 4.80% and (II) the Current Specified Overcollateralization Percentage for such Distribution Date.

Class R Certificate: Any of the Class R Certificates substantially in the form annexed hereto as Exhibit A-5-1 and evidencing ownership of interests designated as "residual interests" in REMIC I, REMIC II and REMIC III for purposes of the REMIC Provisions. Component I of the Class R Certificates is designated as the sole class of "residual interest" in REMIC X, Component II of the Class R Certificates is designated as the sole class of "residual interest" in REMIC XI and Component III of the Class R Certificates is designated as the sole class of "residual interest" in REMIC III.

Class R-X Certificate: Any of the Class R-X Certificates substantially in the form annexed hereto as Exhibit A-5-2 and evidencing ownership of the "residual interest" in REMIC IX for purposes of the REMIC Provisions.

Class XP Reserve Account: The account established and maintained by the Securities Administrator pursuant to Section 4.07 hereof.

Closing Date: April 30, 2007.



Commission: The U.S. Securities and Exchange Commission.

Compensating Interest Payment: As defined in Section 5.06.

Corporate Trust Office: The designated office of the Trustee or Securities Administrator, as applicable, where at any particular time its respective corporate trust business with respect to this Agreement shall be administered. The Corporate Trust Office of the Trustee at the date of the execution of this Agreement is located at 388 Greenwich Street, 14th Floor, New York, New York 10013, Attention: Structured Finance Agency & Trust BSALTA 2007-3. The Corporate Trust Office of the Securities Administrator at the date of the execution of this Agreement is located at 9062 Old Annapolis Road, Columbia, Maryland 21045, Attention: Corporate Trust Group, BSALTA 2007-3. For the purpose of registration and transfer and exchange only, the Corporate Trust Office of the Securities Administrator shall be located at Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479, Attention: Corporate Trust Group, BSALTA 2007-3.

Counterparty: Bear Stearns Financial Products Inc. and any successor thereto, or any successor counterparty under the Cap Contracts.

Countrywide: Countrywide Home Loans Servicing LP, and its successor in interest.

Countrywide Servicing Agreement: The Seller's Warranties and Servicing Agreement, dated as of September 1, 2002, as amended by Amendment No. 1, dated as of January 1, 2003; Amendment No. 2, dated as of September 1, 2004, and Amendment No. 3, dated as of January 1, 2006, between Countrywide and EMC.

Current Interest: As of any Distribution Date, with respect to each Class of Principal Certificates and the Class B-IO Certificates, (i) the interest accrued on the Certificate Principal Balance or Notional Amount, as applicable, during the related Interest Accrual Period at the applicable Pass-Through Rate plus any amount previously distributed with respect to interest for such Certificate that has been recovered as a voidable preference by a trustee in bankruptcy minus (ii) the sum of (a) any Prepayment Interest Shortfall for such Distribution Date, to the extent not covered by Compensating Interest Payments and (b) any shortfalls resulting from the application of the Relief Act during the related Due Period; provided, however, that for purposes of calculating Current Interest for any such Class, amounts specified in clauses (ii)(a) and (ii)(b) hereof for any such Distribution Date shall be allocated first to the Class B-IO Certificates and the Class S Certificates in reduction of amounts otherwise distributable to such Certificates on such Distribution Date and then any excess shall be allocated to each other Class of Certificates pro rata based on the respective amounts of interest accrued pursuant to clause (i) hereof for each such Class on such Distribution Date.

Current Specified Enhancement Percentage: For any Distribution Date, a percentage obtained by dividing (X) the sum of (i) the aggregate Certificate Principal Balance of the Subordinate Certificates and (ii) the Overcollateralization Amount, in each case prior to the distribution of the Principal Distribution Amount on such Distribution Date, by (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the end of the related Due Period (after reduction for Principal Prepayments and Realized Losses on the Mortgage Loans incurred during the related Prepayment Period).

Current Specified Overcollateralization Percentage: For any Distribution Date, the percentage equivalent of a fraction, the numerator of which is the Overcollateralization Target Amount, and the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date.

Custodial Agreement: As applicable, (i) the custodial agreement, dated as of the Closing Date, among the Trustee, Structured Asset Mortgage Investments II Inc., as company, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, and Wells Fargo Bank, National Association, as Custodian, substantially in the form of Exhibit G-2 hereto or (ii) the custodial agreement dated as of the Closing Date, among the Trustee, Structured Asset Mortgage Investments II Inc., as company, Wells Fargo, National Association, as Master Servicer and Securities Administrator, and Treasury Bank, A Division of Countrywide Bank, FSB, as Custodian, substantially in the form of Exhibit G-1 hereto.

Custodian: As applicable, (i) Wells Fargo Bank, National Association, or any successor custodian appointed pursuant to the provisions hereof and of the related Custodial Agreement, with respect to the Mortgage Loans set forth on Schedule I to the related Custodial Agreement, or (ii) Treasury Bank, a Division of Countrywide Bank, FSB, or any successor custodian appointed pursuant to the provisions hereof and of the related Custodial Agreement, with respect to the Mortgage Loans set forth on Schedule I to the related Custodial Agreement.

Cut-off Date: April 1, 2007.

Cut-off Date Balance: $919,070,221.58.

DBRS: DBRS Limited or DBRS, Inc., and any successor in interest.

Debt Service Reduction: Any reduction of the Scheduled Payments which a Mortgagor is obligated to pay with respect to a Mortgage Loan as a result of any proceeding under the Bankruptcy Code or any other similar state law or other proceeding.

Deficiency Amount: With respect to any Distribution Date, the sum of (i) the Guaranteed Interest Distribution Amount and (ii) the Guaranteed Principal Distribution Amount.

Deficient Valuation: With respect to any Mortgage Loan, a valuation of the Mortgaged Property by a court of competent jurisdiction in an amount less than the then outstanding indebtedness under the Mortgage Loan, which valuation results from a proceeding initiated under the Bankruptcy Code or any other similar state law or other proceeding.

Delinquent: The delinquency method used for calculations with respect to the Mortgage Loans will be in accordance with the methodology used by lenders regulated by the Office of Thrift Supervision. Under this method, a Mortgage Loan is considered "30 days or more Delinquent" if the borrower fails to make a scheduled payment prior to the close of business on the Mortgage Loan's first succeeding due date. For example, if a securitization had a closing date occurring in August and a cut-off date of August 1, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would not be described as 30 days delinquent as of the cut-off date. Such Mortgage Loan with a payment due on June 1 that remained unpaid as of the close of business on July 31 would be described as 30 days delinquent as of the cut-off date. A Mortgage Loan would be considered "60 days or more Delinquent" with respect to such scheduled payment if such scheduled payment were not made prior to the close of business on the Mortgage Loan's second succeeding due date (or, in the preceding example, if the Mortgage Loan with a payment due on May 1 remained unpaid as of the close of business on July 31). Similarly for "90 days or more Delinquent" and so on. Unless otherwise specified, with respect to any date of determination, determinations of delinquency are made as of the last day of the prior calendar month. Mortgage Loans with Due Dates which are not the first of the month are treated as if the Due Date was the first of the following month.

Depositor: Structured Asset Mortgage Investments II Inc., a Delaware limited liability company, or its successors in interest.

Depositor Information: As defined in Section 3.18(c).

Depository: The Depository Trust Company, the nominee of which is Cede & Co., or any successor thereto.

Depository Agreement: The meaning specified in Section 5.01(a) hereof.

Depository Participant: A broker, dealer, bank or other financial institution or other Person for whom from time to time the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Designated Depository Institution: A depository institution (commercial bank, federal savings bank, mutual savings bank or savings and loan association) or trust company (which may include the Trustee), the deposits of which are fully insured by the FDIC to the extent provided by law.

Determination Date: With respect to each Mortgage Loan, the Determination Date as defined in the Servicing Agreement.

Disqualified Organization: Any of the following: (i) the United States, any state or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for the Freddie Mac or any successor thereto, a majority of its board of directors is not selected by such governmental unit), (ii) any foreign government, any international organization, or any agency or instrumentality thereof or of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code or (v) any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an ownership interest in a Residual Certificate by such Person may cause any 2007-3 REMIC contained in the Trust or any Person having an ownership interest in the Residual Certificate (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the transfer of an ownership interest in a Residual Certificate to such Person. The terms "United States", "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Distribution Account: The trust account or accounts created and maintained by the Securities Administrator pursuant to Section 4.04, which shall be denominated "Citibank, N.A., as Trustee f/b/o holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3 - Distribution Account". The Distribution Account shall be an Eligible Account.

Distribution Account Deposit Date: The Business Day prior to each Distribution Date.

Distribution Date: The 25th day of any month, beginning in the month immediately following the month of the Closing Date, or, if such 25th day is not a Business Day, the Business Day immediately following.

Distribution Report: The Asset-Backed Issuer Distribution Report pursuant to Section 13 or 15(d) of the Exchange Act.

DTC Custodian: Wells Fargo Bank, National Association, or its successors in interest as custodian for the Depository.

Due Date: With respect to each Mortgage Loan, the date in each month on which its Scheduled Payment is due if such due date is the first day of a month and otherwise is deemed to be the first day of the following month or such other date specified in the related Servicing Agreement.

Due Period: With respect to any Distribution Date and each Mortgage Loan, the period commencing on the second day of the month preceding the calendar month in which the Distribution Date occurs and ending at the close of business on the first day of the month in which the Distribution Date occurs.

EDGAR: As defined in Section 3.18.

Eligible Account: Any of (i) a segregated account maintained with a federal or state chartered depository institution (A) the short-term obligations of which are rated A-1 or better by Standard & Poor's and P-1 by Moody's at the time of any deposit therein or (B) insured by the FDIC (to the limits established by such Corporation), the uninsured deposits in which account are otherwise secured such that, as evidenced by an Opinion of Counsel (obtained by the Person requesting that the account be held pursuant to this clause (i)) delivered to the Securities Administrator prior to the establishment of such account, the Certificateholders will have a claim with respect to the funds in such account and a perfected first priority security interest against any collateral (which shall be limited to Permitted Investments, each of which shall mature not later than the Business Day immediately preceding the Distribution Date next following the date of investment in such collateral or the Distribution Date if such Permitted Investment is an obligation of the institution that maintains the Distribution Account) securing such funds that is superior to claims of any other depositors or general creditors of the depository institution with which such account is maintained, (ii) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company with trust powers acting in its fiduciary capacity or (iii) a segregated account or accounts of a depository institution acceptable to the Rating Agencies (as evidenced in writing by the Rating Agencies that use of any such account as the Distribution Account will not have an adverse effect on the then-current ratings assigned to the Classes of Certificates then rated by the Rating Agencies). Eligible Accounts may bear interest.

EMC: EMC Mortgage Corporation, and any successor thereto.

EMC Servicing Agreement: The Servicing Agreement, dated as of April 1, 2007, between Structured Asset Mortgage Investments II Inc. and EMC as attached hereto as Exhibit H-2.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: As defined in Section 8.01.

Excess Cashflow: With respect to any Distribution Date, the sum of (i) Remaining Excess Spread for such Distribution Date and (ii) Overcollateralization Release Amount for such Distribution Date; provided, however, that the Excess Cashflow shall include Principal Funds on and after the Distribution Date on which the aggregate Certificate Principal Balance of the Class I-A-1, Class I-A-2, Class II-A-1, Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates has been reduced to zero (other than Principal Funds otherwise distributed to the Holders of Class I-A-1, Class I-A-2, Class II-A-1, Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates on such Distribution Date).

Excess Liquidation Proceeds: To the extent that such amount is not required by law to be paid to the related Mortgagor, the amount, if any, by which Liquidation Proceeds with respect to a Liquidated Mortgage Loan exceed the sum of (i) the Outstanding Principal Balance of such Mortgage Loan and accrued but unpaid interest at the related Mortgage Interest Rate through the last day of the month in which the related Liquidation Date occurs, plus (ii) related Liquidation Expenses.

Excess Spread: With respect to any Distribution Date, the excess, if any of (i) the Interest Funds for such Distribution Date over (ii) the sum of the Current Interest on the Principal Certificates and Interest Carry Forward Amounts on the Class A Certificates, in each case on such Distribution Date.

Exchange Act: Securities Exchange Act of 1934, as amended.

Exchange Act Reports: Any reports required to be filed pursuant to Sections 3.17, 3.18 and 3.23 of this Agreement.

Extra Principal Distribution Amount: With respect to any Distribution Date, an amount derived from Excess Spread equal to the lesser of (i) the excess, if any, of the Overcollateralization Target Amount for such Distribution Date over the Overcollateralization Amount for such Distribution Date and (ii) the Excess Spread for such Distribution Date.

Fannie Mae:  Federal National Mortgage Association and any successor thereto.

FDIC:  Federal Deposit Insurance Corporation and any successor thereto.

Final Certification:  The certification substantially in the form of Exhibit Three to the related Custodial Agreement.

Fiscal Quarter:  December 1 through the last day of February, March 1 through May 31, June 1 through August 31, or September 1 through November 30, as applicable.

Fitch:  Fitch, Inc., Fitch Ratings Ltd, and its subsidiaries.

Form 8-K Disclosure Information:  As defined in Section 3.18(a)(ii).

Fractional Undivided Interest:  With respect to any Class of Certificates (other than the Class XP Certificates), the fractional undivided interest evidenced by any Certificate of such Class the numerator of which is the Certificate Principal Balance of such Certificate and the denominator of which is the Certificate Principal Balance of such Class.  With respect to the Class XP Certificates, the percentage interest stated thereon.  With respect to the Certificates in the aggregate, the fractional undivided interest evidenced by (i) the Residual Certificates will be deemed to equal 1.00% (in the aggregate), (ii) the Class B-IO Certificates will be deemed to equal 1.00% and (iii) a Certificate of any other Class will be deemed to equal 99.00% multiplied by a fraction, the numerator of which is the Certificate Principal Balance of such Certificate and the denominator of which is the aggregate Certificate Principal Balance of all the Certificates other than the Class B-IO Certificates.

Freddie Mac:  Freddie Mac, formerly the Federal Home Loan Mortgage Corporation, and any successor thereto.

Global Certificate:  Any Private Certificate registered in the name of the Depository or its nominee, beneficial interests in which are reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly or as an indirect participant in accordance with the rules of such depository).

Grantor Trust:  As defined in Section 9.12(b).

Gross Margin:  As to each Mortgage Loan, the fixed percentage set forth in the related Mortgage Note and indicated on the Mortgage Loan Schedule which percentage is added to the related Index on each Interest Adjustment Date to determine (subject to rounding, the minimum and maximum Mortgage Interest Rate and the Periodic Rate Cap) the Mortgage Interest Rate until the next Interest Adjustment Date.

Group I Mortgage Loans:  The Mortgage Loans identified as such on the Mortgage Loan Schedule including any Subsequent Mortgage Loans added to Loan Group I.

Group II Mortgage Loans:  The Mortgage Loans identified as such on the Mortgage Loan Schedule.

Guaranteed Interest Distribution Amount:  For any Distribution Date and the Class II-A-1 Certificates the amount, if any, after giving effect to the distributions of interest on the Class II-A-1 Certificates with respect to such Distribution Date (without regard to payments under the Guaranty), by which the (i) the Current Interest on the Class II-A-1 Certificates for such Distribution Date exceeds (ii) the amount of interest actually distributed to the holders of the Class II-A-1 Certificates on such Distribution Date (including any amounts from the related Cap Contract).

Guaranteed Principal Distribution Amount:  With respect to any Distribution Date, any Applied Realized Loss Amount allocated to the Class II-A-1 Certificates.

Guarantor:  Fannie Mae, or its successor in interest.

Guarantor Interest Reimbursement Amount:  With respect to any Distribution Date, (i) the sum of any accrued but unpaid Guaranty Fees, and (ii) the sum of all amounts paid by the Guarantor in respect of Guaranteed Interest Distribution Amounts on all prior Distribution Dates to the extent not previously reimbursed, in each case plus accrued and unpaid interest thereon at a rate equal to the prime rate applicable for such Distribution Date as published in the Wall Street Journal.

Guarantor Payment:  Any payment made by the Guarantor in respect of a Guaranteed Interest Distribution Amount or a Guaranteed Principal Distribution Amount.

Guarantor Principal Reimbursement Amount:  With respect to any Distribution Date, the sum of all amounts paid by the Guarantor in respect of Guaranteed Principal Distribution Amounts on all prior Distribution Dates to the extent not previously reimbursed, plus accrued and unpaid interest thereon at a rate equal to the prime rate applicable for such Distribution Date as published in the Wall Street Journal.

Guarantor Reimbursement Amount:  With respect to any Distribution Date, the sum of the Guarantor Interest Reimbursement Amount and the Guarantor Principal Reimbursement Amount.

Guaranty:  The obligations of the Guarantor pursuant to Section 3.09.

Guaranty Fee:  For any Distribution Date and with respect to the Class II-A-1 Certificates, the fee payable to the Guarantor in respect of its services as Guarantor that accrues at the Guaranty Fee Rate on a balance equal to the aggregate Certificate Principal Balance of the Class II-A-1 Certificates immediately prior to such Distribution Date, computed on the basis of a 360-day year consisting of twelve 30-day months.

Guaranty Fee Rate:  0.12%.

Holder:  The Person in whose name a Certificate is registered in the Certificate Register, except that, subject to Sections 11.02(b) and 11.05(a), solely for the purpose of giving any consent pursuant to this Agreement, any Certificate registered in the name of the Sponsor, the Master Servicer, the Securities Administrator or the Trustee or any Affiliate thereof shall be deemed not to be outstanding and the Fractional Undivided Interest evidenced thereby shall not be taken into account in determining whether the requisite percentage of Fractional Undivided Interests necessary to effect any such consent has been obtained.

Homebanc:  HomeBanc Mortgage Corporation, and its successor in interest.

Homebanc Servicing Agreement:  The Purchase, Warranties and Servicing Agreement, dated as of January 1, 2004, as amended by the Amended and Restated Amendment No. 1, dated as of January 27, 2006, between Homebanc and EMC, and by the related Assignment Agreement.

HSBC:  HSBC Mortgage Corporation (USA), and its successor in interest.

HSBC Servicing Agreement:  The Amended and Restated Purchase, Warranties and Servicing Agreement, dated as of September 1, 2005, as amended by Amendment Reg AB, dated as of November 7, 2005, between HSBC and EMC, attached hereto as Exhibit M-2.

Indemnified Persons:  The Trustee, the Master Servicer, the Guarantor, each Custodian and the Securities Administrator and

*18*

their officers, directors, agents and employees and, with respect to the Trustee, any separate co-trustee and its officers, directors, agents and employees.

Index: The index, if any, specified in a Mortgage Note by reference to which the related Mortgage Interest Rate will be adjusted from time to time.

Individual Certificate: Any Private Certificate registered in the name of the Holder other than the Depository or its nominee.

Initial Certification: The certification substantially in the form of Exhibit One to the related Custodial Agreement.

Initial Mortgage Loan: A Mortgage Loan transferred and assigned to the Trustee on the Closing Date pursuant to Section 2.01 and held as part of the Trust, as identified in the applicable Mortgage Loan Schedule.

Interest Accrual Period: With respect to each Distribution Date, for each Class of Principal Certificates will be the period from and including the preceding Distribution Date (or from and including the Closing Date, in the case of the first Distribution Date) to and including the day prior to the current Distribution Date.

Interest Adjustment Date: With respect to a Mortgage Loan, the date, if any, specified in the related Mortgage Note on which the Mortgage Interest Rate is subject to adjustment.

Interest Carry-Forward Amount: As of the first Distribution Date and with respect to each Class of Principal Certificates, zero, and for each Distribution Date thereafter, the sum of (i) the excess of (a) the Current Interest for such Class with respect to prior Distribution Dates over (b) the amount actually distributed to such Class of Certificates with respect to interest on or after such prior Distribution Dates and (ii) interest thereon (to the extent permitted by applicable law) at the applicable Pass-Through Rate for such Class for the related Interest Accrual Period including the Interest Accrual Period relating to such Distribution Date.

Interest Coverage Account: The account or sub-account established and maintained pursuant to Section 4.10 and which shall be an Eligible Account or a sub-account of an Eligible Account.

Interest Coverage Amount: The amount to be paid by the Depositor to the Paying Agent for deposit in the Interest Coverage Account on the Closing Date pursuant to Section 4.10, which amount is $1,710,111.

Interest Funds: For any Distribution Date and each Loan Group, (a) the sum, without duplication, of (i) all scheduled interest collected in respect to the related Mortgage Loans during the related Due Period less the related Servicing Fee and Master Servicing Fee, (ii) all Monthly Advances relating to interest with respect to the related Mortgage Loans remitted by the Servicers or Master Servicer, as applicable, on or prior to the related Distribution Account Deposit Date, (iii) all Compensating Interest Payments with respect to the related Mortgage Loans and required to be remitted by the Master Servicer pursuant to this Agreement or the related Servicer pursuant to the related Servicing Agreement with respect to such Distribution Date, (iv) Liquidation Proceeds and Subsequent Recoveries collected during the related Prepayment Period with respect to the related Mortgage Loans to the extent such Liquidation Proceeds or Subsequent Recoveries relate to interest, (v) all amounts relating to interest with respect to each related Mortgage Loan purchased by PMC (on its own behalf or on behalf of Master Funding) pursuant to Sections 2.02 and 2.03 or by the Depositor pursuant to Section 3.21 during the related Due Period, (vi) all amounts in respect of interest paid by EMC pursuant to Section 10.01 in respect to the related Loan Group, in each case to the extent remitted by EMC or its designee, as applicable, to the Distribution Account pursuant to this Agreement, (vii) all amounts in respect of interest proceeds received on the related Mortgage Loans from the exercise of an optional termination pursuant to Section 10.01, (viii) with respect to the Class I-A Certificates, any amount withdrawn from the Pre-Funding Reserve Account pursuant to Section 4.05(c)(ii), and (ix) with respect to the Class II-A-1 Certificates, any Guaranteed Interest Distribution Amount received by the Securities Administrator from the Guarantor on such Distribution Date minus (b) all amounts required to be reimbursed pursuant to Sections 4.01 and 4.05 or as otherwise set forth in this Agreement and allocated to such Loan Group as provided in Section 6.01.

