FILED
February 17, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003291008

| | |
|---|---|
| 1 | STEVEN W. PITE (CA SBN 157537) |
| 2 | DAVID E. MCALLISTER (CA SBN 185831) |
|   | EDDIE R. JIMENEZ (CA SBN 231239) |
| 3 | PITE DUNCAN, LLP |
|   | 4375 Jutland Drive, Suite 200 |
| 4 | P.O. Box 17933 |
|   | San Diego, CA 92117-0933 |
| 5 | Telephone: (858) 750-7600 |
|   | Facsimile: (619) 590-1385 |

Attorneys for  CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-3

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 10-21656 |
| RICKIE WALKER, | Chapter 11 |
| Debtor. | D.C. No. MLA-006 |
| | **OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM NUMBER 5 THE AMENDED CLAIM OF CITIBANK, N.A. AS TRUSTEE** |
| | <u>Hearing:</u> |
| | Date: March 3, 2011 |
| | Time: 10:30 a.m. |
| | Crtm: Dept. E, Ctrm. 33 |
| | Judge: Hon. Ronald H. Sargis |

Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2007-3 ("Citibank") respectfully submits its Opposition to Debtor's Objection to Claim Number 5, The Amended Claim of Citibank, N.A. as Trustee ("Opposition"). Citibank's Opposition is supported by the points and authorities cited herein and the Request for Judicial Notice filed concurrently herewith.

/././

/././

/././

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS ............................................................................- 1 -

   A. SUBJECT LOAN HISTORY ..............................................................- 1 -

   B. MERS' INTEREST REGARDING THE SUBJECT LOAN ............- 2 -

   C. PROCEDURAL STATUS OF THE CASE .......................................- 3 -

II. STATEMENT OF LAW ...........................................................................- 5 -

III. DISCUSSION ............................................................................................- 5 -

   A. CITIBANK QUALIFIES AS THE NOTE HOLDER UNDER THE CALIFORNIA COMMERCIAL CODE AND, THUS, HAS STANDING TO ENFORE THE NOTE. ...................................................- 5 -

      *1. Citibank Qualifies as the Note Holder Under the California Commercial Code* ..............................................................................- 5 -

      *2. The Beneficial Interest in the Deed of Trust Necessarily Follows the Note* ...........................................................................- 7 -

   B. THE DEBTOR'S CLAIM THAT THE ALLONGE IS FRAUDULENT IS COMPLETELY LACKING IN EVIDENTIARY SUPPORT ...........- 8 -

      *1. The Debtor's Claim that the Allonge is Fraudulent is a Knowing Misrepresentation to the Court Based on the Debtor's Counsel's Review of the Original Note and Deed of Trust* ..............................- 8 -

      *2. The Allonge to the Note is not an Assignment of the Deed of Trust* ...............- 9 -

   C. THE DEBTOR IS NOT A PARTY TO THE PSA, AND, THEREFORE, LACKS STANDING TO CHALLENGE THE VALIDITY OF THE TERMS AND PROVISIONS OF THE PSA .................................................- 11 -

   D. NOTWITHSTANDING THE DEBTOR'S LACK OF STANDING TO CHALLENGE THE PSA, THE NOTE COMPLIES WITH THE SPECIFIC TERMS OF THE PSA .......................................................- 12 -

IV. CONCLUSION ........................................................................................- 12 -

# TABLE OF AUTHORITIES

Page

### CASES

California Standard Finance Corp. v. J.D. Millar Realty Co., 118 Cal.App. 185 (App. 1931) - 10 -

Carpenter v. Longan, 83 U.S. 271, 275 (1873) .................................................................. - 7 -

In re Allegheny Intern. Inc., 954 F.2d 167, 173 (3rd Cir. 1992) ........................................ - 5 -

In re Consolidated Pioneer Mortg., 178 B.R. 222 (9th Cir. BAP 1995) ............................ - 5 -

In re Holm, 931 F.2d 620, 623 ........................................................................................... - 5 -

In re Kang Jin Hwang, 396 B.R. 757 (Bkrtcy.C.D.Cal.2008) ........................................... - 10 -

In re Rally Partners, LP, 308 B.R. 165, 168-169 (Bankr. E.D. Tex. 2003) ..................... - 5 -

In re Weisband, 427 B.R. 13 (Bkrtcy.D.Ariz.2010) .......................................................... - 10 -