Interest Shortfall: With respect to any Distribution Date and each Mortgage Loan that during the related Prepayment Period was the subject of a Principal Prepayment or constitutes a Relief Act Mortgage Loan, an amount determined as follows:

(a) Partial Principal Prepayments received during the relevant Prepayment Period: The difference between (i) one month's interest at the applicable Net Rate on the amount of such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Rate) received at the time of such prepayment;

(b) Principal Prepayments in full received during the relevant Prepayment Period: The difference between (i) one month's interest at the applicable Net Rate on the Stated Principal Balance of such Mortgage Loan immediately prior to such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Rate) received at the time of such prepayment; and

(c) Relief Act Mortgage Loans: As to any Relief Act Mortgage Loan, the excess of (i) 30 days' interest (or, in the case of a Principal Prepayment in full, interest to the date of prepayment) on the Stated Principal Balance thereof (or, in the case of a Principal Prepayment in part, on the amount so prepaid) at the related Net Rate over (ii) 30 days' interest (or, in the case of a Principal Prepayment in full, interest to the date of prepayment) on such Stated Principal Balance (or, in the case of a Principal Prepayment in part, on the amount so prepaid) at the annual interest rate required to be paid by the Mortgagor as limited by application of the Relief Act.

Institutional Accredited Investor: Any Person meeting the requirements of Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act or any entity all of the equity holders in which come within such paragraphs.

Insurance Policy: With respect to any Mortgage Loan, any standard hazard insurance policy, flood insurance policy or title insurance policy.

Insurance Proceeds: Amounts paid by the insurer under any Insurance Policy covering any Mortgage Loan or Mortgaged Property other than amounts required to be paid over to the Mortgagor pursuant to law on the related Mortgage Note or Security Instrument and other than amounts used to repair or restore the Mortgaged Property or to reimburse the Mortgaged Property or to reimburse insured expenses, including the related Servicer's costs and expenses incurred in connection with presenting claims under the related Insurance Policies.

Interim Certification: The certification substantially in the form of Exhibit Two to the related Custodial Agreement.

Investment Letter: The letter to be furnished by each Institutional Accredited Investor which purchases any of the Private Certificates in connection with such purchase, substantially in the form set forth as Exhibit F-1 hereto.

Latest Possible Maturity Date: As defined in Section 9.01(d) herein.

Lender-Paid PMI Policy: Any lender-paid primary mortgage insurance policy, including the RMIC Policy.

Lender-Paid PMI Rate: With respect to each Mortgage Loan covered by a Lender-Paid PMI policy, the premium to be paid by the applicable Servicer or the Master Servicer (with respect to the RMIC Policy) out of interest collections on the related Mortgage Loan or Mortgage Loans (in the case of the Master Servicer), as stated in the Mortgage Loan Schedule.

LIBOR Business Day: Any day other than a Saturday or a Sunday or a day on which banking institutions in the city of London,

**19**

England are required or authorized by law to be closed.

LIBOR Determination Date: With respect to each Class of Principal Certificates and for the first Interest Accrual Period, April 26, 2007. With respect to each Class of Principal Certificates and any Interest Accrual Period thereafter, the second LIBOR Business Day preceding the commencement of such Interest Accrual Period.

Liquidated Mortgage Loan: Any defaulted Mortgage Loan as to which the Servicer or the Master Servicer has determined that all amounts it expects to recover from or on account of such Mortgage Loan have been recovered.

Liquidation Date: With respect to any Liquidated Mortgage Loan, the date on which the Master Servicer or the Servicer has certified that such Mortgage Loan has become a Liquidated Mortgage Loan.

Liquidation Expenses: With respect to a Mortgage Loan in liquidation, unreimbursed expenses paid or incurred by or for the account of the Master Servicer or the Servicer in connection with the liquidation of such Mortgage Loan and the related Mortgage Property, such expenses including (a) property protection expenses, (b) property sales expenses, (c) foreclosure and sale costs, including court costs and reasonable attorneys' fees, and (d) similar expenses reasonably paid or incurred in connection with liquidation.

Liquidation Proceeds: Amounts received in connection with the liquidation of a defaulted Mortgage Loan, whether through trustee's sale, foreclosure sale, Insurance Proceeds, condemnation proceeds or otherwise, including any amounts received by the Servicer or Master Servicer specifically related to a Liquidated Mortgage Loan or disposition of an REO Property prior to the related Prepayment Period that resulted in a Realized Loss, after liquidation of such Mortgage Loan or disposition of such REO Property.

Loan Group: Either of Loan Group I or Loan Group II, as applicable.

Loan Group I: The Mortgage Loans designated as belonging to Loan Group I on the Mortgage Loan Schedule including any subsequent Mortgage Loans added to Loan Group I.

Loan Group I Certificates: The Class I-A-1 Certificates and Class I-A-2 Certificates.

Loan Group II: The Mortgage Loans designated as belonging to Loan Group II on the Mortgage Loan Schedule.

Loan Group II Certificates: The Class II-A-1 Certificates.

Loan-to-Value Ratio: With respect to any Mortgage Loan, the fraction, expressed as a percentage, the numerator of which is the original principal balance of the related Mortgage Loan and the denominator of which is the Original Value of the related Mortgaged Property.

Loss Allocation Limitation: The meaning specified in Section 6.04(c) hereof.

Loss Severity Percentage: With respect to any Distribution Date, the percentage equivalent of a fraction, the numerator of which is the amount of Realized Losses incurred on a Mortgage Loan and the denominator of which is the Stated Principal Balance of such Mortgage Loan immediately prior to the liquidation of such Mortgage Loan.

Lost Notes: The original Mortgage Notes that have been lost, as indicated on the Mortgage Loan Schedule.

Margin: With respect to any Distribution Date on or prior to the first possible Optional Termination date for the Certificates and (i) the Class I-A-1 Certificates, 0.210% per annum, (ii) the Class I-A-2 Certificates, 0.270% per annum, (iii) the Class II-A-1 Certificate, 0.060% per annum, (iv) the Class M-1 Certificates, 0.420% per annum, (v) the Class M-2 Certificates, 0.750% per annum, (vi) the Class B-1 Certificates, 1.500% per annum, (vii) the Class B-2 Certificates, 2.150% per annum, (viii) the Class B-3 Certificates, 2.150% per annum and (ix) the Class B-4 Certificates, 2.150% per annum; and with respect to any Distribution Date after the first possible Optional Termination date for the Certificates and (i) the Class I-A-1 Certificates, 0.420% per annum, (ii) the Class I-A-2 Certificates, 0.540% per annum, (iii) the Class II-A-1 Certificate, 0.040% per annum, (iv) the Class M-1 Certificates, 0.630% per annum, (v) the Class M-2 Certificates, 1.120% per annum, (vi) the Class B-1 Certificates, 2.250% per annum, (vii) the Class B-2 Certificates, 3.225% per annum, (viii) the Class B-3 Certificates, 3.225% per annum and (ix) the Class B-4 Certificates, 3.225% per annum.

Marker Rate: With respect to the Class B-IO Certificates or the REMIC III Regular Interest B-IO-I and any Distribution Date, in relation to the REMIC II Regular Interests LT1, LT2, LT3, LT4 and LT7-I-1, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC II Pass-Through Rates for REMIC II Regular Interest LT2 and REMIC II Regular Interest LT3 and, in relation to the REMIC II Regular Interests LT5, LT6, LT7, LT8 and LT7-I-2, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC II Pass-Through Rates for REMIC II Regular Interest LT6 and REMIC II Regular Interest LT7.

Master Funding: Master Funding LLC, a Delaware limited liability company, and its successor and assigns, in its capacity as seller of the Master Funding Mortgage Loans to the Depositor.

Master Funding Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Master Funding is the applicable Seller.

Master Servicer: As of the Closing Date, Wells Fargo Bank, National Association and, thereafter, its respective successors in interest that meet the qualifications of the Servicing Agreements and this Agreement.

Master Servicer Information: As defined in Section 3.18(c).

Master Servicing Compensation: As defined in Section 3.14.

Master Servicer Information: As defined in Section 3.18(c).

Master Servicing Fee: As set forth in Section 3.14.

Master Servicing Fee Rate: An amount equal to 0.005% per annum.

Material Defect: As defined in Section 2.02(a).

Maximum Lifetime Mortgage Rate: The maximum level to which a Mortgage Interest Rate can adjust in accordance with its terms, regardless of changes in the applicable Index.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System: The system of recording transfers of Mortgage Loans electronically maintained by MERS.

Mid America: Mid America Bank, fsb, and its successor in interest.

Mid America Servicing Agreement: The Purchase, Warranties and Servicing Agreement, dated as of February 1, 2006, as amended

20

by Amendment No. 1 to the Purchase, Warranties and Servicing Agreement, dated as of February 1, 2006, between Mid America and EMC, and by the related Assignment Agreement.

MIN: The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS® System.

Minimum Lifetime Mortgage Rate: The minimum level to which a Mortgage Interest Rate can adjust in accordance with its terms, regardless of changes in the applicable Index.

MOM Loan: With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Advance: An advance of principal or interest required to be made by the applicable Servicer pursuant to the related Servicing Agreement or the Master Servicer pursuant to Section 6.08.

Monthly Statement: The statement delivered to the Certificateholders pursuant to Section 6.07.

Monthly Delinquency Percentage: With respect to a Distribution Date, the percentage equivalent of a fraction, the numerator of which is the aggregate Stated Principal Balance of the Mortgage Loans that are 60 days or more Delinquent or are in bankruptcy or in foreclosure or are REO Properties for such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of Mortgage Loans for such Distribution Date.

Moody's: Moody's Investors Service, Inc. or its successor in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first priority lien on an estate in fee simple or leasehold interest in real property securing a Mortgage Loan.

Mortgage File: The mortgage documents listed in Section 2.01(b) pertaining to a particular Mortgage Loan and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Interest Rate: The annual rate at which interest accrues from time to time on any Mortgage Loan pursuant to the related Mortgage Note, which rate is initially equal to the "Mortgage Interest Rate" set forth with respect thereto on the Mortgage Loan Schedule.

Mortgage Loan: A mortgage loan transferred and assigned to the Trustee pursuant to Section 2.01, Section 2.04 or Section 2.07 and held as a part of the Trust Fund, as identified in the Mortgage Loan Schedule (which shall include, without limitation, with respect to each Mortgage Loan, each related Mortgage Note, Mortgage and Mortgage File and all rights appertaining thereto), including a mortgage loan the property securing which has become an REO Property.

Mortgage Loan Purchase Agreement: The Mortgage Loan Purchase Agreement dated as of April 30, 2007, among EMC, as a seller, Master Funding, as a seller, and Structured Asset Mortgage Investments II Inc., as purchaser, and all amendments thereof and supplements thereto, attached as Exhibit J.

Mortgage Loan Schedule: The schedule, attached hereto as Exhibit B with respect to the Initial Mortgage Loans, and the schedule attached as Exhibit 1 to the related Subsequent Transfer Instrument with respect to the related Subsequent Mortgage Loans, each as amended from time to time to reflect the repurchase or substitution of Mortgage Loans or the addition of Subsequent Mortgage Loans pursuant to this Agreement, or the Mortgage Loan Purchase Agreement or the Subsequent Mortgage Loan Purchase Agreement, as the case may be.

Mortgage Note: The originally executed note or other evidence of the indebtedness of a Mortgagor under the related Mortgage Loan.

Mortgaged Property: Land and improvements securing the indebtedness of a Mortgagor under the related Mortgage Loan or, in the case of REO Property, such REO Property.

Mortgagor: The obligor on a Mortgage Note.

Net Interest Shortfall: With respect to any Distribution Date, the Interest Shortfall, if any, for such Distribution Date net of Compensating Interest Payments with respect to such Distribution Date.

Net Liquidation Proceeds: As to any Liquidated Mortgage Loan, Liquidation Proceeds net of (i) Liquidation Expenses which are payable therefrom to the Servicer or the Master Servicer in accordance with the Servicing Agreement or this Agreement and (ii) unreimbursed advances by the Servicer or the Master Servicer and Monthly Advances.

Net Rate: With respect to each Mortgage Loan, the Mortgage Interest Rate in effect from time to time less the sum of (1) the Servicing Fee Rate, (2) the Master Servicing Fee Rate and (3) the Lender Paid PMI Rate, if any, attributable thereto, in each case expressed as a per annum rate.

Net Rate Cap: (a) With respect to any Distribution Date and the Class I-A-1 Certificates and the Class I-A-2 Certificates, the weighted average of the Net Rates on the Group I Mortgage Loans as of the beginning of the related Due Period, weighted on the basis of the Stated Principal Balances thereof as of the preceding Distribution Date, in each case as adjusted to an effective rate reflecting the accrual of interest on an actual/360 basis; (b) with respect to any Distribution Date and the Class II-A-1 Certificates, the weighted average of the Net Rates on the Group II Mortgage Loans minus the Guaranty Fee Rate payable to Fannie Mae as of the beginning of the related Due Period, weighted on the basis of the Stated Principal Balances thereof as of the preceding Distribution Date, in each case as adjusted to an effective rate reflecting the accrual of interest on an actual/360 basis; and (c) with respect to any Distribution Date and the Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates, the weighted average of the weighted average Net Rates of the Mortgage Loans in each Loan Group weighted in proportion to the excess of the aggregate Stated Principal Balance of each Loan Group over the aggregate Certificate Principal Balance of the related Senior Certificates, in each case as adjusted to an effective rate reflecting the accrual of interest on the basis of a 360-day year and the actual number of days elapsed in the related Interest Accrual Period. For federal income tax purposes, the Net Rate Cap with respect to the Subordinate Certificates is equal to the weighted average of the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests Y-I-1 and Y-I-2.

NIM Issuer: The entity established as the issuer of the NIM Securities.

NIM Securities: Any debt securities secured or otherwise backed by some or all of the Certificates, including the Class R-X Certificate.

NIM Trustee: The trustee for any NIM Securities.

Non-Offered Subordinate Certificates: The Class B-4, Class XP and Class B-IO Certificates.

Nonrecoverable Advance: Any advance or Monthly Advance (i) which was previously made or is proposed to be made by the Master Servicer, the Trustee (in its capacity as successor Master Servicer) or the applicable Servicer and (ii) which, in the good faith judgment of the Master Servicer, the Trustee in its capacity as successor Master Servicer or the applicable Servicer, will not or, in the case of a proposed advance or Monthly Advance, would not, be ultimately recoverable by the Master Servicer, the Trustee

(as successor Master Servicer) or the applicable Servicer from Liquidation Proceeds, Insurance Proceeds or future payments on the Mortgage Loan for which such advance or Monthly Advance was made or is proposed to be made.

Non-Mortgage Widely Held Fixed Investment Trust: As such term is defined in Treasury Regulations section 1.671-5(b)(12) or successor provisions.

Notional Amount: The Notional Amount of the Class B-IO Certificates immediately prior to any Distribution Date is equal to the aggregate of the Uncertificated Principal Balances of the REMIC II Regular Interests.

Offered Certificates: The Class I-A Certificates and the Offered Subordinate Certificates.

Offered Subordinate Certificates: The Class M-1, Class M-2, Class B-1, Class B-2 and Class B-3 Certificates.

Officer's Certificate: A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President or a Vice President or Assistant Vice President or other authorized officer of the Master Servicer, the Sellers, any Servicer or the Depositor, as applicable, and delivered to the Trustee, as required by this Agreement.

One-Month LIBOR: With respect to any Interest Accrual Period, the rate determined by the Securities Administrator on the related LIBOR Determination Date on the basis of the rate for U.S. dollar deposits for one month that appears on Telerate Screen Page 3750, or such other page as may replace such Page 3750, as of 11:00 a.m. London time on such LIBOR Determination Date; provided that the parties hereto acknowledge that One-Month LIBOR for the first Interest Accrual Period shall be the rate determined by the Securities Administrator two Business Days prior to the Closing Date. If such rate does not appear on such page (or such other page as may replace that page on that service, or if such service is no longer offered, such other service for displaying One-Month LIBOR or comparable rates as may be reasonably selected by the Securities Administrator after consultation with the Guarantor but only to the extent the Class II-A-1 Certificates are outstanding), One-Month LIBOR for the applicable Interest Accrual Period will be the Reference Bank Rate. If no such quotations can be obtained by the Securities Administrator and no Reference Bank Rate is available, One-Month LIBOR will be One-Month LIBOR applicable to the preceding Interest Accrual Period.

Opinion of Counsel: A written opinion of counsel who is or are acceptable to the Trustee or the Securities Administrator, as applicable and who, unless required to be Independent (an "Opinion of Independent Counsel"), may be internal counsel for the Company, the Master Servicer or the Depositor.

Optional Termination Date: With respect to the Mortgage Loans, the Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than 20% of the sum of (A) Cut-off Date Balance as of the Closing Date and (B) the Pre-funded Amount as of the Closing Date.

Original Value: The lesser of (i) the Appraised Value or (ii) the sales price of a Mortgaged Property at the time of origination of a Mortgage Loan, except in instances where either clauses (i) or (ii) is unavailable, the other may be used to determine the Original Value, or if both clauses (i) and (ii) are unavailable, Original Value may be determined from other sources reasonably acceptable to the Depositor.

Outstanding Mortgage Loan: With respect to any Due Date, a Mortgage Loan which, prior to such Due Date, was not the subject of a Principal Prepayment in full, did not become a Liquidated Mortgage Loan and was not purchased or replaced.

Outstanding Principal Balance: As of the time of any determination, the principal balance of a Mortgage Loan remaining to be paid by the Mortgagor, or, in the case of an REO Property, the principal balance of the related Mortgage Loan remaining to be paid by the Mortgagor at the time such property was acquired by the Trust Fund less any Net Liquidation Proceeds with respect thereto to the extent applied to principal.

Overcollateralization Amount: With respect to any Distribution Date, the excess, if any, of (a) the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date and the amount on deposit in the Pre-Funding Account as of such Distribution Date over (b) the aggregate Certificate Principal Balance of the Principal Certificates on such Distribution Date (after taking into account the payment of principal other than any Extra Principal Distribution Amount on such Certificates).

Overcollateralization Release Amount: With respect to any Distribution Date is the lessor of (x) the sum of the amounts, with respect to each Loan Group, described in clauses (1) through (5) in the definition of Principal Funds for such Distribution Date and (y) the excess, if any, of (i) the Overcollateralization Amount for such Distribution Date (assuming that 100% of such Principal Funds is applied as a principal payment on such Distribution Date) over (ii) the Overcollateralization Target Amount for such Distribution Date (with the amount pursuant to clause (y) deemed to be $0 if the Overcollateralization Amount is less than or equal to the Overcollateralization Target Amount on that Distribution Date).

Overcollateralization Target Amount: With respect to any Distribution Date (a) prior to the Stepdown Date, 1.30% of the sum of (1) the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date and (2) the amount on deposit in the Pre-Funding Account as of the Closing Date, (b) on or after the Stepdown Date and if a Trigger Event is not in effect, the greater of (A) the lesser of (1) 1.30% of the sum of (w) the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date and (x) the amount on deposit in the Pre-Funding Account as of the Closing Date and (2) 2.60% of the sum of (y) the then current aggregate Stated Principal Balance of the Mortgage Loans as of such Distribution Date and (z) the amount on deposit in the Pre-Funding Account as of such Distribution Date and (ii) $4,595,351.11 and (c) on or after the Stepdown Date and if a Trigger Event is in effect, the Overcollateralization Target Amount for the immediately preceding Distribution Date.

Party Participating in the Servicing Function: Any Person performing any of the responsibilities set forth in Exhibit M.

Pass-Through Rate: As to each Class of Certificates, the rate of interest determined as provided with respect thereto in Section 5.01(c). Any monthly calculation of interest at a stated rate shall be based upon annual interest at such rate divided by twelve.

Paying Agent: The Securities Administrator, or its successor in interest, or any successor securities administrator appointed as herein provided.

Periodic Rate Cap: With respect to each Mortgage Loan, the maximum adjustment that can be made to the Mortgage Interest Rate on each Interest Adjustment Date in accordance with its terms, regardless of changes in the applicable index.