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................ - 11 -

United States v. Butner, 440 U.S. 48 (1979) ..................................................................... - 5 -

Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464 (1982) ........................................................................................................... - 11 -

### STATUTES

11 U.S.C. § 107 .................................................................................................................. - 9 -

Cal. Civ. Code § 2936 ........................................................................................................ - 7 -

Cal. Com. C. § 3201 ........................................................................................................... - 6 -

Cal. Com. C. § 3205(c) ...................................................................................................... - 10 -

CCC § 1201(21)(a) ............................................................................................................ - 6 -

CCC § 1206 ........................................................................................................................ - 8 -

CCC § 3301 ........................................................................................................... - 6 -, - 10 -

CCC § 3308 ........................................................................................................................ - 8 -

11 U.S.C. § 502(a) .............................................................................................................. - 5 -

## OTHER AUTHORITIES

3 Lawrence P. King, Collier on Bankruptcy § 502.02, at 502-22 (15th Ed. 1993). ....................- 5 -

Restatement (Third) of Property: Mortgages § 5.4 (1997) .......................................................- 7 -

## RULES

Fed. R. Bankr. P. 3001(f)..........................................................................................................- 5 -

Fed. R. Bankr. P. 9011 .............................................................................................................- 9 -

I. **STATEMENT OF FACTS**

A. **SUBJECT LOAN HISTORY**

On or about November 21, 2006, Debtor made, executed, and delivered to Bayrock Mortgage Corporation ("Bayrock Mortgage") a promissory note in the principal sum of $1,076,250.00 (the "Note"), the performance of which is secured by a Deed of Trust to Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for Bayrock Mortgage and its successors and assigns (the "Deed of Trust") encumbering the real property located at 3830 White Oaks Drive, Rocklin, CA, 95765. ("Subject Property"). (*See* Request for Judicial Notice ("Req. J. N."), **Exhibit A - -** the Declaration of Sandra Garcia-Harris as filed on September 24, 2010, as docket entry 97). The loan evidenced by the Note and Deed of Trust is referred to herein as the "Subject Loan."

Subsequently, Bayrock Mortgage and EMC entered into an agreement whereby EMC purchased various mortgage loans from BMC, including the Subject Loan.

In connection of the sale of the Note to EMC, Bayrock Mortgage indorsed the note in blank thereby converting the note into a bearer instrument and transferred possession of the Note to EMC. (*See* Req. J. N., **Exhibit A**).

On or about April 1, 2007, Structured Asset Mortgage Investment II Inc. ("SAMI"), as Depositor, Citibank, as Trustee, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, Federal National Mortgage Association, as Guarantor, and EMC, as Sponsor and Company, entered into a Pooling and Servicing Agreement ("PSA"), thereby creating the Trust.[1] (*See* Req. J. N., **Exhibit A**).

Subsequently, on or about April 30, 2007, EMC, Master Funding, LLC ("Master Funding"), and SAMI entered into a Mortgage Loan Purchase Agreement whereby EMC and Master Funding agreed to sell, and SAMI agreed to purchase, certain conventional, adjustable rate, first lien mortgage loans secured primarily by one to four-family residential properties (collectively, the "Mortgage Loans"), including the Subject Loan. (*See* Req. J. N., **Exhibit A**). /././

---

[1] The PSA can be found on the Securities and Exchange Commission's electronic database at: http://www.sec.gov/Archives/edgar/data/1393737/000106823807000668/exhibit_10-1.htm

- 1 -    CASE NO. 10-21656
**OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM**

Concurrently with the *execution and delivery* of the PSA, SAMI sold, transferred, and assigned to the Trust, without recourse, all its right, title and interest in and to the Mortgage Loans. In connection with this transfer, the blank indorsed Note was converted into a special indorsed Note by writing Citibank's name above the signature of the indorser, Bayrock Mortgage. (*See* Req. J. N., **Exhibit A**). Citibank's counsel is currently in possession of the specially indorsed Note.

Pursuant to the PSA and that certain Servicing Agreement, dated April 1, 2007, made by and between EMC and SAMI, EMC has the contractual right and responsibility to service certain Mortgage Loans, including the Subject Loan. (*See* Req. J. N., **Exhibit A**).