Permitted Investments: Any one or more of the following obligations or securities held in the name of the Trustee for the benefit of the Certificateholders:

(i)    direct obligations of, and obligations the timely payment of which are fully guaranteed by the United States of America or any agency or instrumentality of the United States of America the obligations of which are backed by the full faith and credit of the United States of America;

(ii)    (a) demand or time deposits, federal funds or bankers' acceptances issued by any depository institution or trust company incorporated under the laws of the United States of America or any state thereof (including the Trustee, the Securities Administrator or the Master Servicer or its Affiliates acting in its commercial banking capacity) and subject to supervision and examination by federal and/or state banking authorities, provided that the commercial paper and/or the short-term debt rating and/or the long-term unsecured debt obligations of such depository institution or trust company at the time of such investment or contractual commitment providing for such investment have the Applicable Credit Rating or better from each Rating Agency and (b) any

other demand or time deposit or certificate of deposit that is fully insured by the Federal Deposit Insurance Corporation;

(iii)    repurchase obligations with respect to (a) any security described in clause (i) above or (b) any other security issued or guaranteed by an agency or instrumentality of the United States of America, the obligations of which are backed by the full faith and credit of the United States of America, in either case entered into with a depository institution or trust company (acting as principal) described in clause (ii)(a) above where the Securities Administrator holds the security in the name of the Trustee therefor;

(iv)    securities bearing interest or sold at a discount issued by any corporation (including the Trustee, the Securities Administrator or the Master Servicer or its Affiliates) incorporated under the laws of the United States of America or any state thereof that have the Applicable Credit Rating or better from each Rating Agency at the time of such investment or contractual commitment providing for such investment; provided, however, that securities issued by any particular corporation will not be Permitted Investments to the extent that investments therein will cause the then outstanding principal amount of securities issued by such corporation and held as part of the Trust to exceed 10% of the aggregate Outstanding Principal Balances of all the Mortgage Loans and Permitted Investments held as part of the Trust;

(v)    commercial paper (including both non-interest-bearing discount obligations and interest-bearing obligations payable on demand or on a specified date not more than one year after the date of issuance thereof and having a maturity date prior to the related Distribution Date) having the Applicable Credit Rating or better from each Rating Agency at the time of such investment;

(vi)    a Reinvestment Agreement issued by any bank, insurance company or other corporation or entity;

(vii)    any other demand, money market or time deposit, obligation, security or investment as may be acceptable to each Rating Agency as evidenced in writing by each Rating Agency to the Trustee and the Securities Administrator; and

(viii)    interests in any money market fund (including any such fund managed or advised by the Trustee, the Securities Administrator or the Master Servicer or any affiliate thereof) which at the date of acquisition of the interests in such fund and throughout the time such interests are held in such fund has the highest applicable short term rating by each Rating Agency rating such funds; provided, however, that no instrument or security shall be a Permitted Investment if such instrument or security evidences a right to receive only interest payments with respect to the obligations underlying such instrument or if such security provides for payment of both principal and interest with a yield to maturity in excess of 120% of the yield to maturity at par or if such instrument or security is purchased at a price greater than par.

Permitted Transferee:  Any Person other than a Disqualified Organization or an "electing large partnership" (as defined by Section 775 of the Code).

Person:  Any individual, corporation, partnership, joint venture, association, limited liability company, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PHH:  PHH Mortgage Corporation (formerly known as Cendant Mortgage Corporation), and any successor thereto.

PHH Servicing Agreement:  The Purchase, Warranties and Servicing Agreement, dated as of October 23, 2001, as amended, among PHH, Bishop's Gate Residential Mortgage Trust and EMC.

Physical Certificates:  The Residual Certificates and the Private Certificates.

Plan:  The meaning specified in Section 5.07(a).

Posted Collateral Account:  The trust account or accounts created and maintained by the Securities Administrator, as custodian on behalf of the Trustee pursuant to Section 4.08.

Pre-Funded Amount:  The amount to be paid by the Seller to the Paying Agent for deposit in the Pre-Funding Account on the Closing Date with respect to Loan Group I, which amount is $178,976,783.

Pre-funding Account:  The account or sub-account established and maintained pursuant to Section 4.09 (a) and which shall be an Eligible Account or a sub-account of an Eligible Account.

Pre-funding Period:  The period from the Closing Date until the earliest of (i) the date on which the amount on deposit in the Pre-Funding Account (exclusive of investment income) is reduced to zero or (ii) July 15, 2007.

Pre-funding Reserve Account:  The account or sub-account established and maintained pursuant to Section 4.09(d) and which shall be an Eligible Account or a sub-account of an Eligible Account.

Prepayment Charge:  With respect to any Mortgage Loan, the charges or premiums, if any, due in connection with a full or partial prepayment of such Mortgage Loan in accordance with the terms thereof and described in the Mortgage Loan Schedule.

Prepayment Charge Loan:  Any Mortgage Loan for which a Prepayment Charge may be assessed and to which such Prepayment Charge the Class XP Certificates are entitled, as indicated on the Mortgage Loan Schedule.

Prepayment Interest Shortfall:  With respect to any Distribution Date, for each Mortgage Loan that was the subject of a partial Principal Prepayment or a Principal Prepayment in full during the related Prepayment Period (other than a Principal Prepayment in full resulting from the purchase of a Mortgage Loan pursuant to Section 2.02, 2.03, 3.21 or 10.01 hereof), the amount, if any, by which (i) one month's interest at the applicable Net Rate on the Stated Principal Balance of such Mortgage Loan immediately prior to such prepayment or in the case of a partial Principal Prepayment on the amount of such prepayment exceeds (ii) the amount of interest paid or collected in connection with such Principal Prepayment less the sum of (a) any Prepayment Charges and (b) the related Servicing Fee.

Prepayment Period:  With respect to the Mortgage Loans for which EMC is the Servicer and with respect to any Distribution Date and (i) Principal Prepayments in full, the period from the fifteenth day of the calendar month preceding the calendar month in which such Distribution Date occurs through the close of business on the fourteenth day of the calendar month in which such Distribution Date occurs; provided, however, that the initial Prepayment Period will be the period from the Closing Date through the close of business on May 14, 2007, and (ii) Liquidation Proceeds, Subsequent Recoveries, Realized Losses and partial Principal Prepayments, the prior calendar month; and in the case of the Mortgage Loans for which EMC is not the Servicer, such period as is provided in the related Servicing Agreement with respect to the related Mortgage Loans.

Primary Mortgage Insurance Policy:  Any primary mortgage guaranty insurance policy issued in connection with a Mortgage Loan which provides compensation to a Mortgage Note holder in the event of default by the obligor under such Mortgage Note or the related Security Instrument, if any or any replacement policy therefor through the related Interest Accrual Period for such Class relating to a Distribution Date.

Principal Certificates:  Any of the Offered Certificates, the Class II-A-1 and the Class B-4 Certificates.

Principal Distribution Amount:  With respect to each Distribution Date, an amount equal to the excess of (i) sum of (a) the Principal Funds for both Loan Groups for such Distribution Date and (b) any Extra Principal Distribution Amount for such Distribution

Date over (ii) any Overcollateralization Release Amount for such Distribution Date.

Principal Funds: the sum, without duplication, of

1.    the Scheduled Principal collected on the related Mortgage Loans during the related Due Period or advanced on or before the related servicer advance date,

2.    prepayments in respect of the related Mortgage Loans, exclusive of any Prepayment Charges, collected in the related Prepayment Period,

3.    the Stated Principal Balance of such Mortgage Loan in the related Loan Group that was repurchased by the Depositor or the related Servicer during the related Due Period,

4.    the amount, if any, by which the aggregate unpaid principal balance of any Substitute Mortgage Loans is less than the aggregate unpaid principal Balance of any deleted mortgage loans delivered by the related Servicer in connection with a substitution of Mortgage Loans in the related Loan Group during the related Due Period,

5.    all Liquidation Proceeds and Subsequent Recoveries collected during the related Prepayment Period in respect of the related Mortgage Loans, to the extent such Liquidation Proceeds or Subsequent Recoveries relate to principal, less all related Nonrecoverable Advances relating to principal reimbursed during the related Due Period,

6.    the principal portion of the purchase price of the assets of the Trust allocated to the related Loan Group upon the exercise by EMC or its designee of its optional termination right with respect to the Mortgage Loans,

7.    with respect to Loan Group I, any amount withdrawn from the Pre-Funding Reserve Account pursuant to Section 4.09(a)(i) on such Distribution Date;

8.    with respect to the Class II-A-1 Certificates, any Guaranteed Principal Distribution Amount received by the Securities Administrator from the Guarantor on such Distribution Date; minus

9.    any amounts payable to or required to be reimbursed to EMC, the Depositor, any Servicer, the Master Servicer, any Custodian, the Trustee or the Securities Administrator with respect to the Mortgage Loans pursuant to this Agreement and allocated to the related Loan Group, to the extent not paid or reimbursed from Interest Funds for such Loan Group and Distribution Date.

Principal Prepayment: Any payment (whether partial or full) or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date to the extent that it is not accompanied by an amount as to interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment, including Insurance Proceeds and Repurchase Proceeds, but excluding the principal portion of Net Liquidation Proceeds received at the time a Mortgage Loan becomes a Liquidated Mortgage Loan.

Private Certificates: The Class B-4, Class B-IO, Class NF Certificates and the Residual Certificates.

Prospectus: The prospectus, dated March 20, 2007, as supplemented by the prospectus supplement dated April 25, 2007 (as the same may be supplemented from time to time), relating to the offering of the Offered Certificates.

Protected Account: An account established and maintained for the benefit of Certificateholders by each Servicer with respect to the related Mortgage Loans and with respect to REO Property pursuant to the related Servicing Agreement.

QIB: A Qualified Institutional Buyer as defined in Rule 144A promulgated under the Securities Act.

Qualified Insurer: Any insurance company duly qualified as such under the laws of the state or states in which the related Mortgaged Property or Mortgaged Properties is or are located, duly authorized and licensed in such state or states to transact the type of insurance business in which it is engaged and approved as an insurer by the Master Servicer, so long as the claims paying ability of which is acceptable to the Rating Agencies for pass-through certificates having the same rating as the Certificates rated by the Rating Agencies as of the Closing Date.

Rating Agencies: Moody's and S&P.

Realized Loss: Any (i) Bankruptcy Loss or (ii) as to any Liquidated Mortgage Loan, (x) the Outstanding Principal Balance of such Liquidated Mortgage Loan plus accrued and unpaid interest thereon at the Mortgage Interest Rate through the last day of the month of such Liquidation, less (y) the related Net Liquidation Proceeds with respect to such Mortgage Loan and the related Mortgaged Property that are allocated to principal. In addition, to the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

Realized Losses on the Mortgage Loans shall be allocated to the REMIC I Regular Interests as follows: (1) the interest portion of Realized Losses and Net Interest Shortfalls on the Group I Mortgage Loans, if any, shall be allocated between the REMIC X I-I-I and REMIC X-I-X-I Regular Interests pro rata according to the amount of interest accrued but unpaid thereon, in reduction thereof and (2) the interest portion of Realized Losses and Net Interest Shortfalls on the Group II Mortgage Loans, if any, shall be allocated between the REMIC I Y-I-2 and REMIC I-2-I-2 Regular Interests pro rata according to the amount of interest accrued but unpaid thereon, in reduction thereof. Any interest portion of such Realized Losses in excess of the amount allocated pursuant to the preceding sentence shall be treated as a principal portion of Realized Losses not attributable to any specific Mortgage Loan in such Group and allocated pursuant to the succeeding sentence. The principal portion of Realized Losses with respect to the Mortgage Loans shall be allocated to the REMIC X Regular Interests as follows: (1) the principal portion of Realized Losses on the Group I Mortgage Loans shall be allocated, first, to the REMIC X Y-I-I Regular Interest to the extent of the REMIC I Y-I-I Principal Reduction Amount in reduction of the Uncertificated Principal Balance of such Regular Interest and, second, the remainder, if any, of such principal portion of such Realized Losses shall be allocated to the REMIC I I-I-I Regular Interest in reduction of the Uncertificated Principal Balance thereof and (2) the principal portion of Realized Losses on the Group II Mortgage Loans shall be allocated, first, to the REMIC I Y-I-2 Regular Interest to the extent of the REMIC I Y-I-2 Principal Reduction Amount in reduction of the Uncertificated Principal Balance of such Regular Interest and, second, the remainder, if any, of such principal portion of such Realized Losses shall be allocated to the REMIC I I-I-2 Regular Interest in reduction of the Uncertificated Principal Balance thereof. For any Distribution Date, reductions in the Uncertificated Principal Balances of the REMIC I Y-X and REMIC I X-I Regular Interests pursuant to this definition of Realized Loss shall be determined, and shall be deemed to occur, prior to any reductions of such Uncertificated Principal Balances by distributions on such Distribution Date.

Record Date: The Business Day preceding the applicable Distribution Date so long as such Class of Principal Certificates remains in book-entry form; and otherwise, the close of business on the last Business Day of the month immediately preceding the month of such Distribution Date.

Reference Bank: A leading bank selected by the Securities Administrator (after consultation with the Guarantor to the extent the Class II-A-1 Certificates are outstanding) that is engaged in transactions in Eurodollar deposits in the international Eurocurrency market.

Reference Bank Rate: With respect to any Interest Accrual Period, the arithmetic mean, rounded upwards, if necessary, to the



nearest whole multiple of 0.03125%, of the offered rates for United States dollar deposits for one month that are quoted by the Reference Banks as of 11:00 a.m., New York City time, on the related interest determination date to prime banks in the London interbank market for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of all Classes of Principal Certificates for such Interest Accrual Period, provided that at least two such Reference Banks provide such rate. If fewer than two offered rates appear, the Reference Bank Rate will be the arithmetic mean, rounded upwards, if necessary, to the nearest whole multiple of 0.03125%, of the rates quoted by one or more major banks in New York City, selected by the Securities Administrator, as of 11:00 a.m., New York City time, on such date for loans in U.S. dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of all Classes of Principal Certificates.

Regulation AB: Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Reinvestment Agreement: One or more reinvestment agreements, acceptable to the Rating Agencies and having the Applicable Credit Rating or better from each Rating Agency, from a bank, insurance company or other corporation or entity (including the Trustee).

Relief Act: The Servicemembers Civil Relief Act, as amended, or similar state law.

Relief Act Mortgage Loan: Any Mortgage Loan as to which the Scheduled Payment thereof has been reduced due to the application of the Relief Act.

Remaining Excess Spread: With respect to any Distribution Date, the Excess Spread remaining after the distribution of the Extra Principal Distribution Amount for such Distribution Date.

Remaining Pre-Funded Amount: An amount equal to the Pre-Funded Amount minus the amount equal to 100% of the aggregate Stated Principal Balance of the Subsequent Mortgage Loans transferred to the Trust during the Pre-Funding Period.
REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Administrator: The Securities Administrator; provided that if the REMIC Administrator is found by a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Administrator under this Agreement the Servicer or Trustee, in its capacity as successor Master Servicer shall appoint a successor REMIC Administrator, subject to assumption of the REMIC Administrator obligations under this Agreement.

REMIC Interest: Any of the REMIC I, REMIC II, REMIC III and REMIC IV Interests.

REMIC Opinion: An Opinion of Independent Counsel, to the effect that the proposed action described therein would not, under the REMIC Provisions, (i) cause any 2007-3 REMIC to fail to qualify as a REMIC while any regular interest in such 2007-3 REMIC is outstanding, (ii) result in a tax on prohibited transactions with respect to any 2007-3 REMIC or (iii) constitute a taxable contribution to any 2007-3 REMIC after the Startup Day.

REMIC Provisions: The provisions of the federal income tax law relating to REMICs, which appear at Sections 860A through 860G of the Code, and related provisions and regulations promulgated thereunder, as the foregoing may be in effect from time to time.

REMIC Regular Interest: Any of the REMIC I, REMIC II, REMIC III and REMIC IV Regular Interests.

REMIC I: The segregated pool of assets, with respect to which a REMIC election is made pursuant to this Agreement, consisting of: (a) the Mortgage Loans and the related Mortgage Files and collateral securing such Mortgage Loans, (b) all payments on and collections in respect of the Mortgage Loans due after the Cut-Off Date as shall be on deposit in the Master Servicer Collection Account or in the Distribution Account and identified as belonging to the Trust Fund, (c) property that secured a Mortgage Loan and that has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure, (d) the hazard insurance policies and Primary Mortgage Insurance Policies, if any, related to the Mortgage Loans and (e) all proceeds of Clauses (a) through (d) above.

REMIC I Available Distribution Amount: For any Distribution Date, the Interest Funds and Principal Funds for such Distribution Date.

REMIC I Distribution Amount: For any Distribution Date, the REMIC I Available Distribution Amount shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests and to the Class R Certificates in respect of Component I thereof, in the following order of priority:

   (a)    To the extent of the REMIC I Available Distribution Amount for Loan Group I:

        (i)    first, to REMIC I Y-I-1 and REMIC Z-I-1 Regular Interests, concurrently, the Uncertificated Interest for such Classes remaining unpaid from previous Distribution Dates, pro rata according to their respective shares of such unpaid amounts;

        (ii)    second, to the REMIC I Y-I-1 and REMIC Z-I-1 Regular Interests, concurrently, the Uncertificated Interest for such Classes for the current Distribution Date, pro rata according to their respective Uncertificated Interest;

        (iii)    third, to the REMIC I Y-I-1 and REMIC Z-I-1 Regular Interests, the REMIC I Y-I-1 Principal Distribution Amount and the REMIC I Z-I-1 Principal Distribution Amount, respectively.

   (b)    To the extent of the REMIC I Available Distribution Amount for Loan Group II:

        (i)    first, to the REMIC I Y-I-2 and REMIC Z-I-2 Regular Interests, concurrently, the Uncertificated Interest for such Classes remaining unpaid from previous Distribution Dates, pro rata according to their respective shares of such unpaid amounts;

        (ii)    second, to the REMIC I Y-I-2 and REMIC Z-I-2 Regular Interests, concurrently, the Uncertificated Interest for such Classes for the current Distribution Date, pro rata according to their respective Uncertificated Interest; and

        (iii)    third, to the REMIC I Y-I-2 and REMIC Z-I-2 Regular Interests, the REMIC I Y-I-2 Principal Distribution Amount and the REMIC I Z-I-2 Principal Distribution Amount, respectively.

   (c)    To the extent of the REMIC I Available Distribution Amounts for Loan Group I and Loan Group II for such Distribution Date remaining after payment of the amounts pursuant to paragraphs (a), and (b) of this definition of "REMIC I Distribution Amount":

        (i)    first, to each Class of REMIC I Y-I and REMIC I Z-I Regular Interests, pro rata according to the amount of unreimbursed Realized Losses allocable to principal previously allocated to each such Class, the aggregate amount of any distributions to the Certificates as reimbursement of Unpaid Realized Loss Amounts on such Distribution Date pursuant to Section 6.01(a); provided, however, that any amounts distributed pursuant to this paragraph (c)(i) of this definition of "REMIC I Distribution Amount" shall not cause a reduction in the Uncertificated Principal Balances of any of the REMIC I Y-I and REMIC I Z-I Regular Interests; and

(ii)    second, to the Component I of the Class R Certificates, and remaining amounts.

REMIC I Interests: The REMIC I Regular Interests and Component I of the Class R Certificates.

REMIC I Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC I set forth in Section 5.01(c)(i) and issued hereunder and designated as a "regular interest" in REMIC I. Each REMIC I Regular Interest shall accrue interest at the Uncertificated Pass-Through Rate specified for such REMIC I Interest in Section 5.01(c)(i), and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in Section 5.01(c)(i). The designations for the respective REMIC I Regular Interests are set forth in Section 5.01(c)(i).

REMIC I Y-I-I Principal Reduction Amounts: For any Distribution Date the amounts by which the Uncertificated Principal Balances of REMIC I Regular Interests Y-I-1 and Y-I-2, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

First, for each of Loan Group I and Loan Group II, determine the weighted average of the Net Rates of the Mortgage Loans in that Loan Group for distributions of interest that will be made on the next succeeding Distribution Date (the "Group Interest Rate" for that Loan Group). The REMIC I Y-I Principal Reduction Amounts for REMIC I Regular Interests Y-I-1 and Y-I-2 will be determined pursuant to the Generic Solution from the REMIC I Y-I Regular Interests" set forth below (the "Generic Solution") by making the following identifications among the Loan Groups and their related REMIC I Regular Interests:

A.    Determine which Loan Group has the lower Group Interest Rate. That Loan Group will be identified with Loan Group AA and the REMIC I Regular Interests related to that Loan Group will be respectively identified with the REMIC I Regular Interests YAA and ZAA. The Group Interest Rate for that Loan Group will be identified with J4. If the two Loan Groups have the same Group Interest Rate pick one for this purpose, subject to the restriction that each Loan Group may be picked only once in the course of any such selections pursuant to paragraph A and B of this definition.

B.    Determine which Loan Group has the higher Group Interest Rate. That Loan Group will be identified with Loan Group BB and the REMIC I Regular Interests related to that Loan Group will be respectively identified with the REMIC I Regular Interests YBB and ZBB. The Group Interest Rate for that Loan Group will be identified with K4. If the two Loan Groups have the same Group Interest Rate the Loan Group not selected pursuant to paragraph A, above, will be selected for purposes of this paragraph B.

Second, apply the Generic Solution set forth below to determine the REMIC I Y-I Principal Reduction Amounts for the distribution Date using the identifications made above.

Generic Solution for the REMIC I Y-I Principal Reduction Amounts: For any Distribution Date, the amounts by which the Uncertificated Principal Balances of REMIC I Regular Interests YAA and ZAA, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

J4 and K4 represent the interest rates on Loan Group AA and Loan Group BB respectively. J4<K4.

For purposes of the succeeding formulae the following symbols shall have the meanings set forth below:

PJB = the aggregate Stated Principal Balance of the Group AA Mortgage Loans minus the aggregate Certificate Principal Balance of the related Senior Certificates after the allocation of Realized Losses and distributions of principal on such Distribution Date.

PKB = the aggregate Stated Principal Balance of the Group BB Mortgage Loans minus the aggregate Certificate Principal Balance of the related Senior Certificates after the allocation of Realized Losses and distributions of principal on such Distribution Date.

R = the Class CB Pass-Through Rate = $(J4\cdot PJB + K4\cdot PKB)/(PJB + PKB)$

Yj = the REMIC I Regular Interest YAA Uncertificated Principal Balance after distributions on the prior Distribution Date.

Yk = the REMIC I Regular Interest YBB Uncertificated Principal Balance after distributions on the prior Distribution Date.

$\Delta Yj$ = the REMIC I Regular Interest YAA Principal Reduction Amount.