As the loan servicer, EMC acts as an agent for Citibank and is generally responsible for the administration of the Subject Loan until the loan is paid in full, assigned to another creditor, or the servicing rights are transferred. Administering the loan includes sending monthly payment statements, collecting monthly payments, maintaining records of payments and balances, collecting and paying taxes and insurance (and managing escrow and impound funds), remitting monies tendered under the Note to Citibank, following up on loan delinquencies, home loan workouts and home retention programs, and other general customer service functions. Further, in the event of a default under the terms of the Note or Deed of Trust, EMC is authorized by Citibank under the terms of the loan servicing agreement to enforce the terms of the Deed of Trust. (*See* Req. J. N., **Exhibit A**).

B.     **MERS' INTEREST REGARDING THE SUBJECT LOAN**

On the date the Note and Deed of Trust were signed, Bayrock Mortgage was a MERS member, and pursuant to the MERS' Rules of Membership, Rule 2, Section 5, Bayrock Mortgage appointed MERS to act as its agent to hold the Deed of Trust as nominee on Bayrock Mortgage's behalf. (*See* Req. J. N., **Exhibit B** - the Declaration of William C. Hultman as filed on September 24, 2010, as docket entry 98).

The MERS Governing Documents include the member's signed MERS Membership Application, the MERS Rules of Membership, the Terms and Conditions, and the MERS

Procedures Manual. Bayrock Mortgage remained a MERS member during the entire time that it was the holder of the Note. (*See* Req. J. N., **Exhibit B**).

The MERS Terms and Conditions provide that MERS "shall" serve as mortgagee of record with respect to each mortgage loan that the member registers on the MERS® System and provides that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes." (*See* Req. J. N., **Exhibit B**).

Bayrock Mortgage subsequently transferred the Note to EMC. As of the date the Note was transferred, EMC was a MERS member. Pursuant to the MERS' Rules of Membership, EMC appointed MERS to act as its agent to hold the Deed of Trust as nominee of EMC. EMC remained a MERS member during the entire time that it was the holder of the Note. (*See* Req. J. N., **Exhibit B).**

EMC subsequently transferred the Note to Citibank. As of the date the Note was transferred to Citibank, Citibank was a MERS member. Pursuant to the MERS' Rules of Membership, Citibank appointed MERS to act as its agent to hold the Deed of Trust as nominee of Citibank. Citibank remains a MERS member and has been during the entire time that it has been the holder of the Note. (*See* Req. J. N., **Exhibit B**).

On March 5, 2010, MERS executed an Assignment of Deed of Trust whereby MERS assigned all of its interest in the Deed of Trust to Citibank. (*See* Req. J. N., **Exhibit B).**

The assignment was executed by Lori Harp. Ms. Harp was appointed as an Assistant Secretary and Vice President of MERS and is an officer of EMC. It was decided by the note holder that an assignment from MERS to Citibank should be executed. (*See* Req. J. N., **Exhibit B).**

C.  **PROCEDURAL STATUS OF THE CASE**

On or about January 25, 2010, Debtor commenced this case by filing a petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of California. (*See* Req. J. N., **Exhibit C**).

On or about March 19, 2010, Pite Duncan, LLP filed a Request for Special Notice and Service of Papers and Reservation of Rights in the instant proceeding wherein Pite Duncan

requested special notice of all events relevant to and copies of all pleadings or documents filed in relation to, the Debtor's Chapter 11 bankruptcy case. (*See* Req. J. N., **Exhibit D**).

Concurrently with the filing of the Request for Special Notice, Citibank, by and through its duly authorized loan servicing agent, EMC Mortgage Corporation ("EMC"), timely filed its Proof of Claim in the total secured amount of $1,320,650.52 including pre-petition arrears in the amount of $262,851.93. (*See* Req. J. N., **Exhibit E**).

On or about April 6, 2010, Debtor filed his Objection to Citibank's Proof of Claim No. 5. wherein Debtor alleged that Citibank, N.A. failed to establish that it has standing to enforce the Note and Deed of Trust. (*See* Req. J. N., **Exhibit F**).

On May 20, 2010, the court conducted a hearing on the Debtor's Objection and, subsequently, on May 27, 2010, the court entered a Civil Minute Order whereby the court sustained the Debtor's Objection, without prejudice to "creditor" filing an amended claim on or before June 18, 2010. (*See* Req. J. N., **Exhibit G**).