$\Delta Yk$ = the REMIC I Regular Interest YBB Principal Reduction Amount.

Zj = the REMIC I Regular Interest ZAA Uncertificated Principal Balance after distributions on the prior Distribution Date.

Zk = the REMIC I Regular Interest ZBB Uncertificated Principal Balance after distributions on the prior Distribution Date.

$\Delta Zj$ = the REMIC I Regular Interest ZAA Principal Reduction amount.
    = $\Delta Pj - \Delta Yj$

$\Delta Zk$ = the REMIC I Regular Interest ZBB Principal Reduction Amount.
    = $\Delta Pk - \Delta Yk$

Pj = the aggregate Uncertificated Principal Balance of REMIC I Regular Interests YAA and ZAA after distributions on the prior Distribution Date, which is equal to the aggregate principal balance of the Group AA Mortgage Loans.

Pk = the aggregate Uncertificated Principal Balance of REMIC I Regular Interests YBB and ZBB after distributions on the prior Distribution Date, which is equal to the aggregate principal balance of the Group BB Mortgage Loans.

$\Delta Pj$ = the aggregate principal reduction resulting on such Distribution Date on the Group AA Mortgage Loans as a result of principal distributions (exclusive of any amounts distributed pursuant to clauses (c)(i) or (c)(ii) of the definition of REMIC I Distribution Amount) to be made and Realized Losses to be allocated on such Distribution Date, if applicable, which is equal to the aggregate of the REMIC I Regular Interest YAA Principal Reduction Amount and the REMIC I Regular Interest ZAA Principal Reduction Amount.

$\Delta Pk$ = the aggregate principal reduction resulting on such Distribution Date on the Group BB Mortgage Loans as a result of principal distributions (exclusive of any amounts distributed pursuant to clauses (c)(i) or (c)(ii) of the definition of REMIC I Distribution Amount) to be made and Realized losses to be allocated on such Distribution Date, which is equal to the aggregate of the REMIC I Regular Interest YBB Principal Reduction Amount and the REMIC I Regular Interest ZBB Principal Reduction Amount.

**26**

$\alpha = .0005$

$\gamma = (R - J\$)/(Z\$ - R\$)$.  $\gamma$ is a non-negative number unless its denominator is zero, in which event it is undefined.

If $\gamma$ is zero, $\Delta Yk = Yk$ and $\Delta Yj = (Yj/Pj)\Delta Pj$.

If $\gamma$ is undefined, $\Delta Yj = Yj$, $\Delta Yk = (Yk/Pk)\Delta Pk$ if denominator

In the remaining situations, $\Delta Yk$ and $\Delta Yj$ shall be defined as follows:

1.   If $Yk - \alpha(Pk - \Delta Pk) > 0$, $Yj - \alpha(Pj - \Delta Pj) \Rightarrow 0$, and $\gamma(Pj - \Delta Pj) < (Pk - \Delta Pk)$, $\Delta Yk = Yk - \alpha\gamma(Pj - \Delta Pj)$ and $\Delta Yj = Yj - \alpha(Pj - \Delta Pj)$.

2.   If $Yk - \alpha(Pk - \Delta Pk) \Rightarrow 0$, $Yj - \alpha(Pj - \Delta Pj) \Rightarrow 0$, and $\gamma(Pj - \Delta Pj) \Rightarrow (Pk - \Delta Pk)$, $\Delta Yk = Yk - \alpha(Pk - \Delta Pk)$ and $\Delta Yj = Yj - (\alpha/\gamma)(Pk - \Delta Pk)$.

3.   If $Yk - \alpha(Pk - \Delta Pk) < 0$, $Yj - \alpha(Pj - \Delta Pj) \Rightarrow 0$, and $Yj - \alpha(Pj - \Delta Pj) \Rightarrow Yj - (Yk/\gamma)$, $\Delta Yk = Yk - \alpha\gamma(Pj - \Delta Pj)$ and $\Delta Yj = Yj - \alpha(Pj - \Delta Pj)$.

4.   If $Yk - \alpha(Pk - \Delta Pk) < 0$, $Yj - (Yk/\gamma) \Rightarrow 0$, and $Yj - \alpha(Pj - \Delta Pj) <= Yj - (Yk/\gamma)$, $\Delta Yk = 0$ and $\Delta Yj = Yj - (Yk/\gamma)$.

5.   If $Yj - \alpha(Pj - \Delta Pj) < 0$, $Yj - (Yk/\gamma) < 0$, and $Yk - \alpha(Pk - \Delta Pk) <= Yk - (\gamma Yj)$, $\Delta Yk = Yk - (\gamma Yj)$ and $\Delta Yj = 0$.

6.   If $Yj - \alpha(Pj - \Delta Pj) < 0$, $Yk - \alpha(Pk - \Delta Pk) \Rightarrow 0$, and $Yk - \alpha(Pk - \Delta Pk) \Rightarrow Yk - (\gamma Yj)$, $\Delta Yk = Yk - \alpha(Pk - \Delta Pk)$ and $\Delta Yj = Yj - (\alpha/\gamma)(Pk - \Delta Pk)$.

The purpose of the foregoing definitional provisions together with the related provisions allocating Realized Losses and defining the REMIC I Regular Interest Y-X-1 and Y-X-2 and REMIC I Regular Interest Z-I-1 and Z-I-2 Principal Distribution Amounts is to accomplish the following goals in the following order of priority:

1.   Making the ratio of Yk to Yj equal to $\gamma$ after taking account of the allocation Realized Losses and the distributions that will be made through and of the Distribution Date to which such provisions relate and assuring that the Principal Reduction Amounts for each of the REMIC I Regular Interests is greater than or equal to zero for such Distribution Date;

2.   Making (i) the REMIC I Regular Interest YAA Uncertificated Principal Balance less than or equal to 0.0005 of the sum of the Uncertificated Principal Balances for REMIC I Regular Interest YAA and REMIC I Regular Interest ZAA and (ii) the REMIC I Regular Interest YBB Uncertificated Principal Balances less than or equal to 0.0005 of the sum of the Uncertificated Principal Balances for REMIC I Regular Interest YBB and REMIC I Regular Interest ZBB in each case after giving effect to allocations of Realized Losses and distributions to be made through the end of the Distribution Date to which such provisions relate; and

3.   Making the larger of (a) the fraction whose numerator is Yk and whose denominator is the sum of Yk and Zk and (b) the fraction whose numerator is Yj and whose denominator is the sum of Yj and Zj as large as possible while remaining less than or equal to 0.0005.

In the event of a failure of the foregoing portion of the definition of REMIC I Y-1 Principal Reduction Amount to accomplish both of goals 1 and 2 above, the amounts thereof should be adjusted to no as to accomplish such goals within the requirement that each REMIC I Y-I Principal Reduction Amount must be less than or equal to the sum of (a) the principal Realized Losses to be allocated on the related Distribution Date for the related Loan Group and (b) the remainder of the Available Distribution Amount for the related Loan Group on after reduction thereof by the distributions to be made on such Distribution in respect of interest on the related REMIC I Regular Interests, or, if both of such goals cannot be accomplished within such requirement, such adjustment as is necessary shall be made to accomplish goal 1 within such requirement. In the event of any conflict among the provisions of the definition of the REMIC I Y-I Principal Reduction Amounts, such conflict shall be resolved on the basis of the goals and their priorities set forth above within the requirement set forth in the preceding sentence.

REMIC I Y-I Regular Interests:  REMIC I Regular Interests Y-X-1 and Y-X-2.

REMIC I Y-X-1 Principal Distribution Amount:  For any Distribution Date, the excess, if any, of the REMIC I Y-X-1 Principal Reduction Amount for such Distribution Date over the principal portion of Realized Losses allocated to REMIC I Regular Interest Y-X-1 on such Distribution Date.

REMIC I Regular Interest Y-X-1:  The uncertificated undivided beneficial interest in REMIC I which constitutes a REMIC I Regular Interest and is entitled to distributions as set forth herein.

REMIC I Y-X-2 Principal Distribution Amount:  For any Distribution Date, the excess, if any, of the REMIC I Y-X-2 Principal Reduction Amount for such Distribution Date over the principal portion of Realized Losses allocated to REMIC I Regular Interest Y-X-2 on such Distribution Date.

REMIC I Regular Interest Y-X-2:  The uncertificated undivided beneficial interest in REMIC I which constitutes a REMIC I Regular Interest and is entitled to distributions as set forth herein.

REMIC I Z-I Principal Reduction Amounts:  For any Distribution Date, the amounts by which the Uncertificated Principal Balances of the REMIC I Z-I Regular Interests will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, which shall be in each case the excess of (A) the sum of (X) the excess of the REMIC I Available Distribution Amount for the related Group (i.e., the "related Group" for REMIC I Regular Interest Z-X-1 is the Group I Mortgage Loans and the "related Group" for REMIC I Regular Interest Z-X-2 is the Group II Mortgage Loans) over the sum of the amounts thereof distributable (i) in respect of interest on each REMIC I Z-I Regular Interest and the related REMIC I Y-I Regular Interest and (ii) to such REMIC I Z-I Regular Interest and the related REMIC I Y-I Regular Interest pursuant to clause (c)(ii) of the definition of "REMIC I Distribution Amount" and (y) the amount of Realized Losses allocable to principal for the related Group over (B) the REMIC I Y-I Principal Reduction Amount for the related Group.

REMIC I Z-I Regular Interests:  REMIC I Regular Interests Z-X-1 and Z-I-2.

REMIC I Z-I-1 Principal Distribution Amount:  For any Distribution Date, the excess, if any, of the REMIC I Z-I-1 Principal Reduction Amount for such Distribution Date over the principal portion of Realized Losses allocated to REMIC I Regular Interest Z-I-1 on such Distribution Date.

REMIC I Regular Interest Z-X-1: The uncertificated undivided beneficial interest in REMIC I which constitutes a REMIC I Regular Interest and is entitled to distributions as set forth herein.

REMIC I Z-I-2 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Z-I-2 Principal Reduction Amount for such Distribution Date over the principal portion of Realized Losses allocated to REMIC I Regular Interest Z-I-2 on such Distribution Date.

REMIC X Regular Interest Z-I-3: The uncertificated undivided beneficial interest in REMIC I which constitutes a REMIC I Regular Interest and is entitled to distributions as set forth herein.

REMIC II: That group of assets contained in the Trust Fund designated as a REMIC consisting of the REMIC X Regular Interests and any proceeds thereof.

REMIC II Available Distribution Amount: For any Distribution Date, the amounts deemed distributed with respect to the REMIC I Regular Interests pursuant to Section 5.07.

REMIC II Distribution Amount: For any Distribution Date, the REMIC II Available Distribution Amount shall be distributed by REMIC II to REMIC III on account of the REMIC II Regular Interests and to the Class R Certificates in respect of Component II thereof, as follows:

(a) From the portion thereof attributable to the Group I Mortgage Loans, to REMIC III as the holder of REMIC II Regular Interest LT1, REMIC II Regular Interest LT2, REMIC II Regular Interest LT3, REMIC II Regular Interest LT4 and REMIC II Regular Interest LTY-Z-1,

(I) pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(II) in an amount equal to the remainder of such portion of the REMIC II Available Distribution Amount after the distributions made pursuant to clause (I) above, allocated as follows:

(A) in respect of the REMIC II Regular Interest LT2, REMIC II Regular Interest LT3, REMIC II Regular Interest LT4 and REMIC II Regular Interest LTY-I-1, their respective Principal Distribution Amounts;

(B) in respect of the REMIC II Regular Interest LT1 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C) any remainder in respect of the REMIC II Regular Interest LT2, REMIC II Regular Interest LT3, REMIC II Regular Interest LT4 and REMIC II Regular Interest LTY-I-1, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (i) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(D) any remaining amounts to the Holders of the Class R Certificates in respect of Component II thereof.

(b) From the portion thereof attributable to the Group II Mortgage Loans, to REMIC III as the holder of REMIC II Regular Interest LT5, REMIC II Regular Interest LT6, REMIC II Regular Interest LT7, REMIC II Regular Interest LT8 and REMIC II Regular Interest LTY-I-2,

(I) pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(II) in an amount equal to the remainder of such portion the REMIC II Available Distribution Amount after the distributions made pursuant to clause (I) above, allocated as follows:

(A) in respect of the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7, REMIC II Regular Interest LT8 and REMIC II Regular Interest LTY-I-2, their respective Principal Distribution Amounts;

(B) in respect of the REMIC II Regular Interest LT5 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C) any remainder in respect of the REMIC II Regular Interest LT6, REMIC III Regular Interest LT7, REMIC II Regular Interest LT8 and REMIC II Regular Interest LTY-I-2, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (A) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(D) any remaining amounts to the Holders of the Class R Certificates in respect of Component II thereof.

(c) To the extent of the REMIC II Available Distribution Amount for such Distribution Date remaining after payment of the amounts pursuant to paragraphs (a), and (b) of this definition of "REMIC II Distribution Amount",

(I) first, to each of the REMIC II Regular Interests, pro rata according to the amount of unreimbursed Realized Losses allocable to principal previously allocated to each such Class, the aggregate amount of any distributions to the Certificates as reimbursement of Unpaid Realized Loss Amounts on such Distribution Date pursuant to Section 5.01(a); provided, however, that any amounts distributed pursuant to this paragraph (c)(I) of this definition of "REMIC II Distribution Amount" shall not cause a reduction in the Uncertificated Principal Balances of any REMIC II Regular Interest; and

(II) second, to the Component I of the Class R Certificates, the Residual Distribution Amount for Component I of the Class R Certificates for such Distribution Date.

REMIC II Interests: The REMIC II Regular Interests and Component II of the Class R Certificates.

REMIC II Principal Reduction Amounts: For any Distribution Date, the amounts by which the principal balances of the REMIC II Regular Interests LT1, LT2, LT3, LT4, LT5, LT6, LT7, LT8, LTY-I-1 and LTY-I-2, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

Y1 = the aggregate principal balance of the REMIC II Regular Interests LT1 and LTY-I-1 after distributions on the prior Distribution Date

Y2 = the principal balance of the REMIC II Regular Interest LT2 after distributions on the prior Distribution Date.

Y3 = the principal balance of the REMIC II Regular Interest LT3 after distributions on the prior Distribution Date.



Y4 =the principal balance of the REMIC II Regular Interest LT4 after distributions on the prior Distribution Date (note: Y3 = Y4).

ΔY1 =the aggregate of the REMIC II Regular Interest LT1 and LTY-I-1 Principal Reduction Amounts. Such amount shall be allocated first to REMIC II Regular Interest LTY-I-1 up to the REMIC I Y-I-1 Principal Reduction Amount and thereafter the remainder shall be allocated to REMIC II Regular Interest LTY-I-1.

ΔY2 =the REMIC II Regular Interest LT2 Principal Reduction Amount.

ΔY3 =the REMIC II Regular Interest LT3 Principal Reduction Amount.

ΔY4 =the REMIC II Regular Interest LT4 Principal Reduction Amount.

P0 =the aggregate principal balance of the REMIC II Regular Interests LT1, LT2, LT3, LT4 and LTY-I-1 after distributions and the allocation of Realized Losses on the prior Distribution Date.

P1 =the aggregate principal balance of the REMIC II Regular Interests LT1, LT2, LT3, LT4 and LTY-I-1 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

ΔP =P0 - P1 = the aggregate of the REMIC II Regular Interests LT1, LT2, LT3, LT4 and LTY-I-1 Principal Reduction Amounts.

= the aggregate of the principal portions of Realized Losses to be allocated and Principal Funds to be distributed with respect to the Class I-A Certificates and the Subordinate Certificates on such Distribution Date (including distributions of accrued and unpaid interest on the Class B-IO Certificates for prior Distribution Dates).

R0 = the Net Rate Cap for the Class I-A Certificates (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

R1 = the Net Rate Cap for the Class I-A Certificates (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

α =(Y2 + Y3)/P0. The initial value of α on the Closing Date for use on the first Distribution Date shall be 0.0001.

Y0 = the lesser of (A) the sum of (1) the sum, for all Classes of Class I-A Certificates, of the product for each Class of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date, (2) the sum, for all Classes of Subordinate Certificates, of the product for each Class of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class multiplied by a fraction whose numerator is the principal balance of the REMIC I Regular Interest Y-I-1 and whose denominator is the sum of the principal balances of the REMIC I Regular Interests Y-I-1 and Y-I-2 after distributions and the allocation of Realized Losses on the prior Distribution Date and (3) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of Γ0 exceeds $0 * Q0 and (B) R0*P0.

Y1 = the lesser of (A) the sum of (1) the sum, for all Classes of Class I-A of the product for each Class of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date, (2) the sum, for all Classes of Subordinate Certificates, of the product for each Class of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class multiplied by a fraction whose numerator is the principal balance of the REMIC I Regular Interest Y-I-1 and whose denominator is the sum of the principal balances of the REMIC I Regular Interests Y-I-1 and Y-I-2 after distributions and the allocation of Realized Losses to be made on such Distribution Date and (3) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of Y1 exceeds $1 * Q1 and (B) R1*P1.

Then, based on the foregoing definitions:

ΔY1 =ΔP - ΔY2 - ΔY3 - ΔY4;

ΔY2 =(α/2){(Y0R1 - Y1R0)/R0R1};

ΔY3 =αΔP - ΔY2; and

ΔY4 =ΔY3.

if both ΔY2 and ΔY3, as so determined, are non-negative numbers. Otherwise:

(1)If ΔY2, as so determined, is negative, then

ΔY2 = 0;

ΔY3 = α{Y1R0P0 - Y0R1P1}/{Y1R0};

ΔY4 = ΔY3; and

ΔY1 = ΔP - ΔY2 - ΔY3 - ΔY4.

(2)If ΔY3, as so determined, is negative, then

ΔY3 = 0;

ΔY2 = α{Y0R1P1 - Y1R0P0}/{2R1R0P1 - Y1R0};

ΔY4 = ΔY3; and

ΔY1 = ΔP - ΔY2 - ΔY3 - ΔY4.

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

Y5 =the aggregate principal balance of the REMIC II Regular Interests LT5 and LTY-I-2 after distributions on the prior

Distribution Date.

Y6 =the principal balance of the REMIC II Regular Interest LT6 after distributions on the prior Distribution Date.

Y7 =the principal balance of the REMIC II Regular Interest LT7 after distributions on the prior Distribution Date.

Y8 =the principal balance of the REMIC II Regular Interest LT8 after distributions on the prior Distribution Date (note: Y7 = Y8).

ΔY5 =the aggregate of the REMIC II Regular Interest LT5 and LTY-I-2 Principal Reduction Amounts. Such amount shall be allocated first to REMIC II Regular Interest LTY-I-2 up to the REMIC II LTY-I-2 Principal Reduction Amount and thereafter the remainder shall be allocated to REMIC II Regular LT5.

ΔY6 =the REMIC II Regular Interest LT6 Principal Reduction Amount.

ΔY7 =the REMIC II Regular Interest LT7 Principal Reduction Amount.

ΔY8 =the REMIC II Regular Interest LT8 Principal Reduction Amount.

Q0 =the aggregate principal balance of the REMIC II Regular Interests LT5, LT6, LT7, LT8 and LTY-I-2 after distributions and the allocation of Realized Losses on the prior Distribution Date.

Q1 =the aggregate principal balance of the REMIC II Regular Interests LT5, LT6, LT7, LT8, LT-N1 and LTY-I-2 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

ΔQ =Q0 - Q1 = the aggregate of the REMIC II Regular Interests LT5, LT6, LT7, LT8 and LTY-I-2 Principal Reduction Amounts.

=the aggregate of the principal portions of Realized Losses to be allocated, and the Principal Funds to be distributed with respect to the Class II-A-1 Certificates and the Subordinate Certificates on such Distribution Date (including distributions in respect of accrued and unpaid interest on the Class B-IO Certificates for prior Distribution Dates).

S0 =the Net Rate Cap for the Class II-A-1 Certificates (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

S1 =the Net Rate Cap for the Class II-A-1 Certificates (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

β =(Y6 + Y7)/Q0.  The initial value of β on the Closing Date for use on the first Distribution Date shall be 0.0001.

Γ0 =the lesser of (A) the sum of (1) the product of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for the Class II-A-1 Certificates applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date, (2) for all Classes of Subordinate Certificates of the product for each Class of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class multiplied by a fraction whose numerator is the principal balance of the REMIC I Regular Interest Y-X-2 and whose denominator is the sum of the principal balances of the REMIC I Regular Interests Y-X-1 and Y-X-2 after distributions and the allocation of Realized Losses on the prior Distribution Date and (3) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of Y0 exceeds R0 * P0 and (B) S0*Q0.

Γ1 =the lesser of (A) the sum of (1) the product of (i) the monthly interest rate (as limited by the related Net Rate Cap, if applicable) for the Class II-A-1 Certificates applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date, (2) for all Classes of Subordinate Certificates of the product for each Class of (i) the monthly interest rate (as limited by the related net rate cap, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class multiplied by a fraction whose numerator is the principal balance of the REMIC I Regular Interest Y-I-2 and whose denominator is the sum of the principal balances of the REMIC I Regular Interests Y-X-1 and Y-X-2 after distributions and the allocation of Realized Losses to be made on such Distribution Date and (3) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of Y1 exceeds R1 * P1 and (B) S1*Q1.