On September 24, 2010, Citibank filed its Motion to Vacate Order Sustaining Objection to Claim of Citibank, N.A., Claim Number 5, or in the Alternative, for Reconsideration of Order Sustaining Objection to Claim of Citibank, N.A., Claim Number 5 ("Motion to Vacate/Reconsider"). (S*ee* Req. J. N., **Exhibit H**).

After hearing, the court entered its Civil Minute Order Granting in Part, Denying in Part on November 8, 2010, wherein it sustained Citibank's Motion to Vacate/Reconsider to the extent the court's Order Sustaining Objection granted the creditor leave to file an amended claim on or before June 18, 2010. The court further ordered that Citibank shall file an amended Proof of Claim or new Proof of Claim on or before December 31, 2010. (S*ee* Req. J. N., **Exhibit I**).

Pursuant to the court's Order Granting in Part, Denying in Part, on December 30, 2010, Citibank filed its Amended Proof of Claim. (S*ee* Req. J. N., **Exhibit J**).

On January 26, 2011, the Debtor filed the current Objection to Claim Number 5, and again, failed to properly serve Citibank with the Objection. (S*ee* Req. J. N., **Exhibit K**).

/./././

/././

## II. STATEMENT OF LAW

A properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The Proof of Claim, if filed in accordance with Section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and Section 502(a). (In re Consolidated Pioneer Mortg., 178 B.R. 222 (9th Cir. BAP 1995).

After an objection is raised, the objecting party bears the burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim. In re Allegheny Intern. Inc., 954 F.2d 167, 173 (3rd Cir. 1992). The objecting party then has the burden of presenting additional sufficient evidence to "defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." In re Rally Partners, LP, 308 B.R. 165, 168-169 (Bankr. E.D. Tex. 2003). If the objecting party produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets. Allegheny, 954 F.2d at 174; In re Holm, 931 F.2d 620, 623; 3 Lawrence P. King, Collier on Bankruptcy § 502.02, at 502-22 (15th Ed. 1993).

## III. DISCUSSION

**A. CITIBANK QUALIFIES AS THE NOTE HOLDER UNDER THE CALIFORNIA COMMERCIAL CODE AND, THUS, HAS STANDING TO ENFORE THE NOTE.**

Pursuant to the Debtor's Objection, the Debtor alleges that Citibank's claim should be disallowed on the grounds that Citibank has failed to establish it has standing to enforce the Note and Deed of Trust. However, Debtor does not otherwise dispute any of the amounts due under the Proof of Claim. For the reasons detailed more fully below, Citibank has standing to enforce the terms of the Note and Deed of Trust.

   *1.  Citibank Qualifies as the Note Holder Under the California Commercial Code*

In bankruptcy proceedings, state substantive law controls the rights of note and lienholders. See United States v. Butner, 440 U.S. 48 (1979). Accordingly, in order to determine

- 5 -
CASE NO. 10-21656
**OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM**

whether Citibank has standing to enforce the Note in this case, the court must look to the California Commercial Code, which is the substantive state statutory law governing negotiable instruments.

Cal. Com. C. § 3301 provides in pertinent part:

> [The] [p]erson entitled to enforce an instrument means (a) *the holder of the instrument*, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. (emphasis added).

Cal. Com. C. § 1201(21)(a) defines "Holder" as the "person in possession of a negotiable instrument that is payable either *to bearer* or, to an identified person that is the person in possession..." (emphasis added). The payee of an instrument may negotiate it by indorsing it and delivering it to another person, who then becomes its holder. (See Cal. Com. C. § 3201). Cal. Com. C. § 3201 provides in pertinent part:

> (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.
>
> (b) Except for negotiation by a remitter, *if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder*. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone. (emphasis added).

In order to negotiate the Note, the holder is required to: (1) transfer possession of the Note; and (2) indorse the Note to the transferee or in blank.