Then, based on the foregoing definitions:

$\Delta Y5 = \Delta Q - \Delta Y6 - \Delta Y7 - \Delta Y8$;

$\Delta Y6 = (\beta/2)\{(\Gamma 0S1 - Y1S0)/S0S1\}$;

$\Delta Y7 = \beta \Delta Q - \Delta Y6$; and

$\Delta Y8 = \Delta Y7$.

if both ΔY6 and ΔY7, as so determined, are non-negative numbers.  Otherwise:

(1)If ΔY5, as so determined, is negative, then

$\Delta Y6 = 0$;

$\Delta Y7 = \beta\{\lceil 1S0Q0 - \lceil 0S1Q1\}/\{\lceil 1S0\}\}$;

$\Delta Y8 = \Delta Y7$; and

$\Delta Y5 = \Delta Q - \Delta Y6 - \Delta Y7 - \Delta Y8$.

(2)If ΔY7, as so determined, is negative, then

$\Delta Y7 = 0$;

$\Delta Y6 = \beta\{\lceil 1S0Q0 - \lceil 0S1Q1\}/\{2S1S0Q1 - \lceil 1S0\}\}$;

$\Delta 8 = \Delta Y7$; and

$\Delta Y5 = \Delta Q - \Delta Y6 - \Delta Y7 - \Delta Y8$.

**30**

REMIC II Realized Losses: For any Distribution Date, Realized Losses on the Group I Mortgage Loans for the related Due Period shall be allocated, as follows: (i) the interest portion of Realized Losses, if any, shall be allocated pro rata to accrued interest on the REMIC II Regular Interests LT1, LT2, LT4 and LTY-I-1 to the extent of such accrued interest, and (ii) any remaining interest portions of Realized Losses and any principal portions of Realized Losses shall be treated as principal portions of Realized Losses and allocated (i) first to the REMIC II Regular Interest LTY-I-1 in the amount that such Realized Losses were allocated to the REMIC I Regular Interest Y-I-1 (ii) second to the REMIC II Regular Interest LT4, REMIC II Regular Interest LT3 and REMIC II Regular Interest LT4, pro rata according to their respective Principal Reduction Amounts, provided that such allocation to each of the REMIC II Regular Interest LT2, REMIC II Regular Interest LT3 and REMIC II Regular Interest LT4 shall not exceed their respective Principal Reduction Amounts for such Distribution Date, and (iii) third the remainder to the REMIC II Regular Interest LT1.

For any Distribution Date, Realized Losses on the Group II Mortgage Loans for the related Due Period shall be allocated, as follows: (i) the interest portion of Realized Losses, if any, shall be allocated pro rata to accrued interest on the REMIC II Regular Interests LT5, LT6, LT8 and LTY-I-2 to the extent of such accrued interest, and (ii) any remaining interest portions of Realized Losses and any principal portions of Realized Losses shall be treated as principal portions of Realized Losses and allocated (i) first to the REMIC II Regular Interest LTY-I-2 in the amount that such Realized Losses were allocated to the REMIC I Regular Interest Y-I-2 (ii) second to the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8, pro rata according to their respective Principal Reduction Amounts, provided that such allocation to each of the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8 shall not exceed their respective Principal Reduction Amounts for such Distribution Date, and (ii) any Realized Losses not allocated to any of REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 or REMIC II Regular Interest LT8 pursuant to the proviso of clause (i) above shall be allocated (iii) third the remainder to the REMIC II Regular Interest LT5.

REMIC II Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC II set forth in Section 5.01(c)(ii) and issued hereunder and designated as a "regular interest" in REMIC II. Each REMIC II Regular Interest shall accrue interest at the Uncertificated Pass-Through Rate specified for such REMIC II Interest in Section 5.01(c)(ii), and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in Section 5.01(c)(ii). The designations for the respective REMIC II Regular Interests are set forth in Section 5.01(c)(ii).

REMIC II Regular Interest LT1: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT1 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT1 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT1 on such Distribution Date.

REMIC II Regular Interest LT2: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT2 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT2 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT2 on such Distribution Date.

REMIC II Regular Interest LT3: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT3 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT3 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT3 on such Distribution Date.

REMIC II Regular Interest LT4: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT4 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT4 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT4 on such Distribution Date.

REMIC II Regular Interest LT5: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT5 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT5 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT5 on such Distribution Date.

REMIC II Regular Interest LT6: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT6 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT6 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT6 on such Distribution Date.

REMIC II Regular Interest LT7: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT7 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT7 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT7 on such Distribution Date.

REMIC II Regular Interest LT8: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT8 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT8 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT8 on such Distribution Date.

REMIC II Regular Interest LTX-I-1: A regular interest in REMIC II that is held as an asset of REMIC III, that has an

initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LTY-I-1 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LTY-I-1 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LTY-I-1 on such Distribution Date.

REMIC II Regular Interest LTY-I-2: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LTY-I-2 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LTY-I-2 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LTY-I-2 on such Distribution Date.

REMIC III: That group of assets contained in the Trust Fund designated as a REMIC consisting of the REMIC II Regular Interests and any proceeds thereof.

REMIC III Available Distribution Amount: For any Distribution Date, the amounts deemed distributed with respect to the REMIC II Regular Interests pursuant to Section 6.07.

REMIC III Distribution Amount: For any Distribution Date, the REMIC III Available Distribution Amount shall be deemed distributed by REMIC III to the holders of the Certificates (other than the Class B-IO Certificates) on account of the REMIC III Regular Interests (other than REMIC III Regular Interests B-IO-I and B-IO-P), to REMIC IV on account of REMIC III Regular Interests B-IO-I and B-IO-P, and to the Class R Certificates in respect of Component III thereof, as follows: to each REMIC III Regular Interest in respect of Uncertificated Interest thereon and the Uncertificated Principal Balance thereof, the amount distributed in respect of interest and principal on the Class or Classes of Certificates bearing the same designation with such amounts having the same character as interest or principal (with respect to the REMIC III Regular Interest as they have with respect to such Certificate or Certificates) with the following exceptions: (1) No amount paid to any Certificate in respect of any Basic Risk Shortfall Amount or Basis Risk Shortfall Carryforward Amount shall be included in the amount paid in respect of a related REMIC III Regular Interest; and (2) amounts paid in respect of Basis Risk Shortfall Amounts and Basis Risk Shortfall Carryforward Amounts to the extent not derived from any Cap Contract Payment Amount shall be deemed paid with respect to REMIC III Regular Interest B-IO-I in respect of accrued and unpaid interest thereon. Any remaining amount of the REMIC III Available Distribution Amount shall be distributed to the holders of the Class R Certificates in respect of Component III thereof.

REMIC III Interests: The REMIC III Regular Interests and Component III of the Class R Certificates.

REMIC III Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC III set forth in Section 5.01(c)(iii) and issued hereunder and designated as a "regular interest" in REMIC III. Each REMIC III Regular Interest shall accrue interest at the Uncertificated Pass-Through Rate specified for such REMIC III Interest in Section 5.01(c)(iii), and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in Section 5.01(c)(iii). The designations for the respective REMIC III Regular Interests are set forth in Section 5.01(c)(iii).

REMIC IV: That group of assets contained in the Trust Fund designated as a REMIC consisting of REMIC III Regular Interests B-IO-I and B-IO-P and any proceeds thereof.

REMIC IV Available Distribution Amount: For any Distribution Date, the amounts deemed distributed with respect to REMIC III Regular Interests B-IO-I and B-IO-P pursuant to Section 6.07.

REMIC IV Distribution Amount: For any Distribution Date, the REMIC IV Available Distribution Amount shall be deemed distributed by REMIC IV to the holders of the Class B-IO Certificates on account of the REMIC IV Regular Interests.

REMIC IV Interests: The REMIC IV Regular Interest and the Class R-X Certificates.

REMIC IV Regular Interest: The separate non-certificated beneficial ownership interest in REMIC IV set forth in Section 5.01(c)(iv) and issued hereunder and designated as a "regular interest" in REMIC IV. The REMIC IV Regular Interest shall accrue interest at the Uncertificated Pass-Through Rate specified for such REMIC IV Interest in Section 5.01(c)(iv). The designation for the REMIC IV Regular Interest is set forth in Section 5.01(c)(iv).

REO Property: A Mortgaged Property acquired in the name of the Trustee, for the benefit of Certificateholders, by foreclosure or deed-in-lieu of foreclosure in connection with a defaulted Mortgage Loan.

Reportable Event: As defined in Section 3.18(a)(ii).

Repurchase Price: With respect to any Mortgage Loan (or any property acquired with respect thereto) required to be repurchased by the Sponsor (on its own behalf as a Seller or on behalf of Master Funding) pursuant to the Mortgage Loan Purchase Agreement, a Subsequent Mortgage Loan Purchase Agreement, Article II or Section 3.21 of this Agreement, an amount equal to the excess of (1) the sum of (a) 100% of the Outstanding Principal Balance of such Mortgage Loan as of the date of repurchase (or if the related Mortgaged Property was acquired with respect thereto, 100% of the Outstanding Principal Balance at the date of the acquisition), (b) accrued but unpaid interest on the Outstanding Principal Balance at the related Mortgage Interest Rate, through and including the last day of the month of repurchase and (c) any costs and damages (if any) incurred by the Trust in connection with any violation of such Mortgage Loan of any predatory or abusive lending laws over (ii) any portion of the Master Servicing Compensation, Servicing Fee, Monthly Advances and advances payable to the purchaser of the Mortgage Loan (if any).

Repurchase Proceeds: The Repurchase Price in connection with any repurchase of a Mortgage Loan by the Sponsor (on its own behalf as a Seller or on behalf of Master Funding) and any cash deposit in connection with the substitution of a Mortgage Loan, in each case in accordance with the Mortgage Loan Purchase Agreement.

Request for Release: A request for release in the form attached hereto as Exhibit D.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under this Agreement with respect to such Mortgage Loan.

Reserve Fund: The separate trust account created and maintained by the Securities Administrator pursuant to Section 4.06 hereof.

Residual Certificate: Any of the Class R Certificates, consisting of three components—Component I, Component II and Component III—respectively representing ownership of the sole class of residual interest in each of REMIC I, REMIC II and REMIC III, and the Class R-X Certificates representing ownership of the sole class of residual interest in REMIC IV.

Responsible Officer: Any officer assigned to the Corporate Trust Office of the Trustee or the Securities Administrator, as the case may be (or any successor thereto), including any Vice President, Assistant Vice President, Trust Officer, any Assistant Secretary, any trust officer or any other officer of the Trustee or the Securities Administrator, as the case may be, customarily performing functions similar to those performed by any of the above designated officers and having direct responsibility for the

administration of this Agreement, and any other officer of the Trustee or the Securities Administrator, as the case may be, to whom a matter arising hereunder may be referred because of such officer's knowledge of and familiarity with the particular subject.

RMIC: Republic Mortgage Insurance Company.

RMIC Policy: The supplemental lender-paid mortgage insurance policy issued by RMIC, Policy No. N02MD10271.

Rule 144A Certificate: The certificate to be furnished by each purchaser of a Private Certificate (which is also a Physical Certificate) which is a Qualified Institutional Buyer as defined under Rule 144A promulgated under the Securities Act, substantially in the form set forth as Exhibit F-2 hereto.

S&P: Standard & Poor's, a division of The McGraw-Hill Companies, Inc., and its successors in interest.

Sarbanes-Oxley Act: The Sarbanes-Oxley Act of 2002 and the rules and regulations of the Commission promulgated thereunder (including any interpretation thereof by the Commission's staff).

Sarbanes-Oxley Certification: As defined in Section 3.18(a)(iii).

Scheduled Payment: With respect to any Mortgage Loan and any Due Period, the scheduled payment or payments of principal and interest due during such Due Period on such Mortgage Loan which either is payable by a Mortgagor in such Due Period under the related Mortgage Note or, in the case of REO Property, would otherwise have been payable under the related Mortgage Note.

Scheduled Principal: The principal portion of any Scheduled Payment.

Securities Act: The Securities Act of 1933, as amended.

Securities Administrator: Wells Fargo Bank, National Association, in its capacity as paying agent or securities administrator (as applicable) hereunder, or its successor in interest, or any successor securities administrator or paying agent appointed as herein provided.

Securities Administrator Information: As defined in Section 3.18(c).

Securities Legend: "THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A OR (2) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) OR (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. THIS CERTIFICATE MAY NOT BE ACQUIRED DIRECTLY OR INDIRECTLY BY, OR ON BEHALF OF, AN EMPLOYEE BENEFIT PLAN OR OTHER RETIREMENT ARRANGEMENT (A "PLAN") THAT IS SUBJECT TO TITLE I OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, AND/OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), OR BY A PERSON USING "PLAN ASSETS" OF A PLAN, UNLESS THE PROPOSED TRANSFEREE PROVIDES THE SECURITIES ADMINISTRATOR WITH AN OPINION OF COUNSEL FOR THE BENEFIT OF THE TRUSTEE, MASTER SERVICER AND THE SECURITIES ADMINISTRATOR AND ON WHICH THEY MAY RELY WHICH IS SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE OR THIS CERTIFICATE IS PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE MASTER SERVICER, THE TRUSTEE OR THE SECURITIES ADMINISTRATOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.

Security Instrument: A written instrument creating a valid first lien on a Mortgaged Property securing a Mortgage Note, which may be any applicable form of mortgage, deed of trust, deed to secure debt or security deed, including any riders or addenda thereto.

Seller: EMC or Master Funding, in each case, in its capacity as seller of the Mortgage Loans to the Depositor pursuant to the terms of the Mortgage Loan Purchase Agreement and/or the Subsequent Mortgage Loan Purchase Agreement, as applicable.

Senior Certificates: The Class I-A Certificates and the Class II-A-1 Certificates.

Senior Enhancement Percentage: As to each Distribution Date, the percentage equivalent of a fraction, the numerator of which is the sum of (i) the aggregate of the Certificate Principal Balance of the Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates and (ii) the Overcollateralization Amount, in each case after taking into account the distribution of the related Principal Distribution Amount on such Distribution Date, and the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans for such Distribution Date.

Servicer Remittance Date: With respect to each Mortgage Loan and the applicable Servicer, the date set forth in the related Servicing Agreement.

Servicers: Each of Countrywide, EMC, Homebanc, HSBC, Mid America, PHH and Wells Fargo, and their respective permitted successors and assigns, and any Special Servicer appointed hereunder pursuant to Section 3.22.

Servicing Agreement: Each of the Countrywide Servicing Agreement, EMC Servicing Agreement, Homebanc Servicing Agreement, HSBC Servicing Agreement, Mid America Servicing Agreement, PHH Servicing Agreement, Wells Fargo Servicing Agreement and any Special Servicing Agreement entered into after the Closing Date, in each case as modified by the related Assignment Agreement.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Fee: As to any Mortgage Loan and Distribution Date, an amount equal to the product of (i) the Stated Principal Balance of such Mortgage Loan as of the Due Date in the prior calendar month and (ii) the related Servicing Fee Rate.

Servicing Fee Rate: As to any Mortgage Loan, a per annum rate as set forth in the Mortgage Loan Schedule.

Servicing Officer: The President or a Vice President or Assistant Vice President or other authorized officer of the Master Servicer having direct responsibility for the administration of this Agreement, and any other authorized officer of the Master Servicer to whom a matter arising hereunder may be referred.

Significance Estimate: With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be an amount determined based on the reasonable good-faith estimate by the Depositor of the aggregate maximum probable exposure of the outstanding Certificates to the related Cap Contract.

Significance Percentage: With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be an percentage equal to the Significance Estimate divided by the aggregate outstanding Certificate Principal Balance of the Principal Certificates, prior to the distribution of the related Principal Distribution Amount on such Distribution Date.

Special Hazard Loss: A Realized Loss attributable to damage or a direct physical loss suffered by a mortgaged property (including any Realized Loss due to the presence or suspected presence of hazardous wastes or substances on a mortgaged property) other than any such damage or loss covered by a hazard policy or a flood insurance policy required to be maintained in respect of such mortgaged property under the Agreement or any loss due to normal wear and tear or certain other causes.

Special Servicer: A special servicer appointed pursuant to Section 3.22.

Special Servicing Agreement: As defined in Section 3.22.

Sponsor: EMC, as a mortgage loan seller under the Mortgage Loan Purchase Agreement.

Startup Day: April 30, 2007.

Stated Principal Balance: With respect to any Mortgage Loan (including Subsequent Mortgage Loans) or related REO Property and any Distribution Date, the Outstanding Principal Balance thereof as of the Cut-off Date minus the sum of (i) the principal portion of the Scheduled Payments due with respect to such Mortgage Loan during each Due Period ending prior to such Distribution Date (and irrespective of any delinquency in their payment), (ii) all Principal Prepayments with respect to such Mortgage Loan received prior to or during the related Prepayment Period, and all Liquidation Proceeds to the extent applied by the related Servicer as recoveries of principal in accordance with this Agreement or the applicable Servicing Agreement with respect to such Mortgage Loan, that were received by the related Servicer as of the close of business on the last day of the calendar month immediately preceding such Distribution Date and (iii) any Realized Losses on such Mortgage Loan incurred during the prior calendar month. The Stated Principal Balance of a Liquidated Mortgage Loan equals zero. References herein to the Stated Principal Balance of a Loan Group at any time shall mean the aggregate Stated Principal Balance of all Mortgage Loans in such Loan Group.

Stepdown Date: The earlier to occur of (i) the Distribution Date on which the aggregate Certificate Principal Balance of the Class A Certificates has been reduced to zero and (ii) the later to occur of (a) the Distribution Date in May 2010 and (b) the first Distribution Date on which the sum of the aggregate Certificate Principal Balance of the Class M-1, Class M-2, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates and the Overcollateralization Amount divided by the Stated Principal Balance of the Mortgage Loans for such Distribution Date is greater than or equal to 16.80%.

Subordinate Certificates: The Offered Subordinate Certificates and the Non-Offered Subordinate Certificates.

Subsequent Cut-off Date: With respect to the Subsequent Mortgage Loans sold to the Trust pursuant to a Subsequent Transfer Instrument, the later of (i) the first day of the month in which the related Subsequent Transfer Date occurs or (ii) the date of origination of such Mortgage Loan.

Subsequent Mortgage Loan Purchase Agreement: The agreements between EMC, as seller, and the Depositor, as purchaser, and all amendments thereof and supplements thereto, regarding the transfer of the Subsequent Mortgage Loans by EMC to the Depositor, a form of which is attached as Exhibit X.

Subsequent Mortgage Loans: The Mortgage Loans which will be acquired by the Trust during the Pre-Funding Period with amounts on deposit in the Pre-Funding Account, which Mortgage Loans will be held as part of the Trust Fund and included in Loan Group I.

Subsequent Recoveries: As of any Distribution Date, amounts received during the related Prepayment Period by the related Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 4.05) or surplus amounts held by the related Servicer to cover estimated expenses (including) but not limited to, recoveries in respect of the representations and warranties made by the Sponsor or Master Funding pursuant to the Mortgage Loan Purchase Agreement) specifically related to a Liquidated Mortgage Loan or the disposition of an REO Property prior to the related Prepayment Period that resulted in a Realized Loss, after liquidation or disposition of such Mortgage Loan.

Subsequent Transfer Date: With respect to each Subsequent Transfer Instrument, the date on which the related Subsequent Mortgage Loans are sold to the Trust.

Subsequent Transfer Instrument: Each Subsequent Transfer Instrument, dated as of a Subsequent Transfer Date, executed by the Trustee at the written direction of the Seller and substantially in the form attached hereto as Exhibit S, by which Subsequent Mortgage Loans are transferred to the Trust Fund.

Substitute Mortgage Loan: A mortgage loan tendered to the Trustee pursuant to the related Servicing Agreement, the Mortgage Loan Purchase Agreement, a Subsequent Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, in each case, (i) which has an Outstanding Principal Balance nor greater nor materially less than the Mortgage Loan for which it is to be substituted; (ii) which has a Mortgage Interest Rate and Net Rate not less than, and not materially greater than, such Mortgage Loan; (iii) which has a maturity date not materially earlier or later than such Mortgage Loan and not later than the latest maturity date of any Mortgage Loan; (iv) which is of the same property type and occupancy type as such Mortgage Loan; (v) which has a Loan-to-Value Ratio not greater than the Loan-to-Value Ratio of such Mortgage Loan; (vi) which is current in payment of principal and interest as of the date of substitution; (vii) as to which the payment terms do not vary in any material respect from the payment terms of the Mortgage Loan for which it is to be substituted; and (viii) which has a Gross Margin, Periodic Rate Cap and Maximum Lifetime Mortgage Rate no less than those of such Mortgage Loan, has the same Index and interval, between Interest Adjustment Dates as such Mortgage Loan, and a Minimum Lifetime Mortgage Rate no lower than that of such Mortgage Loan.

Substitution Adjustment Amount: The amount, if any, required to be paid by the Mortgage Loan Seller to the Securities Administrator for deposit in the Distribution Account pursuant to Section 2.04 in connection with the substitution of a Mortgage Loan.

Tax Administration and Tax Matters Person: The Securities Administrator and any successor thereto or assignee thereof shall serve as tax administrator hereunder and as agent for the Tax Matters Person. The Holder of the largest percentage interest of each Class of Residual Certificates shall be the Tax Matters Person for the related 2007-3 REMIC, as more particularly set forth in Section 9.12 hereof.

Termination Purchase Price: The price, calculated as set forth in Section 10.01, to be paid in connection with the repurchase of the Mortgage Loans pursuant to Section 10.01.