In this case, Bayrock Mortgage as the holder of Note, and in connection with the sale of the Note to EMC, indorsed the Note in blank thereby converting the note into a bearer instrument and transferred possession of the Note to EMC. Subsequently, SAMI, as Depositor, Citibank, as Trustee, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, Federal National Mortgage Association, as Guarantor, and EMC, as Sponsor and Company, entered into a PSA thereby creating the Trust. Concurrently with the execution and delivery of the PSA, SAMI sold, transferred, and assigned to the Trust, without recourse, all its right, title and interest in and to the Mortgage Loans. During the creation of the trust, EMC remained the holder of the Note endorsed in blank and thus had the ability to transfer physical

<700>

possession of the note to Citibank. In connection with this transfer, the blank indorsed Note was converted into a special indorsed Note by writing Citibank's name above the signature of the indorser, Bayrock Mortgage. Based on the foregoing, as the Note is specially indorsed to Citibank and Citibank is the holder of the Note, it has standing to enforce the terms of the Note, including, the filing of the Amended Proof of Claim in this case.

### 2. The Beneficial Interest in the Deed of Trust Necessarily Follows the Note

It is well established that the transfer of a note secured by a deed of trust carries with it the security, without any formal assignment or delivery, or even mention of the latter. <u>Carpenter v. Longan</u>, 83 U.S. 271, 275 (1873). In fact, California codified this principle in Cal. Civ. Code § 2936, which provides that "[t]he assignment of a debt secured by a mortgage carries with it the security." It follows that "a mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation that the mortgage secures." Restatement (Third) of Property (Mortgages) § 5.4 (citing <u>Carpenter v. Longan</u>). Indeed, a recorded assignment of mortgage is not legally required to enforce the obligations of a note and mortgage. Restatement (Third) of Property: Mortgages § 5.4 (1997) specifically states:

 (a) A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise;

 (b) Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise;

 (c) A mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation the mortgage secures.

In this case, the Note is the obligation that is secured by the Deed of Trust. Pursuant to Supreme Court precedent and California law, any transfer of the Note necessarily carries with it the security, without the need for any formal assignment. As previously discussed, Citibank qualifies as the Note holder with standing to enforce the Note. It necessarily follows that Citibank is the party entitled to enforce the Deed of Trust, regardless of whether there was a valid assignment of the Deed of Trust. Further, Citibank is currently in possession of the original

1 | Deed of Trust and has provided the same to the Debtor's counsel for analysis.

2 | **B.    THE DEBTOR'S CLAIM THAT THE ALLONGE IS FRAUDULENT IS COMPLETELY LACKING IN EVIDENTIARY SUPPORT**

*1.    The Debtor's Claim that the Allonge is Fraudulent is a Knowing Misrepresentation to the Court Based on the Debtor's Counsel's Review of the Original Note and Deed of Trust*

For the first time, the Debtor now claims that the allonge to the Note "carries strong indicia of fraud".  In an attempt to create evidence to substantiate the Debtor's baseless claim, the Debtor includes an Affidavit of Lynn Szymoniak and attempts to challenge the validity of the allonge to the Note and the indorsement on the allonge to the Note.  As provided below, the Debtor's allegations are intentional misrepresentations to the court and completely without merit.

Subsequent to the Debtor's execution of the Note, the Note was specially indorsed to Citibank, an identified party, which is currently in rightful possession of the Note. CCC § 3308 provides in pertinent part:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is **presumed** to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. (emphasis added).

The term "presumed" is defined in CCC § 1206, which provides that whenever a fact is "presumed" under the statute, the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence. Thus, the indorsement on the Note is presumed to be valid unless and until the Debtor overcomes the presumption by putting on evidence that supports a finding that the indorsement was somehow forged or unauthorized.

In this case, Citibank is currently in possession of the original Note and provided the same to the court and Debtor's counsel for examination at the hearing on Citiabank's Motion to Vacate/Reconsider.  At the hearing, Debtor's counsel was provided with the original Note, including the now claimed "superimposed" allonge.  Upon examining the Note, the Debtor's

counsel confirmed the authenticity of the Debtor's signature on the Note. Further, up reviewing the original Note and allonge, the Debtor's counsel certainly would have been able to identify if the allonge to the note was a "muti-generational copy…on another document…". (See Objection at Pg. 2, lines 25-28). The disingenuous argument by the Debtor after his counsel personally reviewed the original documents, is a least a libelous accusation with any scintilla of evidentiary support, and at worst, a knowingly fraudulent misrepresentation to the court. Also, as Citibank is possession of the original Note, Lynn Szymoniak's examination of the allonge must be based on review of a copy of the allonge which included a redaction of the loan number when filed in accordance with 11 U.S.C. § 107. If the Debtor's expert had reviewed the original Note, it would be clear to her that the "rectangular box with no words or other information" is the redacted loan number. Had the Debtor's expert reviewed the original Note, she would have also been able to determine, just as the Debtor's counsel did when he analyzed the Note, the allonge is only one page and not two "superimposed" documents.