Trigger Event: With respect to any Distribution Date, an event that exists if (i) the percentage obtained by dividing (x) the aggregate Stated Principal Balance of the Mortgage Loans that are 60 or more days Delinquent (including for this purpose any such Mortgage Loans in bankruptcy or foreclosure and the Mortgage Loans with respect to which the related Mortgaged Property has been acquired by the Trust) by (y) the aggregate Stated Principal Balance of the Mortgage Loans in the Mortgage pool, in each case, as of the close of business on the last day of the prior calendar month, exceeds 40.00% of the Current Specified Enhancement Percentage or (ii) the aggregate amount of Realized Losses on the Mortgage Loans since the Cut-off Date as a percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date and any amounts in the Pre-funding Account as of the Closing Date exceeds the applicable percentage set forth below:

| Months | Percentage |
| --- | --- |

34

| 37 – 48 | 0.60% |
| 49 – 60 | 1.05% |
| 61 – 72 | 1.45% |
| 73+ | 1.75% |

Trust Fund or Trust: The corpus of the trust created by this Agreement, consisting of the Mortgage Loans and the other assets described in Section 2.01(a) and the Guaranty relating to the Class XI-A-1 Certificates.

Trustee: Citibank, N.A., or its successor in interest, or any successor trustee appointed as herein provided.

2007-3 REMIC: Any of REMIC I, REMIC II, REMIC III and REMIC IV.

Uncertificated Interest: With respect to each REMIC Regular Interest on each Distribution Date, an amount equal to one month's interest at the related Uncertificated Pass-Through Rate on the Uncertificated Principal Balance of such REMIC Regular Interest. In each case, for purposes of the distributions, Uncertificated Interest will be reduced by the interest portion of any Realized Losses and Net Interest Shortfalls allocated, with respect to the REMIC I Regular Interests, to such REMIC Regular Interests pursuant to the definition of Realized Loss with respect to the REMIC II Regular Interests pursuant to the definition of REMIC II Realized Losses and with respect to the REMIC III Regular Interests and the REMIC IV Regular Interests, to the same extent and amounts and allocated to the Class of Certificate bearing the same designation.

Uncertificated Pass-Through Rate: With respect to any Distribution Date and REMIC Interest, the pass-through rate of each such REMIC Interest set forth in Section 5.01(c).

Uncertificated Principal Balance: The amount of any REMIC Regular Interest outstanding as of any date of determination. As of the Closing Date, the Uncertificated Principal Balance of each REMIC I Regular Interest shall equal the amount set forth in the Section 5.01(c)(ii) hereto as its Initial Uncertificated Principal Balance. On each Distribution Date, the Uncertificated Principal Balance of each REMIC I Regular Interest shall be reduced, first, by the portion of Realized Losses allocated in reduction of the Certificate Principal Balances distributed on each Distribution Date pursuant to the definition of Realized Losses and, second, the amounts deemed distributed on each Distribution Date in respect of principal on the REMIC I Regular Interests pursuant to Section 6.07. As of the Closing Date, the Uncertificated Principal Balance of each REMIC II Regular Interest shall equal the amount set forth in the Section 5.01(c)(iii) hereto as its Initial Uncertificated Principal Balance. On each Distribution Date, the Uncertificated Principal Balance of each REMIC II Regular Interest shall be reduced by the sum of (i) the principal definition of REMIC II Realized Loss and (ii) the amounts deemed distributed on each Distribution Date in respect of principal on the REMIC III Regular Interests pursuant to Section 6.07. As of the Closing Date, the Uncertificated Principal Balance of each REMIC III Regular Interest shall equal the amount set forth in the Section 5.01(c)(iii) hereto as its Initial Uncertificated Principal Balance. On each Distribution Date, the Uncertificated Principal Balance of each REMIC III Regular Interest shall be reduced, first, by the portion of Realized Losses allocated in reduction of the Certificate Principal Balances of the Classes of Certificates bearing the same designations on such Distribution Date. As of the Closing Date, the Uncertificated Principal Balance of the REMIC IV Regular Interest shall equal the amount set forth in Section 5.01(c)(iv) as its Initial Uncertificated Principal Balance.

Uninsured Cause: Any cause of damage to a Mortgaged Property or related REO Property such that the complete restoration of such Mortgaged Property or related REO Property is not fully reimbursable by the hazard insurance policies required to be maintained pursuant the Servicing Agreement, without regard to whether or not such policy is maintained.

United States Person: A citizen or resident of the United States, a corporation or partnership (including an entity treated as a corporation or partnership for federal income tax purposes) created or organized in, or under the laws of, the United States or any state thereof or the District of Columbia (except, in the case of a partnership, to the extent provided in regulations), provided that, for purposes solely of the Residual Certificates, no partnership or other entity treated as a partnership for United States federal income tax purposes shall be treated as a United States Person unless all persons that own an interest in such partnership either directly or through any entity that is not a corporation for United States federal income tax purposes are United States Persons, or an estate whose income is subject to United States federal income tax regardless of its source, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more such United States Persons have the authority to control all substantial decisions of the trust. To the extent prescribed in regulations by the Secretary of the Treasury, which have not yet been issued, a trust which was in existence on August 20, 1996 (other than a trust treated as owned by the grantor under subpart E of part I of subchapter J of chapter 1 of the Code), and which was treated as a United States person on August 20, 1996 may elect to continue to be treated as a United States person notwithstanding the previous sentence.

Unpaid Realized Loss Amount: With respect to any Distribution Date and any Class of Principal Certificates, is the excess of (i) Applied Realized Loss Amounts with respect to such Class over (ii) the sum of all distributions in reduction of the Applied Realized Loss Amounts on all previous Distribution Dates. Any amounts distributed to a Class of Certificates in respect of any Unpaid Realized Loss Amount will not be applied to reduce the Certificate Principal Balance of such Class.

Wells Fargo: Wells Fargo Bank, N.A., and any successor thereto.

Wells Fargo Servicing Agreement: Amended and Restated Master Seller's Warranties and Servicing Agreement dated as of November 1, 2005, between Wells Fargo and EMC, and as further amended by the related Subsequent Servicing Agreement.

Widely Held Fixed Investment Trust: As such term is defined in Treasury Regulations section 1.671-5(b)(22) or successor provisions.

Widely Held Fixed Investment Trust Regulations: Treasury Regulations section 1.671-5, as amended.

Widely Held Mortgage Trust : As such term is defined in Treasury Regulations section 1.671-5(b)(23) or successor provisions.

---

### ARTICLE II
Conveyance of Mortgage Loans;
Original Issuance of Certificates

Section 2.01.    Conveyance of Mortgage Loans to Trustee. (a) The Depositor concurrently with the execution and delivery of this Agreement, sells, transfers and assigns to the Trust without recourse all its right, title and interest in and to (i) the Mortgage Loans identified in the Mortgage Loan Schedule, including all interest and principal due with respect to the Initial Mortgage Loans after the Cut-off Date and the Subsequent Mortgage Loans after the related Subsequent Cut-off Date, but excluding any payments of principal and interest due on or prior to the Cut-off Date; (ii) such assets as shall from time to time be credited or are required by the terms of this Agreement to be credited to the Distribution Account (iii) such assets relating to the Mortgage Loans as from time to time may be held by the Servicers in Protected Accounts and the Securities Administrator in the Distribution Account in the name of the Trustee on behalf of the Trust for the benefit of the Certificateholders and the Securities Administrator in the Reserve Fund in the name of the Trustee on behalf of the Trust for the benefit of the Offered Certificates and the Class XI-A-1, Class R-4 and Class R-X0 Certificateholders, (iv) any REO Property, (v) the Required Insurance Policies and any amounts paid

**35**

or payable by the insurer under any Insurance Policy (to the extent the mortgagee has a claim thereto), (vi) the Mortgage Loan Purchase Agreement and the Subsequent Mortgage Loan Purchase Agreement to the extent provided in Section 2.03(a), (vii) the rights with respect to the Servicing Agreement as assigned to the Trustee on behalf of the Trust for the benefit of the Certificateholders by the Assignment Agreements and the rights of the Depositor under the EMC Servicing Agreement, (viii) such assets as shall from time to time be credited or are required by the terms of this Agreement to be credited to the Pre-Funding Account, the Pre-Funding Reserve Account, the Interest Coverage Account, the Distribution Amount and the Reserve Fund and (ix) any proceeds of the foregoing. Although it is the intent of the parties to this Agreement that the conveyance of the Depositor's right, title and interest in and to the Mortgage Loans and other assets in the Trust Fund pursuant to this Agreement shall constitute a purchase and sale and not a loan, in the event that such conveyance is deemed to be a loan, it is the intent of the parties to this Agreement that the Depositor shall be deemed to have granted to the Trustee a first priority perfected security interest in all of the Depositor's right, title and interest in, to and under the Mortgage Loans and other assets in the Trust Fund, and that this Agreement shall constitute a security agreement under applicable law. The Depositor, the Seller and the Trustee agree that it is not intended that any Mortgage Loan be conveyed to the Trust that is either (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (iii) a "High Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 or (iv) a "High-Cost Home Loan" as defined by the Indiana High Cost Home Loan Law effective January 1, 2005. The Class II-A-1 Certificateholders will also have the benefit of the Guaranty.

(b)   In connection with the above transfer and assignment, the Sponsor hereby deposits with the Trustee or the related Custodian, on behalf of the Trustee, with respect to each Mortgage Loan:

(i)   the original Mortgage Note, endorsed without recourse (A) to the order of the Trustee or (B) in the case of a Mortgage Loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or lost note affidavit together with a copy of the related Mortgage Note,

(ii)   the original Mortgage and, if the related Mortgage Loan is a MOM Loan, noting the presence of the MIN and language indicating that such Mortgage Loan is a MOM Loan, which shall have been recorded (or if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (v) in the proviso below applies, shall be in recordable form),

(iii)   unless the Mortgage Loan is assigned in the name of MERS, a certified copy of the assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) to "Citibank, N.A., as Trustee", with evidence of recording with respect to each Mortgage Loan in the name of the Trustee thereon (or if clause (v) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland, Tennessee, South Carolina, Mississippi and Florida, or an Opinion of Counsel has been provided as set forth in this Section 2.01(b), shall be in recordable form),

(iv)   all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon

(v)   the original or a copy of the policy or certificate of primary mortgage guaranty insurance, to the extent available, if any,

(vi)   the original policy of title insurance, or a copy thereof, or mortgagee's certificate of title insurance or commitment or binder for title insurance, and

(vii)   originals of all modification agreements, if applicable and available.

provided, however, that in lieu of the foregoing, the Depositor may deliver the following documents, under the circumstances set forth below: (w) in lieu of the original Security Instrument, assignments to the Trustee or intervening assignments thereof which have been delivered, are being delivered or will, upon receipt of recording information relating to the Security Instrument required to be included thereon, be delivered to recording offices for recording and have not been returned to the Depositor in time to permit their delivery as specified above, the Depositor may deliver, or cause to be delivered, a true copy thereof with a stamp on the face of each copy, substantially as follows: "Certified to be a true and correct copy of the original"; (x) in lieu of the Security Instrument, assignment to the Trustee or intervening assignments thereof, if the applicable jurisdiction retains the originals of such documents (as evidenced by a certification from the Depositor to such effect) the Depositor may deliver photocopies of such documents containing an original certification by the applicable recording authority of the jurisdiction where such documents were recorded; and (y) the Depositor shall not be required to deliver intervening assignments of Mortgage Note endorsements between the applicable Seller and the Depositor, and between the Depositor and the Trustee; and provided, further, however, that in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, and in the case of Subsequent Mortgage Loans which have been prepaid in full after the related Subsequent Cut-off Date and prior to the related Subsequent Transfer Date, the Depositor, in lieu of delivering the above documents, may deliver to the Trustee or the Custodian, on its behalf, a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loans in the Distribution Account on the Closing Date or the related Subsequent Transfer Date, as the case may be. The Depositor shall deliver such original documents (including any original documents as to which certified copies had previously been delivered) to the Trustee or the Custodian, on its behalf, promptly after they are received. The Depositor shall cause the Sponsor (on its own behalf and on behalf of Master Funding), at its expense, to cause each assignment of the Security Instrument to the Trustee to be recorded not later than 180 days after the Closing Date, unless (a) such recordation is not required by the Rating Agencies or an Opinion of Counsel addressed to the Trustee and the Guarantor has been provided to the Trustee and the Guarantor (with a copy to the Custodian) which states that recordation of such Security Instrument is not required to protect the interests of the Certificateholders in the related Mortgage Loans or (b) MERS is identified on the Mortgage or on a properly recorded assignment of the Mortgage as the mortgagee of record solely as nominee for the Sponsor and Master Funding and its successor and assigns; provided, however, that each assignment shall be submitted for recording by the Sponsor (on its own behalf and on behalf of Master Funding) in the manner described above, at no expense to the Trust or the Trustee or the Custodian, on its behalf, upon the earliest to occur of: (i) reasonable direction by the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 25% of the trust, (ii) the occurrence of an Event of Default, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Sponsor and (iv) the occurrence of a servicing transfer as described in Section 8.02 hereof.

Section 2.02.   Acceptance of Mortgage Loans by Trustee. (a) The Trustee acknowledges the sale, transfer and assignment of the Trust Fund to it (or the Custodian, on its behalf) by the Depositor and receipt of, subject to further review and the exceptions which may be noted pursuant to the procedures described below, and declares that it holds, the documents (or certified copies thereof) delivered to it or the Custodian, on its behalf, pursuant to Section 2.01, and declares that it (or the Custodian, on its behalf) will continue to hold these documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund delivered to it (or the Custodian, on its behalf) as Trustee in trust for the use and benefit of all present and future Holders of the Certificates. On the Closing Date, with respect to the Initial Mortgage Loans, or the Subsequent Transfer Date with respect to the Subsequent Mortgage Loans, the Custodian shall acknowledge with respect to each Mortgage Loan by delivery to the Depositor, the Master Servicer, the Guarantor (if applicable, as provided in the related Custodial Agreement) and the Trustee of an Initial Certification substantially in the form of Exhibit One to the related Custodial Agreement, receipt of the Mortgage File, but without review of such note affidavit. No later than 90 days after the Closing Date (or within 90 days of the Subsequent Transfer Date, with respect to the Subsequent Mortgage Loans, or with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or Custodian thereof), the Trustee agrees, for the benefit of the Certificateholders, to review or cause to be reviewed by the Custodian on its behalf (under the related Custodial Agreement), each Mortgage File delivered to it and to execute and deliver, or cause to be executed and delivered, to the Depositor, the Master Servicer, the Guarantor (if applicable, as provided in the related Custodial Agreement) and the Trustee an Interim Certification substantially in the form annexed as Exhibit Two to the

related Custodial Agreement. In conducting such review, the Trustee or Custodian, on behalf of the Trustee, will ascertain whether all required documents have been executed and received, and based on the Mortgage Loan Schedule, whether those documents relate, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans it has reviewed, as identified in the Mortgage Loan Schedule. In performing any such review, the Trustee or the Custodian, on its behalf, may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon. If the Trustee or the Custodian, on its behalf, finds any document constituting part of the Mortgage File has not been executed or received, or to be unrelated, (determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified in Exhibit B, or the Subsequent Mortgage Loans identified on Exhibit 1 to the related Subsequent Transfer Instrument, as the case may be, or to appear defective on its face (i.e. torn, mutilated, or otherwise physically altered) (a "Material Defect"), the Trustee or the Custodian, on its behalf, shall upon completion of the review of all files, but in no event later than 90 days after the Closing Date, notify the Sponsor. In accordance with the Mortgage Loan Purchase Agreement or the Subsequent Mortgage Loan Purchase Agreement, the Sponsor (on its own behalf and on behalf of Master Funding) shall correct or cure any such defect within ninety (90) days from the date of notice from the Trustee or the Custodian, on its behalf, of the defect and if the Sponsor (on its own behalf and on behalf of Master Funding) fails to correct or cure the defect within such period, and such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee or the Custodian, on its behalf, shall enforce the Sponsor's obligation pursuant to the Mortgage Loan Purchase Agreement or the Subsequent Mortgage Loan Purchase Agreement, as the case may be, within 90 days from the Trustee's or the Custodian's notification, to purchase such Mortgage Loan (on its own behalf and on behalf of Master Funding) at the Repurchase Price; provided that, if such defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure or repurchase must occur within 90 days from the date such breach was discovered; provided, however, that if such defect relates solely to the inability of the Sponsor (on its own behalf and on behalf of Master Funding) to deliver the original Security Instrument or intervening assignments thereof, or a certified copy because the originals of such documents, or a certified copy have not been returned by the applicable jurisdiction, the Sponsor (on its own behalf and on behalf of Master Funding) shall not be required to purchase such Mortgage Loan if the Sponsor delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date or Subsequent Transfer Date, as applicable. The foregoing repurchase obligation shall not apply in the event that the Sponsor (on its own behalf and on behalf of Master Funding) cannot deliver such original or copy of any document submitted for recording to the applicable recording office in the applicable jurisdiction because such document has not been returned by such office; provided that the Sponsor (on its own behalf and on behalf of Master Funding) shall instead deliver a recording receipt of such recording (office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Trustee or the Custodian, on its behalf, shall be effected by the Sponsor on its own behalf and on behalf of Master Funding) within thirty days of its receipt of the original recorded document.

(b)     No later than 180 days after the Closing Date (or within 180 days of the Subsequent Transfer Date, with respect to the Subsequent Mortgage Loans or with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or the Custodian thereof), the Trustee or the Custodian, on its behalf, will review, for the benefit of the Certificateholders, the Mortgage Files delivered to it and will execute and deliver or cause to be executed and delivered to the Depositor, the Master Servicer, the Guarantor (if applicable, as provided in the related Custodial Agreement) and the Trustee a Final Certification, substantially in the form annexed as Exhibit Three to the related Custodial Agreement. In conducting such review, the Trustee or the Custodian, on its behalf, will ascertain whether an original of each document required to be recorded has been returned from the recording office with evidence of recording thereon or a certified copy has been obtained from the recording office. If the Trustee or the Custodian, on its behalf, finds a Material Defect, the Trustee or the Custodian, on its behalf, shall upon completion of the review of all files, but in no event later than 180 days after the Closing Date, notify the Sponsor and the Guarantor (provided, however, that with respect to those documents described in Sections 2.01(b)(iv), (v) and (vii), the Trustee's and Custodian's obligations shall extend only to the documents actually delivered to the Trustee or the Custodian, on behalf of the Trustee, pursuant to such Sections). In accordance with the Mortgage Loan Purchase Agreement or the Subsequent Mortgage Loan Purchase Agreement, the Sponsor (on its own behalf and on behalf of Master Funding) shall correct or cure any such defect within 90 days from the date of notice from the Trustee, the Guarantor, if applicable, or the Custodian, on its behalf, of the Material Defect and if the Sponsor (on its own behalf) and on behalf of Master Funding) is unable to cure such defect within such period, and if such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee shall enforce the Sponsor's obligation under the Mortgage Loan Purchase Agreement (on its own behalf and on behalf of Master Funding) or the Subsequent Mortgage Loan Purchase Agreement, to provide a Substitute Mortgage Loan (if within two years of the Closing Date) or purchase such Mortgage Loan at the Repurchase Price; provided, however, that if such defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure, repurchase or substitution must occur within 90 days from the date such breach was discovered; provided further, that if such defect relates solely to the inability of the Sponsor (on its own behalf and on behalf of Master Funding) to deliver the original Security Instrument or intervening assignments thereof, or a certified copy, because the originals of such documents or a certified copy, have not been returned by the applicable jurisdiction, the Sponsor (on its own behalf and on behalf of Master Funding) shall not be required to purchase such Mortgage Loan, if the Sponsor (on its own behalf and on behalf of Master Funding) delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date or Subsequent Transfer Date, as applicable. The foregoing repurchase obligation shall not apply in the event that the Sponsor (on its own behalf and on behalf of Master Funding) cannot deliver such original or copy of any document submitted for recording to the appropriate recording office in the applicable jurisdiction because such document has not been returned by such office; provided that the Sponsor (on its own behalf and on behalf of Master Funding) shall instead deliver a recording receipt of such recording (office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Trustee or the Custodian, on its behalf, shall be effected by the Sponsor on Master Funding within thirty days of its receipt of the original recorded document.

(c)     In the event that a Mortgage Loan is purchased by the Sponsor (on its own behalf as Seller or on behalf of Master Funding) in accordance with Sections 2.02(a) or (b) above, the Sponsor shall remit to the Securities Administrator, the Repurchase Price for deposit in the Distribution Account and the Sponsor shall provide to the Securities Administrator and the Trustee written notification detailing the components of the Repurchase Price. Upon deposit of the Repurchase Price in the Distribution Account, the Depositor shall notify the Trustee and the Custodian, on behalf of the Trustee (upon receipt of a Request for Release in the form of Exhibit D-1 or Exhibit D-2, as applicable, attached hereto with respect to such Mortgage Loan), shall release to the Sponsor the related Mortgage File and the Trustee shall execute and deliver all instruments of transfer or assignment, without recourse, representation or warranty, furnished to it by the Sponsor, as are necessary to vest in the Sponsor title to and rights under the Mortgage Loan. Such purchase shall be deemed to have occurred on the date on which the Repurchase Price in available funds is received by the Securities Administrator. The Sponsor shall amend the Mortgage Loan Schedule to reflect such repurchase and shall promptly notify the Trustee, the Securities Administrator, the Master Servicer, each Custodian, the Guarantor and the Rating Agencies of such amendment. The obligation of the Sponsor (on its own behalf and on behalf of Master Funding) to repurchase any Mortgage Loan as to which such a defect in a constituent document exists shall be the sole remedy respecting such defect available to the Certificateholders or to the Trustee on their behalf.