Further, The Debtor's allegation that there is "no evidence that the deed of Trust has been transferred to Citibank" is another example of a blatant misrepresentation to the court as the Debtor's counsel is completely aware that Citibank is in possession of the original Deed of Trust and Debtor's counsel examined the same at the hearing on the Motion to Vacate/Reconsider. Based on the aforementioned misrepresentation to the court, Citibank's counsel will provide the Debtor and his counsel with "safer harbor" notice pursuant to Federal Bankruptcy Rule 9011 as a precursor to a potential Motion for Sanctions for filing this Objection for an improper purpose to harass Citibank and cause unnecessary delay.

   *2.*     ***The Allonge to the Note is not an Assignment of the Deed of Trust***

The Debtor confusingly uses the phrase "Assignment of Note" synonymously with Assignment of Deed of Trust and attempts to categorize the allonge affixed to the original Note as an Assignment of Deed of Trust. The allonge attached to the Note is not an Assignment of Deed of Trust, rather, the allonge is part of the negotiable instrument (the Note) on which the indorsement is written that when firmly attached to the Note becomes part of the negotiable instrument.    Cal. Com. C. § 3204(a); *See also* In re Weisband, 427 B.R. 13

1  (Bkrtcy.D.Ariz.2010).  Pursuant to California law, the fundamental feature of negotiable
2  instruments is that they are transferred by delivery of possession, not by contract or assignment.
3  In re Kang Jin Hwang, 396 B.R. 757 (Bkrtcy.C.D.Cal.2008).  Assignment of negotiable
4  instruments technically differs from negotiation by indorsement, since assignment may transfer
5  the negotiable instrument subject to equities, while negotiation by indorsement is not presumed
6  to be so restricted.  California Standard Finance Corp. v. J.D. Millar Realty Co., 118 Cal.App.
7  185 (App. 1931).  Once receiving holder status, a holder of note may also convert a blank
8  indorsement that consists only of a signature into a special indorsement by writing, above the
9  signature of the indorser, words identifying the person to whom the instrument is made payable.
10 Cal. Com. C. § 3205(c).

11     In this case, the Debtor either does not understand the difference between an assignment
12 and an allonge or is intentionally attempting to mislead and/or confuse the court with "red
13 herring" arguments that have no legal affect on Citibank's right to enforce the terms of the Note
14 as the holder of the Note.  First, when Bob Brown was employed by Bayrock Mortgage and
15 whether he knew about the PSA is completely irrelevant.  Bayrock Mortgage as the holder of
16 Note, and in connection with the sale of the Note, indorsed the Note in blank thereby converting
17 the Note into a bearer instrument and thereafter transferred possession of the Note.  Once
18 obtaining holder status and in accordance with California law, Citibank chose to convert the
19 blank indorsement into a special indorsement by writing above the signature of the indorser, and
20 identifying the entity to whom the instrument is made payable (Citibank).  The Debtor's claim
21 that Bob Brown was the person who converted the blank indorsement into a special indorsement
22 assumes facts not in evidence and is in line with his continued efforts to escape liability for his
23 obligations on the Note.  As the allonge is currently affixed to the original Note and the Debtor
24 has failed to rebut the presumption of the validity of the indorsements, the Debtor's Objection
25 should be overruled entirely.
26 /././
27 /././
28 /././

**C. THE DEBTOR IS NOT A PARTY TO THE PSA, AND, THEREFORE, LACKS STANDING TO CHALLENGE THE VALIDITY OF THE TERMS AND PROVISIONS OF THE PSA**

The Debtor himself acknowledges the parties to the PSA (Bayrock Mortgage, EMC, SAMII, and Citibank). Also, other than claiming that the "assignment of Note directly from the Originator – Bayrock-to the Trutee – Citibank [violates the] PSA and IRS Codes", the Debtor does not claim to be a party to the transactions leading up to the formation of the PSA. Accordingly, any issues regarding the validity of the inclusion of the subject loan in the securitized trust would be between the parties privy to the contractual relationship resulting in the PSA. For the Debtor to be able seek redress of any violations of the PSA, the Debtor would have to show that he is either a party to the contractual obligation (which he is not) or that he otherwise has standing to challenge the terms of the PSA. As stated by the Debtor, Constitutional standing, at a minimum, requires that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. <u>Valley Forge Christian Coll. V. Am. United for Separation of Church and State</u>, 454 U.S. 464 (1982); See also, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992).