Section 2.03.     Assignment of Interest in the Mortgage Loan Purchase Agreement and Subsequent Mortgage Loan Purchase Agreements. (a) The Depositor hereby assigns to the Trustee, on behalf of the Certificateholders, all of its right, title and interest in the Mortgage Loan Purchase Agreement and Subsequent Mortgage Loan Purchase Agreement, including but not limited to the Depositor's rights and obligations pursuant to the Servicing Agreements (noting that the Sponsor has retained the right in the event of breach of the representations, warranties and covenants, if any, with respect to the related Mortgage Loans of the related Servicer under the related Servicing Agreement to enforce the provisions thereof and to seek all or any available remedies). The

37

obligations of the Sponsor (on its own behalf and on behalf of Master Funding) to substitute or repurchase, as applicable, a Mortgage Loan shall be the Trustee's and the Certificateholders' sole remedy for any breach thereof. At the request of the Trustee, the Depositor shall take such actions as may be necessary to enforce the above right, title and interest on behalf of the Trustee and the Certificateholders or shall execute such further documents as the Trustee may reasonably require in order to enable the Trustee to carry out such enforcement.

(b)    If the Depositor, the Master Servicer, the Guarantor, or the Trustee discovers a breach of any of the representations and warranties set forth in the Mortgage Loan Purchase Agreement or the Subsequent Mortgage Loan Purchase Agreement, which breach materially and adversely affects the value of the interests of Certificateholders or the Trustee in the related Mortgage Loan, the party discovering the breach shall give prompt written notice of the breach to the other parties. The Sponsor (on its own behalf and on behalf of Master Funding), within 90 days of its discovery or receipt of notice that such breach has occurred (whichever occurs earlier), shall cure the breach in all material respects or, subject to the Mortgage Loan Purchase Agreement, the Subsequent Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, shall purchase the Mortgage Loan or any property acquired with respect thereto from the Trustee; provided, however, that if there is a breach of any representation set forth in the Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, and the Mortgage Loan or the related property acquired with respect thereto has been sold, then the Sponsor (on its own behalf and on behalf of Master Funding) shall pay, in lieu of the Repurchase Price, any excess of the Repurchase Price over the Net Liquidation Proceeds received upon such sale. (If the Net Liquidation Proceeds exceed the Repurchase Price, any excess shall be paid to the Sponsor to the extent not required by law to be paid to the borrower.) Any such purchase by the Sponsor (on its own behalf and on behalf of Master Funding) shall be made by providing an amount equal to the Repurchase Price to the Securities Administrator for deposit in the Distribution Account and written notification detailing the components of such Repurchase Price. The Depositor shall notify the Trustee and submit to the Trustee or the Custodian, on its behalf, a Request for Release, and the Trustee shall cause the Custodian to release, to the Sponsor the related Mortgage File and the Trustee shall execute and deliver all instruments of transfer or assignment furnished to it by the Sponsor (on its own behalf and on behalf of Master Funding), without recourse, representations or warranties as are necessary to vest in the Sponsor title to and rights under the Mortgage Loan or any property acquired with respect thereto. Such purchase shall be deemed to have occurred on the date on which the Repurchase Price in available funds is received by the Securities Administrator. The Sponsor shall amend the Mortgage Loan Schedule to reflect such repurchase and shall promptly notify the Trustee, the Securities Administrator, the Master Servicer, the Custodian, the Guarantor and the Rating Agencies of such amendment. Enforcement of the obligation of the Sponsor (on its own behalf and on behalf of Master Funding) to purchase (or substitute a Substitute Mortgage Loan for) any Mortgage Loan or any property acquired with respect thereto (or pay the Repurchase Price as set forth in the above proviso) as to which a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on their behalf.

In connection with any Repurchase of a Mortgage Loan pursuant to this Section 2.03, the Sponsor (on its own behalf and on behalf of Master Funding) shall furnish to the Securities Administrator an Officer's Certificate, signed by a duly authorized officer of the Sponsor to the effect that such repurchase has been made in accordance with the terms and conditions of this Agreement and that all conditions precedent to such repurchase or substitution have been satisfied, including the delivery to the Securities Administrator of the Purchase Price or Substitution Adjustment Amount, as applicable, for deposit into the Distribution Account, together with copies of any Opinion of Counsel required to be delivered pursuant to this Agreement and the related Request for Release. Solely for purposes of the Securities Administrator providing an Assessment of Compliance, upon receipt of such documentation, the Securities Administrator shall approve such repurchase, as applicable, and which approval shall consist solely of the Securities Administrator's receipt of such documentation and deposits. It is understood and agreed that the obligation under this Agreement of the Sponsor (on its own behalf and on behalf of Master Funding) to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedies against the Sponsor and Master Funding respecting such breach available to Certificateholders, the Depositor, the Trustee or the Securities Administrator.

Notwithstanding the foregoing, if either the Sponsor or the Depositor is liable for a breach under this Section 2.03, it shall promptly reimburse the Guarantor for all expenses (if any) incurred by the Guarantor in respect of enforcing the remedies for such breach.

Section 2.04.    Substitution of Mortgage Loans. Notwithstanding anything to the contrary in this Agreement, in lieu of purchasing a Mortgage Loan pursuant to the Mortgage Loan Purchase Agreement, Subsequent Mortgage Loan Purchase Agreement or Sections 2.02 or 2.03 of this Agreement, the Sponsor (on its own behalf and on behalf of Master Funding) may, no later than the date by which such purchase by the Sponsor would otherwise be required, tender to the Trustee a Substitute Mortgage Loan accompanied by a certificate of an authorized officer of the Sponsor which such Substitute Mortgage Loan conforms to the requirements set forth in the definition of "Substitute Mortgage Loan" in the Mortgage Loan Purchase Agreement, Subsequent Mortgage Loan Purchase Agreement or this Agreement, as applicable; provided, however, that substitution pursuant to the Mortgage Loan Purchase Agreement, Subsequent Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, in lieu of purchase shall not be permitted after the termination of the two-year period beginning on the Startup Day; provided, further, that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure or substitution must occur within 90 days from the date the breach was discovered. The Sponsor will promptly notify the Master Servicer, the Guarantor and the Securities Administrator of any such substitution. The Trustee or the Custodian, on its behalf, shall examine the Mortgage File for any Substitute Mortgage Loan in the manner set forth in Section 2.02(a) and the Trustee or the Custodian, on its behalf, shall notify the Sponsor, in writing, within five Business Days after receipt, whether or not the documents relating to the Substitute Mortgage Loan satisfy the requirements of the fourth sentence of Section 2.02(a). Within two Business Days after such notification, the Sponsor (on its own behalf and on behalf of Master Funding) shall provide to the Securities Administrator for deposit in the Distribution Account the amount, if any, by which the Outstanding Principal Balance as of the next preceding Due Date of the Mortgage Loan for which substitution is being made, after giving effect to the Scheduled Principal due on such date, exceeds the Outstanding Principal Balance as of such date of the Substitute Mortgage Loan, after giving effect to Scheduled Principal due on such date, which amount shall be treated for the purposes of this Agreement as if it were the Repurchase Price paid by the Sponsor of the Repurchase Price for the purchase of a Mortgage Loan by the Sponsor. After such notification to the Sponsor and, if any such excess exists, upon receipt of such deposit, the Trustee shall accept such Substitute Mortgage Loan which shall thereafter be deemed to be a Mortgage Loan hereunder. In the event of such a substitution, accrued interest on the Substitute Mortgage Loan for the month in which the substitution occurs and any Principal Prepayments made thereon during such month shall be the property of the Trust Fund and any Principal Prepayments made thereon during such month shall be the property of the Sponsor. The Scheduled Principal on a Substitute Mortgage Loan due on the Due Date in the month of substitution shall be the property of the Sponsor and the Scheduled Principal on the Mortgage Loan for which the substitution is made due on such Due Date shall be the property of the Trust Fund. Upon acceptance of the Substitute Mortgage Loan (and delivery) to the Trustee or the Custodian as agent of the Trustee, as applicable, of a Request for Release for such Mortgage Loan), the Trustee or the Custodian, on its behalf, shall release to the Sponsor the related Mortgage File related to any Mortgage Loan released pursuant to the Mortgage Loan Purchase Agreement, the Subsequent Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, and shall execute and deliver all instruments of transfer or assignment, without recourse, representation or warranty in form as provided to it as are necessary to vest in the Sponsor title to and rights under any Mortgage Loan released pursuant to the Mortgage Loan Purchase Agreement, the Subsequent Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable. The Sponsor (on its own behalf and on behalf of Master Funding) shall deliver the documents related to the Substitute Mortgage Loan in accordance with the provisions of the Mortgage Loan Purchase Agreement, the Subsequent Mortgage Loan Purchase Agreement or Sections 2.01(b) and 2.02(b) of this Agreement, as applicable, with the date of acceptance of the Substitute Mortgage Loan deemed to be the Closing Date for purposes of the time periods set forth in those Sections. The representations and warranties set forth in the Mortgage Loan Purchase Agreement and the Subsequent Mortgage Loan Purchase Agreement shall be deemed to have been made by the Sponsor with respect to each Substitute Mortgage Loan as of the date of acceptance of such Mortgage Loan by the Trustee. The Sponsor shall amend the Mortgage Loan Schedule to reflect such substitution and shall provide a copy of such amended Mortgage Loan Schedule to the Trustee, the

Securities Administrator, the Guarantor, the Master Servicer, each Custodian and the Rating Agencies.

In connection with any substitution of a Mortgage Loan pursuant to this Section 2.04, the Sponsor shall furnish to the Securities Administrator an Officer's Certificate, signed by a duly authorized officer of the Sponsor to the effect that such substitution has been made in accordance with the terms and conditions of this Agreement and that all conditions precedent to such substitution have been satisfied, including the delivery to the Securities Administrator of the Purchase Price or Substitution Adjustment Amount, as applicable, for deposit into the Distribution Account, together with copies of any Opinion of Counsel required to be delivered pursuant to this Agreement and the related Request for Release. Solely for purposes of the Securities Administrator providing an Assessment of Compliance, upon receipt of such documentation, the Securities Administrator shall approve such substitution, as applicable, and which approval shall consist solely of the Securities Administrator's receipt of such documentation and deposits. It is understood and agreed that the obligation under this Agreement on the part of Master Funding) to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedies against the Sponsor and Master Funding respecting such breach available to Certificateholders, the Depositor, the Trustee or the Securities Administrator.

Section 2.05.    Issuance of Certificates. (a) The Trustee acknowledges the assignment to it of the Mortgage Loans and the other assets comprising the Trust Fund and, concurrently therewith, the Securities Administrator has signed, and countersigned and delivered to the Depositor, in exchange therefor, Certificates in such authorized denominations representing such Fractional Undivided Interests as the Depositor has requested. The Trustee (or the Custodian, on its behalf) agrees that it will hold the Mortgage Loans and such other assets as may from time to time be delivered to it (or the Custodian, on its behalf) segregated on the books of the Trustee (or the Custodian, on its behalf) in trust for the benefit of the Certificateholders.

(b)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to (i) the REMIC I Regular Interests and the other assets of REMIC II for the benefit of the REMIC II Interests, (ii) the REMIC II Regular Interests and the other assets of REMIC III for the benefit of the holders of the REMIC III Interests, and (iii) the REMIC III Regular Interests B-IO-I and B-IO-P and the other assets of REMIC IV for the benefit of the holders of the REMIC IV Interests. The Trustee acknowledges receipt of the REMIC I Regular Interests, REMIC II Regular Interests and REMIC III Regular Interests B-IO-I and B-IO-P (each of which are uncertificated) and the other assets of REMIC II, REMIC III and REMIC IV, and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of the REMIC II Interests, REMIC III Interests and the REMIC IV Interests, as applicable.

Section 2.06.    Representations and Warranties Concerning the Depositor. The Depositor hereby represents and warrants to the Trustee, the Guarantor, the Master Servicer and the Securities Administrator as follows:

(a)    the Depositor is duly organized and is validly existing as a corporation in good standing under the laws of the State of Delaware and has full power and authority necessary to own or hold its properties and to conduct its business as now conducted by it and to enter into and perform its obligations under this Agreement;

(b)    the Depositor has the full power and authority to execute, deliver and perform, and to enter into and consummate the transactions contemplated by this Agreement and has duly authorized, by all necessary corporate action on its part, the execution, delivery and performance of this Agreement, and this Agreement, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes a legal, valid and binding obligation of the Depositor, enforceable against the Depositor in accordance with its terms, subject, as to enforceability, to (i) bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally and (ii) general principles of equity, regardless of whether enforcement is sought in a proceeding in equity or at law;

(c)    the execution and delivery of this Agreement by the Depositor, the consummation of the transactions contemplated by this Agreement, and the fulfillment of or compliance with the terms hereof are in the ordinary course of business of the Depositor and will not (A) result in a material breach of any term or provision of the articles of incorporation or bylaws of the Depositor or (B) conflict with, result in a breach, violation or acceleration of, or result in a default under, the terms of any other material agreement or instrument to which the Depositor is a party or by which it may be bound or (C) constitute a violation of any statute, order or regulation applicable to the Depositor of any court, regulatory body, administrative agency or governmental body having jurisdiction over the Depositor; and the Depositor is not in breach or violation of any indenture or other agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it, which breach or violation may materially impair the Depositor's ability to perform or meet any of its obligations under this Agreement;

(d)    no litigation is pending, or, to the best of the Depositor's knowledge, threatened, against the Depositor that would materially and adversely affect the execution, delivery or enforceability of this Agreement or the ability of the Depositor to perform its obligations under this Agreement in accordance with the terms hereof;

(e)    no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Depositor of, or compliance by the Depositor with, this Agreement or the consummation of the transactions contemplated hereby, or if any such consent, approval, authorization or order is required, the Depositor has obtained the same; and

(f)    immediately prior to the transfer and assignment to the Trustee, each Mortgage Note and each Mortgage were not subject to an assignment or pledge, and the Depositor had good and marketable title to and was the sole owner thereof and had full right to transfer and sell such Mortgage Loan to the Trustee free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest.

(g)    The Depositor has filed all reports required to be filed by Section 13 or Section 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period if required) and has been subject to such filing requirements for the past 90 days.

Section 2.07.    Conveyance of Subsequent Mortgage Loans. (a)    Subject to the conditions set forth in paragraph (b) below, in consideration of the Paying Agent's delivery on the Subsequent Transfer Dates to or upon the written order of the Depositor of all or a portion of the balance of funds in the Pre-Funding Account, the Depositor shall, on such Subsequent Transfer Date, sell, transfer, assign, set over and convey without recourse to the Trust Fund (subject to the other terms and provisions of this Agreement) all its right, title and interest in and to (i) the Subsequent Mortgage Loans identified on the Mortgage Loan Schedule attached to the related Subsequent Transfer Instrument delivered by the Sponsor on such Subsequent Transfer Date, (ii) all interest accruing thereon on and after the Subsequent Cut-off Date and all collections in respect of interest and principal due after the Subsequent Cut-off Date and (iii) all items with respect to such Subsequent Mortgage Loans to be delivered pursuant to Section 2.01 and the other items in the related Mortgage Files; provided, however, that the Sponsor reserves and retains all right, title and interest in and to principal received and interest accruing on such Subsequent Mortgage Loans prior to the related Subsequent Cut-off Date. The transfer to the Trust for deposit in Loan Group I by the Depositor of the Subsequent Mortgage Loans identified on the related Mortgage Loan Schedule shall be absolute and is intended by the Depositor, the Sponsor, the Master Servicer, the Securities Administrator, the Trustee and the Certificateholders to constitute and to be treated as a sale of the Subsequent Mortgage Loans by the Depositor to the Trust. The related Mortgage File for each Subsequent Mortgage Loan shall be delivered to the Trustee or the applicable Custodian, on its behalf, at least three Business Days prior to the related Subsequent Transfer Date.

The purchase price paid by the Trust from amounts released by the Paying Agent from the Pre-Funding Account shall be 100% of the aggregate Stated Principal Balance of the Subsequent Mortgage Loans so transferred (as identified on the Mortgage Loan Schedule provided by the Depositor). This Agreement shall constitute a fixed price purchase contract in accordance with Section

860C(a)(3)(A)(ii) of the Code.

(b) The Depositor shall transfer to the Trustee on behalf of the Trust for deposit in Loan Group I, the Subsequent Mortgage Loans, and the other property and rights related thereto as described in paragraph (a) above, and the Paying Agent shall release funds from the Pre-Funding Account in an amount equal to the Subsequent Mortgage Loans purchased on the related Subsequent Transfer Date, only upon the satisfaction of each of the following conditions on or prior to the related Subsequent Transfer Date:

(i) the Depositor shall have delivered to the Trustee a duly executed Subsequent Transfer Instrument, which shall include a Mortgage Loan Schedule listing the Subsequent Mortgage Loans, and the Mortgage Loan Seller shall cause to be delivered to the Trustee and the Master Servicer, at least three Business Days prior to the related Subsequent Transfer Date, a computer file containing such Mortgage Loan Schedule;

(ii) the Depositor shall have furnished to the Master Servicer, no later than three Business Days prior to the related Subsequent Transfer Date, (X) if the servicer or servicers of such Subsequent Mortgage Loans are existing Servicers, then a written acknowledgement of each such Servicer that it is servicing such Subsequent Mortgage Loans pursuant to the related Servicing Agreement, or (Y) if the servicer or servicers are not existing servicers, then a Servicing Agreement and Assignment Agreement with respect to such servicer or servicers in form and substance reasonably satisfactory to the Master Servicer;

(iii) as of each Subsequent Transfer Date, as evidenced by delivery of the Subsequent Transfer Instrument, substantially in the form of Exhibit 8, the Depositor shall not be insolvent nor shall it have been rendered insolvent by such transfer nor shall it be aware of any pending insolvency with respect to it;

(iv) such sale and transfer shall not result in a material adverse tax consequence to the Trust or the Certificateholders;

(v) the Pre-Funding Period shall not have terminated;

(vi) the Depositor shall not have selected the Subsequent Mortgage Loans in a manner that it believed to be adverse to the interests of the Certificateholders; and

(vii) the Depositor shall have delivered to the Trustee a Subsequent Transfer Instrument confirming the satisfaction of the conditions precedent specified in this Section 2.07 and, pursuant to the Subsequent Transfer Instrument, assigned to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, in, to and under the Subsequent Mortgage Loan Purchase Agreement, to the extent of the Subsequent Mortgage Loans.

(c) Any conveyance of Subsequent Mortgage Loans on a Subsequent Transfer Date is subject to certain conditions including, but not limited to, the following:

(i) Each such Subsequent Mortgage Loan must satisfy the representations and warranties specified in the related Subsequent Transfer Instrument and this Agreement;

(ii) The Depositor will not select such Subsequent Mortgage Loans in a manner that it believes to be adverse to the interests of the Certificateholders;

(iii) As of the related Subsequent Cut-off Date, each such Subsequent Mortgage Loan will satisfy the following criteria:

(A) Such Subsequent Mortgage Loan may not be 30 or more days Delinquent as of the last day of the month preceding the related Subsequent Cut-off Date;

(B) The original term to stated maturity of such Subsequent Mortgage Loan will not be less than 180 months and will not exceed 480 months;

(C) Each Subsequent Mortgage Loan must be a Six Month LIBOR, One Year Treasury or One-Year LIBOR adjustable rate Mortgage Loan with a first lien on the related Mortgaged Property;

(D) No Subsequent Mortgage Loan will have a first payment date occurring after August 1, 2007;

(E) The latest maturity date of any Subsequent Mortgage Loan will be no later than August 1, 2047;

(F) Such Subsequent Mortgage Loan will have a credit score of not less than 520;

(G) Such Subsequent Mortgage Loan will have a maximum mortgage rate as of the related Subsequent Cut-off Date greater than 16.00%; and

(H) Such Subsequent Mortgage Loan shall have been underwritten in accordance with the underwriting guidelines of EMC;

(d) As of the related Subsequent Cut-off Date, the Subsequent Mortgage Loans in the aggregate will satisfy the following criteria:

(i) Have a weighted average Gross Margin ranging from 2.000% to 2.500% per annum;

(ii) Have a weighted average credit score greater than 650;

(iii) Have no less than 75% of the Mortgaged Properties be owner occupied;

(iv) Have no less than 70% of the Mortgaged Properties be single family detached or planned unit developments;

(v) Have no more than 45% of the Subsequent Mortgage Loans be cash out refinance;

(vi) Have all of such Subsequent Mortgage Loans with a Loan-to-Value Ratio greater than 80% be covered by a Primary Insurance Policy;

(vii) Have a weighted average maximum mortgage rate greater than or equal to 12.000%; and

(viii) Be acceptable to the Rating Agencies.

To the extent that the Pre-Funded Amount on deposit in the Pre-Funding Account has not been fully applied to the purchase of subsequent mortgage loans on or before July 15, 2007, the holders of Class I-A Certificates will receive on the Distribution Date immediately following July 15, 2007, the Remaining Pre-Funded Amount.

Any Remaining Pre-Funded Amount transferred to the Interest Coverage Account will be included in Principal Funds.

Section 2.08.     Purposes and Powers of the Trust.

The purpose of the common law trust, as created hereunder, is to engage in the following activities:

(a)     acquire and hold the Mortgage Loans and the other assets of the Trust Fund and the proceeds therefrom;

(b)     to issue the Certificates sold to the Depositor in exchange for the Mortgage Loans;

(c)     to make payments on the Certificates;

(d)     to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(e)     subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The Trust is hereby authorized to engage in the foregoing activities. The trust shall not engage in any activity other than in connection with the foregoing of other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.08 may not be amended.