Here, the Debtor claims that the Note does not contain an unbroken chain of indorsements from the Originator all the way to the Trustee before the alleged cut-off date of April 30, 2007. The Debtor further claims that the Note was not qualified as a replacement mortgage and therefore the Note is not properly included in the securitized trust. Assuming arguendo that the Note is not part of the trust, nowhere in Debtor's Objection does the Debtor state how he is, or will be, harmed by the Note being included or excluded from the PSA. The Debtor does not include any argument the he does not know to whom to pay his monthly mortgage payments or that another entity is claiming to be the owner of the Note. The Debtor also does not claim that he has made any mortgage payments that have been returned or improperly applied to his loan or that whether his loan is securitized or not has any affect on him whatsoever. Instead, the Debtor again raises the "red herring" argument regarding the terms of the PSA and IRS code in further attempt to escape liability for the repayment of the loan and

exploit the bankruptcy system as way to avoid his contractual obligations. As the Debtor is not a party to the PSA and has also failed to meet his burden that he has standing to challenge the PSA, the Debtor's Objection must be overruled.

D. **NOTWITHSTANDING THE DEBTOR'S LACK OF STANDING TO CHALLENGE THE PSA, THE NOTE COMPLIES WITH THE SPECIFIC TERMS OF THE PSA**

In handpicking the provisions of the PSA and in an obvious attempt to mislead the court, the Debtor does not provide the court with the entire provisions of the PSA as they are applicable to the subject loan. Specifically, the Debtor claims that the PSA provides that "on or before the closing date[,] the Trustee had to receive the original Note with its full chain of indorsements. (See Objection at Pg. 8, lines 16-18). In reality, the applicable terms of Section 2.01. Conveyance of Mortgage Loans to Trustee – Section 2.01(b)(i) provides as follows:

> (b) In connection with the above transfer and assignment, the Sponsor hereby deposits with the Trustee or the related Custodian, on behalf of the Trustee, with respect to each Mortgage Loan:
>
> (i) the original Mortgage Note, endorsed without recourse (A) to the order of the Trustee **or** (b) in the case of a Mortgage Loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or lost note affidavit together with a copy of the related Mortgage Note. (emphasis added).

In this case, the Note is specially indorsed without recourse to the Order of the Trustee, Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2007-3. Further, Citibank has previously provided the Debtor and the court with proof that the subject loan is in fact part of the securitized trust. (*See* Req. J. N., **Exhibit A**). Based on the foregoing, the Debtor's Objection should be overruled.

IV. **CONCLUSION**

The Debtor's Objection must be overruled in its entirety. First, the Debtor fails to allege sufficient factual and legal grounds to establish that Citibank lacks standing to pursue its interest as to the Subject Property and/or file a Proof of Claim in this case. Conversely, Citibank has

1 proven that it is the holder of the specially indorsed Note and provided the Debtor and the court with access to the original Note at which time the Debtor's counsel was able to substantiate the authenticity of the Note, including the allonge, and the special indorsements on the Note. Second, as the Debtor's counsel has personally inspected the Note, the Debtor's claim that the allonge is fraudulent is a knowing misrepresentation to the court that subjects the Debtor and his counsel to discipline pursuant to Federal Bankruptcy Rule 9011.  Third, the Debtor has failed to establish that he has standing to challenge the term of the provisions of the applicable PSA or that the subject loan is not included in the PSA.

**WHEREFORE**, Citibank respectfully prays:

1. The court deny and overrule the Debtor's Objection to Claim Number 5, The Amended Claim of Citibank, N.A. as Trustee;

2. The court enter an Order allowing Citibank's entire claim pursuant to its Proof of Claim as filed on December 30, 2010;

3. For reasonable attorneys' fees and costs; and

4. For such other relief as the court deems just and proper under law and equity.

PITE DUNCAN, LLP

Dated: February 17, 2011            By: /s/ *Eddie R. Jimenez*
                                    EDDIE R. JIMENEZ
                                    Attorneys for CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-3