---

## ARTICLE III
### Administration and Servicing of Mortgage Loans

Section 3.01.     Master Servicer. The Master Servicer shall supervise, monitor and oversee the obligation of the Servicers to service and administer their respective Mortgage Loans in accordance with the terms of the applicable Servicing Agreements and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. The Master Servicer shall comply in the performance of all reasonable rules and requirements of RMIC under the RMIC Policy, with respect to paying RMIC premiums under the RMIC Policy on behalf of the Trust. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices. Furthermore, the Master Servicer shall oversee and consult with each Servicer as necessary from time-to-time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by each Servicer and shall cause each Servicer to perform and observe the covenants, obligations and conditions to be performed or observed by such Servicer under its applicable Servicing Agreement. The Master Servicer shall independently and separately monitor each Servicer's servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to the Servicers' and Master Servicer's records, and based on such reconciled and corrected information, the Master Servicer shall provide such information to the Securities Administrator as shall be necessary in order for it to prepare the statements specified in Section 6.04, and prepare any other information and statements required to be forwarded by the Master Servicer hereunder. The Master Servicer shall reconcile the results of its Mortgage Loan monitoring with the actual remittances of the Servicers as reported to the Master Servicer.

In addition to the foregoing, in connection with a modification of any Mortgage Loan by a Servicer, if the Master Servicer is unable to enforce the obligations of the Servicer with respect to such modification, the Master Servicer shall notify the Depositor of such Servicer's failure to comply with the terms of the Servicing Agreement. If the Servicing Agreement requires the approval of the Master Servicer for a modification to a Mortgage Loan, the Master Servicer shall approve such modification if, based upon its receipt of written notification from the related Servicer outlining the terms of such modification and appropriate supporting documentation, the Master Servicer determines that the modification is permitted under the terms of the related Servicing Agreement and that any conditions to such modification set forth in the related Servicing Agreement have been satisfied. Furthermore, if the related Servicing Agreement requires the oversight and monitoring of loss mitigation measures with respect to the related Mortgage Loans, the Master Servicer will monitor any loss mitigation procedure or recovery action related to a defaulted Mortgage Loan (to the extent it receives notice of such from the related Servicer) and confirm that such loss mitigation procedure or recovery action is initiated, conducted and concluded in accordance with any timeframes and any other requirements set forth in the related Servicing Agreement, and the Master Servicer shall notify the Depositor and the Guarantor in any case in which the Master Servicer believes that the related Servicer is not complying with such timeframes and/or other requirements.

The Trustee shall furnish the Servicers and the Master Servicer, upon written request from a Servicing Officer, with any powers of attorney, in substantially the form attached hereto as Exhibit O, and upon written request from a Servicing Officer, other documents in form as provided to it necessary or appropriate to enable the Servicers and the Master Servicer to service and administer the related Mortgage Loans and REO Property.

The Trustee (or Custodian, on its behalf) shall provide access to the records and documentation in possession of the Trustee (or Custodian, on its behalf) regarding the related Mortgage Loans and REO Property and the servicing thereof to the Certificateholders, the FDIC, and the supervisory agents and examiners of the FDIC, such access being afforded only upon reasonable prior written request and during normal business hours at the office of the Trustee, or Custodian on its behalf; provided, however, that, unless otherwise required by law, the Trustee, or Custodian on its behalf, shall not be required to provide access to such records and documentation if the provision thereof would violate the legal right to privacy of any Mortgagor. The Trustee, or Custodian on its behalf, shall allow representatives of the above entities to photocopy any of the records and documentation and shall provide equipment for that purpose at a charge that covers the Trustee's or Custodian's actual costs.

The Trustee shall execute, upon the Servicer's written instruction (which includes the documents to be signed), and deliver to the Servicer and the Master Servicer any court pleadings, requests for Trustee's sale or other appropriate documents necessary to the foreclosure or trustee's sale with respect to a Mortgaged Property; (ii) any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Security Instrument; (iii) obtain a deficiency judgment against the Mortgagor; or (iv) enforce any other rights or remedies provided by the Mortgage Note or Security Instrument or otherwise available at law or equity.

Section 3.02.     REMIC-Related Covenants. For so long as each 2007-3 REMIC shall exist, the Trustee and the Securities Administrator shall act in accordance herewith to assure continuing treatment of such 2007-3 REMIC as a REMIC, and the Trustee and the Securities Administrator shall comply with any directions of the Depositor, the related Servicer, the Guarantor or the Master Servicer to assure such continuing treatment. In particular, the Securities Administrator shall not (a) sell or authorize the sale of all or any portion of the Mortgage Loans or of any investment of deposits in an Account (except as otherwise expressly permitted by this Agreement) unless such sale is as a result of a repurchase of the Mortgage Loans pursuant to this Agreement or the Securities Administrator has received a REMIC Opinion addressed to the Securities Administrator prepared at the expense of the Trust Fund; and (b) other than with respect to a substitution pursuant to the Mortgage Loan Purchase Agreement, the Subsequent Mortgage Loan Purchase Agreement or Section 2.02, Section 2.04 or Section 4.09 of this Agreement, as applicable, accept any contribution to any 2007-3 REMIC after the Startup Day without receipt of a REMIC Opinion addressed to the Securities Administrator prepared at the expense of the Trust Fund.

Section 3.03.     Monitoring of Servicers. (a) The Master Servicer shall be responsible for reporting to the Trustee, the Securities Administrator, the Guarantor and the Depositor the non-compliance by each Servicer with its duties under the related Servicing Agreement. In the review of each Servicer's activities, the Master Servicer may rely upon an officer's certificate of the

41

Deleted — Articles III — X, Inclusive

### ARTICLE XI
#### Miscellaneous Provisions

Section 11.01.    Intent of Parties. The parties intend that each 2007-3 REMIC shall be treated as a REMIC for federal income tax purposes and that the provisions of this Agreement should be construed in furtherance of this intent. Notwithstanding any other express or implied agreement to the contrary, the Sponsor, the Master Servicer, the Securities Administrator, the Depositor, the Guarantor, the Trustee, each recipient of the related Prospectus Supplement and, by its acceptance thereof, each holder of a Certificate, agrees and acknowledges that each party hereto has agreed that each of them and their employees, representatives and other agents may disclose, immediately upon commencement of discussions, to any and all persons the tax treatment and tax structure of the Certificates and the 2007-3 REMICs, the transactions described herein and all materials of any kind (including opinions and other tax analyses) that are provided to any of them relating to such tax treatment and tax structure except where confidentiality is reasonably necessary to comply with the securities laws of any applicable jurisdiction. For purposes of this paragraph, the terms "tax treatment" and "tax structure" have the meanings set forth in Treasury Regulation Sections 1.6011-4(c), 301.6111-2(c) and 301.6112-1(d).

.  .  .  .

Section 11.06.    Governing Law. THIS AGREEMENT AND THE CERTIFICATES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS CONFLICT OF LAWS RULES (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW, WHICH THE PARTIES HERETO EXPRESSLY RELY UPON IN THE CHOICE OF SUCH LAW AS THE GOVERNING LAW HEREUNDER) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

.  .  .  .

IN WITNESS WHEREOF, the Depositor, the Trustee, the Master Servicer and the Securities Administrator have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

MORTGAGE INVESTMENTS II INC., as Depositor

Silverstein

Silverstein

Managing Director


Trustee

STRUCTURED ASSET

By: /s/ Baron

Name:   Baron

Title:   Senior


CITIBANK, N.A., as

By:  /s/ John Hannon

Name:  John Hannon
Title:  Vice President

MORTGAGE ASSOCIATION, as Guarantor

Castro

President

FEDERAL NATIONAL

By:  /s/ Ramon de

Name:  Ramon de Castro
Title: Senior Vice

NATIONAL ASSOCIATION, as Master Servicer

WELLS FARGO BANK,

By: /s/ Stacey Taylor
Name:  Stacey Taylor
Title:  Vice President

NATIONAL ASSOCIATION, as Securities Administrator

WELLS FARGO BANK,

By: /s/ Stacey Taylor
Name:  Stacey Taylor
Title:  Vice President

CORPORATION

President

EMC MORTGAGE

By:  /s/ Steven Massey
Name:   Steven Massey
Title:  Senior Vice

Accepted and Agreed as to
Sections 2.01, 2.02, 2.03, 2.04 and 9.09(c)
in its capacity as Sponsor

EMC MORTGAGE CORPORATION
By: /s/ Mark Novachek
Name:  Mark Novachek
Title: Assistant Secretary

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )

　　　　On the 30th day of April 2007, before me, a notary public in and for said
State, personally appeared Baron Silverstein,

**43**

known to me to be a Senior Managing Director of Structured Asset Mortgage
Investments II Inc., the limited liability company that
executed the within instrument, and also known to me to be the person who executed
it on behalf of said limited liability company,
and acknowledged to me that such limited liability company executed the within
instrument.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first
above written.

                                   /s/ **Ravind Karamsingh**
                                   Notary Public

[Notarial Seal]

STATE OF NEW YORK     )
                     ) ss.:
COUNTY OF NEW YORK   )

     On the 30th day of April 2007, before me, a notary public in and for said
State, personally appeared John Hannon, known to
me to be a Vice President of Citibank, N.A., the entity that executed the within
instrument, and also known to me to be the person
who executed it on behalf of said entity, and acknowledged to me that such entity
executed the within instrument.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first
above written.

                                     /s/ **Zenaida Santiago**
                                   Notary Public

[Notarial Seal]

STATE OF MARYLAND    )
                   ) ss.:
COUNTY OF HOWARD    )

     On the 30th day of April 2007, before me, a notary public in and for said
State, personally appeared Stacey M. Taylor, known
to me to be a Vice President of Wells Fargo Bank, National Association, the entity
that executed the within instrument, and also
known to me to be the person who executed it on behalf of said entity, and
acknowledged to me that such entity executed the within
instrument.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first
above written.

                                                           /s/ **Graham M. Oglesby**
                                                           Notary Public
[Notarial Seal]


STATE OF MARYLAND        )
                         )  ss.:
COUNTY OF HOWARD         )

        On the 30th day of April 2007, before me, a notary public in and for said
State, personally appeared Stacey M. Taylor, known
to me to be a Vice President of Wells Fargo Bank, National Association, the entity
that executed the within instrument, and also
known to me to be the person who executed it on behalf of said entity, and
acknowledged to me that such entity executed the within
instrument.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first
above written.

                                                           /s/ **Graham M. Oglesby**
                                                           Notary Public
[Notarial Seal]


DISTRICT OF COLUMBIA )
                     )  ss.:
CITY OF WASHINGTON   )

        On the 30th day of April 2007, before me, a notary public in and for said
State, personally appeared Ramon de Castro, known
to me to be a Senior Vice President of Federal National Mortgage Association, the
corporation that executed the within instrument,
and also known to me to be the person who executed it on behalf of said
corporation, and acknowledged to me that such corporation
executed the within instrument.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first
above written.

                                                           /s/ **Denise Jacobs**
                                                           Notary Public
[Notarial Seal]


45

STATE OF TEXAS      )
                    )  ss.:
COUNTY OF DALLAS    )

On the 30th day of April 2007, before me, a notary public in and for said State, personally appeared Mark Novachek, known to me to be an Assistant Secretary of EMC Mortgage Corporation, the corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                    /s/ Kay J. Ottinger
                                    Notary Public

[Notorial Seal]

---

STATE OF TEXAS      )
                    )  ss.:
COUNTY OF DALLAS    )

On the 30th day of April 2007, before me, a notary public in and for said State, personally appeared Steven Massey, known to me to be a Senior Vice President of EMC Mortgage Corporation, the corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                    /s/ Kay J. Ottinger
                                    Notary Public

[Notarial Seal]

# EXHIBIT 2

## Affidavit of Lynn Szymoniak
## in Support of Objection to Claim #5

**47**

Case 10-21656 Filed 01/26/11 Doc 146

JAN/21/2011/FRI 09:20 AM    The Cullen Law Firm.        FAX No. 561 214 4021         P. 001

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

Case No.: 10-bk-21656

In re:
RICKIE WALKER,

        Debtor.

_____/

## <u>AFFIDAVIT OF LYNN E. SZYMONIAK, ESQ.,</u>

## <u>AS DEBTOR'S EXPERT</u>

STATE OF FLORIDA

COUNTY OF PALM BEACH

LYNN E. SZYMONIAK, Esq., having been duly sworn, deposes and states that if sworn as a witness she can testify competently to the facts stated in this affidavit, based upon her personal knowledge:

1. I am an adult citizen of the United States, and have resided in Palm Beach County, Florida since 1979.

2. I am an attorney and was admitted to the Florida Bar in 1980. My business address is: The Szymoniak Firm, P.A., The Metropolitan, PH2-05, 403 S. Sapodilla Avenue, West Palm Beach, Florida 33401. Telephone: (561) 630-6928. I have practiced law in Palm Beach

**48**

County for 31 years. I am a graduate of Bryn Mawr College in Bryn Mawr, Pennsylvania, and Villanova Law School in Villanova, Pennsylvania.

3. For the past twenty years, my practice has primarily been in cases involving white-collar crime allegations, particularly, in representing major insurance companies in claims that they have been defrauded by large policyholders.

4. In the last ten years, I have also served as an expert witness in civil and criminal cases. In criminal cases, I have served as an expert witness for the United States of America and the State of California. I have testified at trial in four federal court cases including two in Jacksonville, Florida, where the allegations involved false and fabricated documents including fabricated insurance policies and certificates of insurance. The two Jacksonville cases were United States v. Thomas King, Case No. 3:05-cr-52-J-99MMH, Middle District of Florida, Jacksonville Division and United States v. Donald Touchet, et al., Case No. 3:2007cr00090, Middle District of Florida, Jacksonville Division. My designation as an expert and the use of my testimony were affirmed in an 11th Circuit opinion, United States v. Robert D. Jennings, Case No. 08-13434 (11th Cir. Jan. 5, 2010). I also submitted an expert opinion for the government in a New York Northern District federal case that ended in a guilty plea: United States v. James Kernan, Case No. 5:2008cr00061. I have also been designated an expert on insurance regulatory matters in Florida and testified at trial in April, 2010, in a federal criminal trial involving financial guaranty insurance, United States v. Michael Zapetis, et al., Case No. 8:2006cr00026, Middle District of Florida, Tampa Division. This case also resulted in a guilty verdict. On July 19, 2010, I testified in a criminal insurance fraud trial in Charleston, South Carolina, that also

2

**49**

JAN/21/2011/FRI 09:20 AM    The Cullen Law Firm,        FAX No. 561 214 4021            P. 003

ended in a guilty verdict, United States v. Robert Kohn, Case No. 2:2009cr01127. I have also worked as a consultant/expert for the South Carolina Department of Consumer Affairs and the South Carolina Department of Insurance. I also submitted an expert opinion in a California state case involving fraudulent insurance practices and documents that resulted in a guilty plea in March, 2010, the People of the State of California v. Mitchell Zogob, Orange County, California. I have testified as an expert in a foreclosure case in Harris County, Texas, and have submitted Affidavits in over 100 foreclosure cases.

5. I have written several articles on mortgage foreclosures and residential mortgage-backed securitized trusts, including the following: "An Officer of Too Many Banks," *Fraud Digest*, January 14, 2010; "Too Many Jobs," *Fraud Digest*, January 19, 2010; "Mortgage Assignments As Evidence of Fraud," *Fraud Digest*, February 9, 2010; "Inroads on Foreclosure Fraud by Mortgage Servicers" *Fraud Digest*, April 7, 2010; "Mass-Produced Affidavits Filed by Foreclosure Firms," *Fraud Digest,* April 13, 2010; "How Lender Processing Services, Inc. Solves Deutsche Bank's Missing Paperwork Problem in Foreclosures," *Fraud Digest*, April 16, 2010 and "The Real Employers of the Signers of Mortgage Assignments to Trusts," *Fraud Digest*, May 14, 2010.

6. I was formerly a Certified Fraud Examiner, and have had nine hours training by the National Association of Certified Fraud Examiners in identifying forged and fabricated documents, in a course taught by retired agents of the FBI.

7. I have examined over 5,000 Mortgage Assignments and I am familiar with such documents, and how they are properly prepared and signed. I have also examined over 500 Notes and endorsements, including Allonges, in foreclosure matters, and I am also familiar with

3

*50*

such documents and how they are properly prepared and executed. The vast majority of the Assignments and Allonges I have examined were in cases involving foreclosures by mortgage-backed securitized trusts.

8. I have examined a copy of a document titled both "Allonge" and "Assignment of Note" a copy of which is attached hereto as Exhibit A. This Allonge/Assignment purports to Assign the Note of Rickie Walker to "Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc. Bear Stearns Alt-A Trust Mortgage Pass-Through Certificates Series 2007-3." This document bears an illegible signature. Above the signature line is the phrase "Bayrock Mortgage Corporation, a Georgia Corporation." Next to the signature line is the word "BY." Beneath the signature line are the words "Bob Brown, Vice President Strategic Development."

9. This Allonge/Assignment is undated, and not witnessed or notarized.

10. This Allonge/Assignment appears to have been altered in that the "Assignment of Note" portion of the document appears to have been pasted or electronically transferred to a document entitled "Allonge" in that the Assignment portion is in a box underneath the document titled "Allonge."

11. The document includes three different fonts. The primary font for the document appears to have been standard typewriter font similar to Times New Roman. A different font was used for the words "Citibank, N.A., as Trustee." The title "Bob Brown, Vice President Strategic Development" appears in smaller letters than the rest of the document. Finally, the words "for the Certificateholders of Structured Assets Mortgage Investments, II, Inc. Bear Stearns Alt-A Trust

4

51

Mortgage Pass-Through Certificates Series 2007-3" are hand-written.

12. Next to the words "Seller Loan Number:" near the top of the document there is what appears to be the right side and bottom of a rectangular box with no words or other information.

13. Different font types and sizes, incomplete sections (such as the strange box next to the words "Seller Loan Number") and the two titles on the document are all indicators that this document was created or compiled from several different documents.

14. In all of the Notes and Allonges I have examined, I have never seen a document similar to the one presented herein, bearing two titles, with incomplete sections, and four (including the hand-written section) different fonts.

15. I am familiar with the mortgage securitization process and I have written several articles regarding mortgage securitization. I know that there is a widespread problem of missing documents in securitized trusts, including notes, assignments and mortgages. In the securitization process, the endorsed note and mortgage and assignment should have been transferred from the originator to the depositor to the sponsor/securities company and finally to the document custodian for the trust.     This procedure was recently discussed by Massachusetts Supreme Court Justice Ralph Gants as the required chain of assignments in a January 7, 2011, decision, No. SJC-10694, affirming the *Ibanez* decision discussed below. In many cases, trusts chose to endorse notes in blank so that they could be transferred to the next entity in the securitization line, relying on a blanket endorsement in the trust documents.

16. The failure of certain mortgage-backed securitized trusts to produce critical documents has been noted by several Courts, including

5

*52*

Massachusetts Land Court Judge Keith Long, reaffirming a 2009 ruling
(*Ibanez*) that invalidated foreclosures on two properties because the
lenders did not hold clear title to the properties at the time of the
foreclosure sale. See, *U.S. BANK, N.A. v. Antonio Ibanez, et al.,*
Commonwealth of Massachusetts, Land Court Dept., 08 MISC 384283
(KCL).

17. In thousands of mortgage-related documents from trusts that I
have examined, new "replacement" documents, including Notes and
Assignments have been prepared and presented to Courts without any
disclosure to the Court or to the Homeowner/Defendants that the
original documents were lost. Trustees use mortgage servicing
companies to provide the replacements for these missing documents.

18. I am familiar with the series of Structured Asset Mortgage
Investment ("SAMI") Bear Stearns Alt-A series of trusts. This series of
trusts, in my experience and opinion, is among trusts that frequently
cannot produce essential documents and relies instead upon
replacements created by mortgage servicing companies and law firms
retained by the trusts. I have examined at least 20 other mortgage
assignments presented in foreclosure cases by Trustees of these
"SAMI" trusts and in each case, the Trustees presented documents
created by mortgage servicing companies several years after the trust
closing dates.

19. Many courts have now recognized that documents produced by
mortgage servicing companies are unreliable when such documents
are signed *en masse* by robo-signers, clerical employees who sign
without any actual knowledge, expertise, training and often without
having even reading the documents they sign. These mass-produced
documents have caused courts in Maryland, New Jersey and New York
to implement rules to safeguard the Courts and litigants from

Case 10-21656 Filed 01/26/11 Doc 146

JAN/21/2011/FRI 09:21 AM The Cullen Law Firm. FAX No. 561 214 4021 P. 007

unreliable documents submitted in foreclosures. On January 19, 2011, Sheila Bair, the head of the FDIC, called for the establishment of a foreclosure claims commission "to provide remedies for borrowers harmed by past practices."

20. For all of the reasons set forth above, it is my opinion that the Allonge/Assignment in this case is fraudulent.


FURTHER AFFIANT SAYETH NOT.


*Lynn E. Szymoniak*

LYNN E. SZYMONIAK

COUNTY OF PALM BEACH

STATE OF FLORIDA

Sworn to and subscribed before me this $\frac{2}{31}$ day of January, 2011,

by Lynn E. Szymoniak, personally known to me.

ROBERT V. BROWNLEE
MY COMMISSION # DD 720610
EXPIRES: October 1, 2011
Bonded Thru Budget Notary Services

*Robert V. Brownlee*

ROBERT V. BROWNLEE
NOTARY PUBLIC, STATE OF FLORIDA

55

ALLONGE

---

## ASSIGNMENT OF NOTE

Seller Loan #:

Borrower(s):        RICKIE WALKER

Property Address:   3020 WHISPER OAKS DRIVE
                    ROCKLIN, CA 95765

Date of Note:       11/21/2006

Loan Amount:        2,076,250.00

Pay to the order of without recourse:  Citibank, N.A., as Trustee *for the Certificateholders of Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust Mortgage Pass-Through Certificates Series 2007-3*

                                       BayRock Mortgage Corporation.
                                       a Georgia Corporation

                                       By: _____
                                           Ben Brown, Vice President Strategic Development

---

*56*