**FILED**

**February 17, 2011**

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003291062

STEVEN W. PITE (CA SBN 157537)
DAVID E. MCALLISTER (CA SBN 185831)
EDDIE R. JIMENEZ (CA SBN 231239)
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for   CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF
STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR
STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2007-3

### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>  RICKIE WALKER,<br><br>Debtor. | Case No.  10-21656<br><br>Chapter  11 |
| CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-3<br><br>Movant,<br><br>vs.<br><br>RICKIE WALKER,<br><br>Respondent. | D.C. No. PD-1<br><br>**MOTION TO VACATE ORDER SUSTAINING OBJECTION TO CLAIM OF CITIBANK, N.A., CLAIM NUMBER 5, OR, IN THE ALTERNATIVE, FOR RECONSIDERATION OF ORDER SUSTAINING OBJECTION TO CLAIM OF CITIBANK, N.A., CLAIM NUMBER 5**<br><br>[*Fed. R. Bankr. P. 9024 and 3008; 11 U.S.C. §§ 105 and 502(j)*]<br><br>**Hearing:**<br>Date:<br>Time:<br>Crtm:<br>Judge: Hon. Ronald H. Sargis |

Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2007-3 ("Citibank") respectfully submits this Motion to Vacate Order Sustaining Objection to Claim of Citibank, N.A., Claim Number 5, or, in the alternative, for Reconsideration of Order

Sustaining Objection to Claim of Citibank, N.A., Claim Number 5 ("Motion to Vacate") pursuant to Fed. R. Bankr. P. 9024 and 3008 and 11 U.S.C. §§ 105 and 502(j). Citibank's Motion to Vacate is supported by the points and authorities cited herein, the Declaration of Sandra Garcia-Harris, the Declaration of William C. Hultman, the Declaration of Eddie R. Jimenez, and the Request for Judicial Notice filed concurrently herewith.

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ - 9 -

II.  STATEMENT OF FACTS ........................................................................ - 9 -

    A. SUBJECT LOAN HISTORY ............................................................... - 9 -

    B. MERS' INTEREST REGARDING THE SUBJECT LOAN ........................ - 11 -

    C. PROCEDURAL STATUS OF THE CASE ........................................ - 13 -

III. - 15 - DISCUSSION ........................................................................... - 15 -

    A. THE ORDER SUSTAINING OBJECTION TO CLAIM OF CITIBANK, N.A., CLAIM NUMBER 5 MUST BE VACATED PURSUANT TO FED. R. CIV. P. 60 .............................................................................................. - 15 -

       1. Legal Standard. ......................................................................... - 15 -

       2. Citibank's Motion to Vacate is Timely And Has Been Filed Within a Reasonable Period of Time ....................................................... - 16 -

       3. The Order Sustaining Objection is Void Due to the Debtor's Improper Service of the Objection to Claim .................................. - 17 -

          a. *The Exception Prescribed by Rule 7004(h)(1) is Not Applicable in this Case.* ................................................................................ - 19 -

          b. *The Exception Prescribed by Rule 7004(h)(3) is Not Applicable in this Case* ................................................................................ - 20 -

       4. The Order Sustaining Objection Should be Vacated Due to Citibank's Excusable Neglect ..................................................... - 21 -

          a. *Citibank Acted in Good Faith and Its Conduct Was Not Culpable* ...... - 21 -

       5. Citibank Has a Meritorious Defense to the Debtor's Objection ................. - 23 -

          a. *Citibank Qualifies as the Note Holder Under the California Commercial Code and, Thus, Has Standing to Enforce the Note* ............................. - 23 -

          b. *The Beneficial Interest in the Deed of Trust Necessarily Follows the Note* .. ................................................................................ - 25 -

          c. *MERS Is Validly Named as Beneficiary in the Deed of Trust Signed by the Debtor* ....................................................................... - 26 -

d.  *MERS Does Not Purport to Own the Note, But Rather Serves as an*.... - 30 -
*Agent for the Owner of the Note and Acts as the Beneficiary Of the Deed of*
.. *Trust in Accordance With Its Contract with the Lender and Agreement with*
*the Debtor* ................................................................................................... - 30 -

6.  **Debtor Will Not Be Prejudiced if the Order Sustaining Objection is
Vacated** ........................................................................................... - 33 -

B.  **IF THE COURT REFUSES TO VACATE THE ORDER SUSTAINING
OBJECTION, IT SHOULD RECONSIDER THE DISALLOWANCE OF
CITIBANK'S CLAIM PURSUANT TO 11 U.S.C. § 502(j)** ............................ - 33 -

1.  **Legal Standard.** ............................................................................ - 33 -

2.  **The Equities of this Case Support the Reconsideration of Citibank's
Disallowed Claim** ........................................................................... - 35 -

a.  *Reconsidering the Disallowance of Citibank's Claim will not Prejudice the
Debtor or other Creditors* .................................................................... - 36 -

b.  *Citibank's Delay in Filing its Motion to Vacate will Not Have a Negative
Impact of Efficient Court Administration* ............................................... - 37 -

c.  *Citibank Acted Promptly in Filing its Motion to Vacate and Any Delay
Was Minimal* ......................................................................................... - 38 -

d.  *Citibank Acted in Good Faith and Its Conduct Was Not Culpable* ....... - 38 -

e.  *Citibank Has a Meritorious Defense to the Debtor's Objection* ........... - 39 -

IV.  **CONCLUSION** ....................................................................................... - 39 -

**TABLE OF AUTHORITIES**

**Cases**

Beloit Liquidating Trust v. Beloit Walmsley Limited (In re Harnischfeger Industries, Inc.), 288 B.R. 79 (Bankr. Delaware 2003) ................................................................................- 18 -

Benham v. Aurora Loan Services, 2009 WL 2880232, 3 (N.D. Cal. 2009)...........................- 25 -

Boughner v. Secretary of Health, Education, and Welfare, 572 F.2d 976, 977 (3d Cir. 1978)- 15 -

Boykin v. Marriott Int'l, Inc., 246 B.R. 825, 828 (Bankr. D. Va. 2000)..................................- 19 -

Breedlove v. Pineo (In re J & L Structural), 313 B.R. 382, 388 (W.D. Pa. 2004) ..................- 16 -

Briones v. Riviera, 116 F.3d 379 (9th Cir. 1997) ......................................................- 20 -, - 37 -

Carpenter v. Longan, 83 U.S. 271, 275 (1873)........................................................................- 24 -

Caruso v. Drake Motor Lines, Inc., 78 F.R.D. 586, 588 (E.D.Pa. 1978)................................- 34 -

Castaneda v. Aurora Mortgage Services, Inc., 687 F.Supp.2d 1191, 1198 (E.D. Cal. 2009)...- 25 -

Ciardi v. Lending Company, Inc., 2010 WL 2079735 (D. Az. 2010) .....................................- 30 -

Civic Ctr. Square v. Ford (In re Roxford Foods), 12 F.3d 875 (9th Cir. 1993)......................- 15 -

Commonwealth Property Advocates, LLC v. MERS, CitiMortgage, et al.,  (Case No. 100400594, 4th Jud. Dist., August 4, 2010) ........................................................................................- 28 -

Derakhsham v. Mortgage Electronic Registration System, Inc., et al., 8:08-cv-01185, (C.D. Cal., 2009), aff'd 2009 CA Lexis 63176 (2009) .........................................................................- 25 -

Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004) ....................................................................................................................................- 21 -

Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d. Cir. 1985).........................- 16 -

Gregory Taylor, Appellant v. Deutsche Bank National Trust Company, Appellee, 5th District Court of Appeal, Case No. 5D09-4035 (July 2010) .............................................................- 28 -

Hamlett v. Amsouth Bank (In re Hamlett), 322 F.3d 342, 346 (4th Cir. 2003) ......................- 17 -

Hassenflu v. Pyke, 491 F.2d 1094 (5th Cir. 1974) .................................................................- 34 -

Hassenflu, 491 F.2d at 1094 ....................................................................................................- 34 -

HSBC v. MacPherson, et al, N.Y. Supreme Court, Suffolk County, 08-29742 ......................- 27 -

I.L.G.W.U. National Ret. Fund v. Meredith Grey, Inc., 986 F. Supp. 816, 819 (S.D.N.Y. 1997)... ....................................................................................................................................- 16 -

In re Allegheny Intern. Inc., 954 F.2d 167, 173 (3rd Cir. 1992) ...............................- 22 -

In re Association of Volleyball Professionals, 256 B.R. 313 (Bankr. C.D.Cal 2000)..............- 17 -

In re Boykin, 246 B.R. 825 (E.D. VA 2000) ................................................................- 16 -

In re Cassell, 206 B.R. 853, 857 (Bankr. W.D. Va. 1997) .........................................- 15 -

In re Century Elec. Mfg., Inc., 284 B.R. 11 (Bankr. D. Mass. 2002)..........................- 20 -

In re Consolidated Pioneer Mortg., 178 B.R. 222 (9th Cir. BAP 1995).....................- 22 -

In re Eglenna F. Cassell, 206 B.R. 853, 856 (Bankr. W.D. Va. 1997) .......................- 33 -

In re Enron Inc., 326 B.R. 46, 49 (Bankr. S.D.N.Y. 2005).........................................- 15 -

In re Hammer, 940 F.2d 524, 525 (9th Cir. 1991)......................................................- 15 -

In re Holm, 931 F.2d 620, 623 (9th Cir. 1991)...........................................................- 22 -

In re JWP Information Services, Inc., 231 B.R. 209 (Bankr. S.D.N.Y. 1999) .........- 34 -

In re Levoy, 182 B.R. 827 (B.A.P. 9th Cir. 1995).......................................................- 16 -

In re Lomas Financial Corporation, 212 B.R. 46 (Bankr. DE 1997)...........................- 16 -

In re Magourik, 693 F.2d 948 (9th Cir. 1982) ...........................................................- 34 -

In re Motor Freight Express, 91 B.R. at 710-11 ........................................................- 33 -

In re Pride Companies, L.P., 285 B.R. 366 (Bankr. N.D. Tex. 2002) .......................- 33 -

In re Reisman, 139 B.R. 797, 800-01 (Bankr. S.D.N.Y. 1992) ..................................- 20 -

In re Resources Reclamation Corp. of America, 34 B.R. 771 (9th Cir. BAP1983) .......- 34 -,- 35 -

In re Sina, No. A06- 200, 2006 WL 2729544, at  2 (Minn. App., Sept. 26, 2006) ..................- 31 -

In re Tucker, 10-61004 ..............................................................................................- 26 -

Jackson v. Mortgage Electronic Registration Systems, Inc., 770 N.W.2d 487 (Minn. 2009)..- 28 -

Johnson v. Mortg. Elec. Reg. Sys., Inc., 252 Fed.Appx. 293 (11th Cir. 2007) ......................- 31 -

Ka Hwa Shipping Co., S.A. v. China Steel Corp., 816 F. Supp. 910, 913 (S.D.N.Y. 1993)....- 16 -

Kachlon v. Markowitz, 168 Cal.App.4th 316, 334-35 (2008)................................- 25 -

Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999)...........- 21 -

Klapprott v. United States, 335 U.S. 601, 614-615 (1949).....................................- 14 -

Mansour v. Cal- Western Recon. Corp., 2009 U.S. Dist. LEXIS 64113, at 12 (D. Ariz. July 15,
    2009) ....................................................................................- 31 -

Medunic v. Lederer, 533 F.2d 891, 894 (3d Cir. 1976).........................................- 34 -

Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241 B.R. 451 (9th Cir. B.A.P.
    1999) ....................................................................................- 15 -

Pfannenstiel v. Mortg. Elec. Reg. Sys., Inc., No. CIV S-08-2609, 2009 WL 347716 (E.D. Cal.
    Feb. 11, 2009) ...........................................................................- 25 -

Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al., 507 U.S.
    380, 394 (1993) .......................................................... - 20 -, - 34 -, - 37 -

Ramirez v. SCME Mortg. Bankers, Inc., 2010 WL 2839476, 3 (S.D. Cal., 2010) .................- 25 -

Taylor v. Lake (In re Cada Invs., Inc.), 664 F.2d 1158 (9th Cir. 1981) ....................- 15 -

TGI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) ...................- 21 -

Trent v. Mortg. Elec. Regis. Sys., Inc., 2007 WL 2120262 (M.D. Fla. July 20, 2007)...........- 31 -

Ultrasonics, Inc. v. Eisberg, 269 B.R. 856, 861-62 (Bankr. D. Idaho 2001)..................- 18 -

United States v. Butner, 440 U.S. 48 (1979) ...............................................- 22 -

United States v. Motor Freight Express (In re Motor Freight Express, 91 B.R. 705, 710 (Bankr.
    E.D. Pa. 1988)...........................................................................- 33 -

United States v. One Toshiba Color Television, 213 F.3d 147, 156 (3d. Cir. 2000)...............- 16 -

US Bank, N.A. v. Flynn, 2010 N.Y. Slip Op. 20093, 897 N.Y.S.2d 855 (Sup. Ct. 2010).......- 27 -

Wilson v. Moore and Assocs., Inc., 564, F.2d 366, 368 (9th Cir, 1977)......................- 15 -

**Statutes**

11 U.S.C. § 502(j) ...................................................... - 32 -, - 34 -

Cal. Civ. Code § 2936....................................................- 24 -

Cal. Com. Code § 3201....................................................- 23 -

Cal. Com. Code § 1201(21)(a) ........................................................................... - 23 -

Cal. Com. Code § 3301 ....................................................................................... - 23 -

11 U.S.C. § 501 .................................................................................................... - 22 -

11 U.S.C. § 502(a) ............................................................................................... - 22 -

**Other Authorities**

139 Cong. Rec. S707-10 (daily ed. Jan. 26, 1993) ............................................. - 17 -

140 Cong. Rec. S4576-77 (daily ed. April 20, 1994) ......................................... - 17 -

3 Lawrence P. King, Collier on Bankruptcy § 502.02, at 502-22 (15th Ed. 1993) ................. - 22 -

9 Collier on Bankruptcy ¶ 2002.02[2] (15th ed. 2008) ....................................... - 20 -

Restatement (Third) of Property: Mortgages § 5.4 (1997) .................................. - 24 -

**Rules**

Fed. R. Bankr. P. 3008 ........................................................................... - 32 -, - 35 -

Fed. R. Bankr. P. 9023 ......................................................................................... - 33 -

Fed. R. Bankr. P. 7004 ......................................................................................... - 36 -

Fed. R. Bankr. P. 7004(h) ........................................................ - 17 -, - 18 -, - 19 -

Fed. R. Bankr. P. 9014 ......................................................................................... - 16 -

Fed. R. Bankr. P. 9024 ............................................................................. - 14 -, - 33 -

Fed. R. Civ. 60(b) ..................................................................................... - 20 -, - 33 -

Fed. R. Civ. P. 55 .................................................................................................. - 20 -

Fed. R. Civ. P. 60 ...................................................................................... - 14 -, - 33 -

Fed. R. Civ. P. 60(b)(1) ............................................................................ - 20 -, - 37 -

Fed. R. Civ. P. 60(b)(4) ....................................................................................... - 16 -

Fed. R. Civ. P. 60(c)(1) ....................................................................................... - 15 -

Fed.R.Civ.P. 59 .................................................................................................... - 33 -

Fed. R. Bankr. P. 3001(f) ..................................................................................... - 22 -

# I.

## INTRODUCTION

Citibank hereby requests that the court vacate its Order Sustaining Objection to Claim of Citibank, N.A., Claim Number 5 ("Order Sustaining Objection"). First, the Order Sustaining Objection must be vacated as a result of the above-captioned Debtor, Rickie Walker's ("Debtor") failure to properly serve his Objection to Claim of Citibank, N.A, as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2007-3 By EMC Mortgage Corporation as Attorney in Fact ("Objection") in compliance with Federal Rule of Bankruptcy Procedure 7004. Second, the Order Sustaining Objection should be vacated on the grounds that Citibank's failure to respond to the Objection was excusable neglect. Specifically, Citibank's conduct falls within the Ninth Circuit's definition of "excusable neglect" as it was not in any way culpable. Finally, Citibank is entitled to enforce the applicable note and deed of trust and, thus, has a meritorious defense to the Debtor's Objection that justifies vacating the Order Sustaining Objection.

In the alternative, Citibank requests that this court reconsider its Order Sustaining Objection. Pursuant to Ninth Circuit precedent, the same grounds discussed herein for vacating the Order Sustaining Objection also support the reconsideration of the Order Sustaining the Objection. Specifically, the Order Sustaining Objection should be reconsidered on the grounds that: (1) Citibank and/or its counsel's conduct amounted to excusable neglect; (2) neither the Debtor nor creditors of the Debtor's bankruptcy estate will be prejudiced if the court reconsiders its Order Sustaining Objection; and (3) Citibank has a meritorious defense to the Debtor's Objection.

# II.

## STATEMENT OF FACTS

### A.    SUBJECT LOAN HISTORY

On or about November 21, 2006, Debtor made, executed, and delivered to Bayrock Mortgage Corporation ("Bayrock Mortgage") a promissory note in the principal sum of $1,076,250.00 (the "Note"), the performance of which is secured by a Deed of Trust to Mortgage

Electronic Registration Systems, Inc. ("MERS"), as the nominee for Bayrock Mortgage and its successors and assigns (the "Deed of Trust") encumbering the real property located at 3830 White Oaks Drive, Rocklin, CA, 95765. ("Subject Property").  (Declaration of Sandra Garcia-Harris **Exhibits A and B**).  The loan evidenced by the Note and Deed of Trust is referred to herein as the "Subject Loan."

Subsequently, Bayrock Mortgage and EMC entered into an agreement whereby EMC purchased various mortgage loans from BMC, including the Subject Loan.

In connection of the sale of the Note to EMC, Bayrock Mortgage indorsed the note in blank thereby converting the note into a bearer instrument and transferred possession of the Note to EMC.  (See Declaration of Sandra Garcia-Harris, **Exhibit A**).

On or about April 1, 2007, Structured Asset Mortgage Investment II Inc. ("SAMI"), as Depositor, Citibank, as Trustee, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, Federal National Mortgage Association, as Guarantor, and EMC, as Sponsor and Company, entered into a Pooling and Servicing Agreement ("PSA"), thereby creating the Trust.1.  (See Declaration of Sandra Garcia-Harris).

Subsequently, on or about April 30, 2007, EMC, Master Funding, LLC ("Master Funding"), and SAMI entered into a Mortgage Loan Purchase Agreement whereby EMC and Master Funding agreed to sell, and SAMI agreed to purchase, certain conventional, adjustable rate, first lien mortgage loans secured primarily by one to four-family residential properties (collectively, the "Mortgage Loans"), including the Subject Loan.  (See Declaration of Sandra Garcia-Harris).[2]

Concurrently with the ***execution and delivery*** of the PSA, SAMI sold, transferred, and assigned to the Trust, without recourse, all its right, title and interest in and to the Mortgage Loans.  In connection with this transfer, the blank indorsed Note was converted into a special indorsed Note by writing Citibank's name above the signature of the indorser, Bayrock

---

[1] The PSA can be found on the Securities and Exchange Commission's electronic database at: http://www.sec.gov/Archives/edgar/data/1393737/000106823807000668/exhibit_10-1.htm

[2] Given the voluminous nature of the Mortgage Loan Schedule, Citibank has included only relevant excerpts regarding the Subject Loan.  The full Mortgage Loan Schedule will be made available at the hearing on this motion.

Mortgage. (<u>See</u> **Exhibit A**).  Citibank is currently entitled to possession of the specially indorsed Note.  (<u>See</u> Declaration of Sandra Garcia-Harris)

Pursuant to the PSA and that certain Servicing Agreement, dated April 1, 2007, made by and between EMC and SAMI, EMC has the contractual right and responsibility to service certain Mortgage Loans, including the Subject Loan. (<u>See</u> Declaration of Sandra Garcia-Harris).

As the loan servicer, EMC acts as an agent for Citibank and is generally responsible for the administration of the Subject Loan until the loan is paid in full, assigned to another creditor, or the servicing rights are transferred. Administering the loan includes sending monthly payment statements, collecting monthly payments, maintaining records of payments and balances, collecting and paying taxes and insurance (and managing escrow and impound funds), remitting monies tendered under the Note to Citibank, following up on loan delinquencies,  home loan workouts and home retention programs, and other general customer service functions. Further, in the event of a default under the terms of the Note or Deed of Trust, EMC is authorized by Citibank under the terms of the loan servicing agreement to enforce the terms of the Deed of Trust.  (<u>See</u> Declaration of Sandra Garcia-Harris).

**B.    MERS' INTEREST REGARDING THE SUBJECT LOAN**

On the date the Note and Deed of Trust were signed, Bayrock Mortgage was a MERS member, and pursuant to the MERS' Rules of Membership, Rule 2, Section 5, Bayrock Mortgage appointed MERS to act as its agent to hold the Deed of Trust as nominee on Bayrock Mortgage's behalf..  (<u>See</u> Declaration of William C. Hultman **Exhibit A**).

The MERS Governing Documents include the member's signed MERS Membership Application, the MERS Rules of Membership, the Terms and Conditions, and the MERS Procedures Manual.  Bayrock Mortgage remained a MERS member during the entire time that it was the holder of the Note.  (<u>See</u> Declaration of William C. Hultman **Exhibit B**).

The MERS Terms and Conditions provide that MERS "shall" serve as mortgagee of record with respect to each mortgage loan that the member registers on the MERS® System and provides that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes."  (<u>See</u> Declaration of William C. Hultman **Exhibit C**).

Paragraph E of the subject Deed of Trust provides:

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tele. (888) 679-MERS.

The Deed of Trust further states that:

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY
[Type of Recording Jurisdiction]

of  PLACER                                                                                        :
[Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT A

which currently has the address of  3830 WHITNEY OAKS DRIVE
[Street]

ROCKLIN                      , California  95765                        ("Property Address"):
[City]                                                            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lenders's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

/././

/././

- 12 -

Bayrock Mortgage subsequently transferred the Note to EMC.  As of the date the Note was transferred, EMC was a MERS member.  Pursuant to the MERS' Rules of Membership, EMC appointed MERS to act as its agent to hold the Deed of Trust as nominee of EMC.  EMC remained a MERS member during the entire time that it was the holder of the Note. (See Declaration of William C. Hultman **Exhibit D**).

EMC subsequently transferred the Note to Citibank.  As of the date the Note was transferred to Citibank, Citibank was a MERS member.  Pursuant to the MERS' Rules of Membership, Citibank appointed MERS to act as its agent to hold the Deed of Trust as nominee of Citibank.  Citibank remains a MERS member and has been during the entire time that it has been the holder of the Note. (See Declaration of William C. Hultman **Exhibit E**).

On March 5, 2010, MERS executed an Assignment of Deed of Trust whereby MERS assigned all of its interest in the Deed of Trust to Citibank.  (See Declaration of William C. Hultman **Exhibit F**).

The assignment was executed by Lori Harp.  Ms. Harp was appointed as an Assistant Secretary and Vice President of MERS and is an officer of EMC. It was decided by the note holder that an assignment from MERS to Citibank should be executed. (See Declaration of William C. Hultman **Exhibit G**).

**C.    PROCEDURAL STATUS OF THE CASE**

On or about January 25, 2010, Debtor commenced this case by filing a petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of California. (Req. J. N., **Exhibit A**).

On or about March 19, 2010, Pite Duncan, LLP filed a Request for Special Notice and Service of Papers and Reservation of Rights in the instant proceeding wherein Pite Duncan requested special notice of all events relevant to and copies of all pleadings or documents filed in relation to, the Debtor's Chapter 11 bankruptcy case. (Req. J. N., **Exhibit B**).

Concurrently with the filing of the Request for Special Notice, Citibank, by and through its duly authorized loan servicing agent, EMC Mortgage Corporation ("EMC"), timely filed its Proof of Claim in the total secured amount of $1,320,650.52 including pre-petition arrears in the

amount of $262,851.93. The Proof of Claim indicates that <u>notices</u> should be sent to the following address: 4375 Jutland Drive, Ste. 200, P.O. Box 17933, San Diego, CA 92177-0933 and that payments should be sent to EMC Mortgage Corporation, OH4-7119 3415 Vision Drive Columbus, OH 43219. (Req. J. N., **Exhibit C**).

Citibank's Proof of Claim Breakdown Sheet includes the following footnote:

> "This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004." (<u>See</u> Req. J. N., **Exhibit C**).

On or about April 4, 2010, Debtor filed his Objection to Citibank's Proof of Claim No. 5. wherein Debtor alleges that Citibank, N.A. failed to establish that it has standing to enforce the Note and Deed of Trust. (Req. J. N., **Exhibit D**).

Pursuant to the Certificate of Mailing filed concurrently with the Debtor's Objection, the Debtor served the Objection as follows:

- Office of the United States Trustee, 401 I Street, Ste 7-500, Sacramento, CA 95814
- Anne W. Hamann, Pite Duncan, LLP, P.O. Box 17933, San Diego, CA 92177
- Emc [sic] Mortgage, P.O. Box 141358, Irving, TX 75014

(Req. J. N., **Exhibit E**).

On May 20, 2010, the court conducted a hearing on the Debtor's Objection and, subsequently, on May 27, 2010, the court entered a Civil Minute Order whereby the court sustained the Debtor's Objection, without prejudice to "creditor" filing an amended claim on or before June 18, 2010. The court further ordered that the disallowance of the claim does not alter, amend, modify or affect the trust deed referenced in the proof of claim or the rights of whoever is ultimately recognized or determined to be the owner of the note and the creditor having a secured claim. (Req. J. N., **Exhibit F**).

Pursuant to the court's docket, the Debtor never served the court's Civil Minute Order on Pite Duncan, Citibank or EMC. (See Req. J. N., **Exhibit A**).

On or about May 21, 2010, Debtor filed an Objection to BAC Home Loans Servicing, L.P.'s Claim No. 9 (the "BAC Objection").  Concurrently therewith, Debtor filed a Certificate of Mailing of the BAC Objection.  (Req. J. N., **Exhibit G**).

On or about June 28, 2010, the Debtor filed an Amended Status Report.  (Req. J. N., **Exhibit H**).

On July 8, 2010, the court entered a Civil Minute Order whereby the court sustained the unopposed BAC Objection. (Req. J. N., **Exhibit I**).

### III.

### DISCUSSION

**A.    THE ORDER SUSTAINING OBJECTION TO CLAIM OF CITIBANK, N.A., CLAIM NUMBER 5 MUST BE VACATED PURSUANT TO FED. R. CIV. P. 60**

**1.    Legal Standard.**

Fed. R. Civ. P. 60, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, provides in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) ***mistake, inadvertence, surprise, or excusable neglect***;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) ***the judgment is void***;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) ***any other reason that justifies relief***. (emphasis added).

Rule 60 gives courts the authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 614-615 (1949).

/ / /

1   "The general purpose of Rule 60, which provides for relief from judgments for various

2   reasons, is to strike a proper balance between the conflicting principles that litigation must be

3   brought to an end and that justice must be done." Boughner v. Secretary of Health, Education,

4   and Welfare, 572 F.2d 976, 977 (3d Cir. 1978).  The Ninth Circuit has stated:

5

6       The standard of review for the denial of a 60(b) motion is for an abuse of
        discretion.  In re Hammer, 940 F.2d 524, 525 (9th Cir. 1991).  The discretion of

7       the court is limited by three policy considerations.  First, because of the remedial
        nature of Rule 60(b), it must be liberally applied.  Second, because default

8       judgments are disfavored, cases should be decided on their merits if possible.
        Thirdly, so long as relief is timely sought, and there is a meritorious defense, any

9       doubt should be resolved in favor of setting aside the default judgment.  Wilson v.
        Moore and Assocs., Inc., 564, F.2d 366, 368 (9th Cir, 1977).

10

11  Civic Ctr. Square v. Ford (In re Roxford Foods), 12 F.3d 875 (9th Cir. 1993).

12

13      **2.      Citibank's Motion to Vacate is Timely And Has Been Filed Within a
                Reasonable Period of Time**

14      Fed. R. Civ. P. 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within

15  a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the

16  judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  The Ninth Circuit

17  has stated that "[a] reasonable time is before irrevocable acts have occurred.  It is before other

18  persons can be injured by the [movant's] inaction.  A reasonable time is time by which [the

19  court] can still undo that which was done." Taylor v. Lake (In re Cada Invs., Inc.), 664 F.2d

20  1158 (9th Cir. 1981); see also Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241

21  B.R. 451 (9th Cir. B.A.P. 1999); see also, In re Cassell, 206 B.R. 853, 857 (Bankr. W.D. Va.

22  1997) (the creditor's seven-month delay between learning of claim's disallowance and filing

23  motion for reconsideration was found justifiable);  In re Enron Inc., 326 B.R. 46, 49 (Bankr.

24  S.D.N.Y. 2005) (the creditor's six month delay from the disallowance of the claim until the filing

25  of the motion for reconsideration was found justifiable).

26      In this case, Citibank's instant motion is timely as the Order Sustaining Objection was

27  entered on or about May 27, 2010, less than four (4) months from the date of this motion.

28  Moreover, as of the date of this motion, the Debtor has yet to file a Disclosure Statement,

Chapter 11 Plan, or otherwise proceed beyond the infancy of his Chapter 11 case.  Based upon the timing of this motion and taking into account the procedural status of this case, Citibank's Motion to Vacate is timely under Rule 60.

### 3. The Order Sustaining Objection is Void Due to the Debtor's Improper Service of the Objection to Claim

Fed. R. Civ. P. 60(b)(4) provides that orders that are void may be vacated.  Fed. R. Civ. P. 60(b)(4).  "Unlike motions pursuant to other subsections of 60(b), the Court has no discretion regarding motions to vacate void judgments under Rule 60(b)(4)."  I.L.G.W.U. National Ret. Fund v. Meredith Grey, Inc., 986 F. Supp. 816, 819 (S.D.N.Y. 1997), quoting Ka Hwa Shipping Co., S.A. v.China Steel Corp., 816 F. Supp. 910, 913 (S.D.N.Y. 1993).  Indeed, a void order *must* be vacated pursuant to Rule 60(b)(4).  "The failure or inadequacy of notice raises due process issues and may render a judgment void."  Breedlove v. Pineo (In re J & L Structural), 313 B.R. 382, 388 (W.D. Pa. 2004), citing United States v. One Toshiba Color Television, 213 F.3d 147, 156 (3d. Cir. 2000); see also Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d. Cir. 1985).

Fed. R. Bankr. P. 9014 provides that any motion in a contested matter "shall be served in the manner provided for service of a summons and complaint by Rule 7004."  Fed. R. Bankr. P. 9014(b). A debtor's objection to a creditor's proof of claim is a contested matter for purposes of Fed. R. Bankr. P. 9014 and, thus, must be served in accordance with Fed. R. Bankr. P. 7004. See e.g., In re Lomas Financial Corporation, 212 B.R. 46 (Bankr. DE 1997); see also  In re Levoy, 182 B.R. 827 (B.A.P. 9th Cir. 1995); In re Boykin, 246 B.R. 825 (E.D. VA 2000) (a claim objection must be served pursuant to Rule 7004; notice of the objection under rule 2002 is not sufficient); In re Lomas Financial Corporation, 212 B.R. 46 (Bankr. DE 1997) (claim objection is a contested matter; service is governed by 7004).

In this case, Debtor's Objection initiated a contested matter governed by Fed. R. Bankr. P. 9014. Consequently, Debtor was required to serve the Objection in compliance with Fed. R. Bankr. P. 7004, which provides in pertinent part:

[s]ervice on an **insured depository institution** (as defined in section 3 of the Federal Deposit Insurance Act)[3] **in a contested matter or adversary proceeding** shall be made by **certified mail addressed to an officer** of the institution unless—

(1) The institution has appeared by its attorney, in which case the attorney shall be served by first class mail;

(2) The court orders otherwise after service upon the institution by certified mail of notice of an application to permit service on the institution by first class mail sent to an officer of the institution designated by the institution[4]; or

(3) The institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service. Fed. R. Bankr. P. 7004(h). (emphasis added).

The strict service requirements of Rule 7004(h) are designed to ensure appropriate safeguards are in place for depository institutions. See Hamlett v. Amsouth Bank (In re Hamlett), 322 F.3d 342, 346 (4th Cir. 2003), citing 139 Cong. Rec. S707-10 (daily ed. Jan. 26, 1993) and 140 Cong. Rec. S4576-77 (daily ed. April 20, 1994).   The Hamlett court held that service on the creditor-defendant's registered agent did not constitute proper service under Rule 7004(h), stating "nothing in the Rule itself or its history suggests that Congress intended the term 'officer' in Rule 7004(h) to include 'registered agent.'" Hamlett, 322 F.3d at 346.  As the court noted in In re Association of Volleyball Professionals, 256 B.R. 313 (Bankr. C.D.Cal 2000),

It is not just any agent who qualifies as a recipient of service on behalf of a corporation.  Rule 7004(b)(3) specified that the agent must be a managing or general agent or an agent specifically designated for such purpose by appointment or by law. [citations omitted]  There is an important reason for limiting the scope of individuals who qualify as recipients of service of process on behalf of corporations.  An individual who receives service of process on behalf of a corporation must be someone, who, by inclination and training or statutory duty, will assure that the papers are passed on to a responsible authority in the corporation who has the responsibility to cause the corporation to respond appropriately; [t]he rationale of all rules for service of process on corporations is that service must be made on a representative so integrated with the corporation sued as to make it a priority supposable that he will realize his responsibilities and

---

[3] Section 3 of the Federal Deposit Insurance Act defines "insured depository institution" as "any bank or savings association the deposits of which are insured by the [Federal Deposit Insurance Corporation] pursuant to [the Federal Deposit Insurance Act]."  Citibank, having been an insured depository institution since 1981, falls within the definition of an "insured depository institution" and thus must be served pursuant to Fed. R. Bankr. P. 7004(h). (Req. J. N., **Exhibit J**).

[4] This Court has not entered an order authorizing the Debtor to serve Citibank by first class mail sent to an officer of Citibank. Accordingly, the exception prescribed by Rule 7004(h)(2) is inapplicable in this case.

know what he should do with any legal papers served on him.

Id at 317; See also, Ultrasonics, Inc. v. Eisberg, 269 B.R. 856, 861-62 (Bankr. D. Idaho 2001) (the special and "comparatively lenient" procedure in which service of process made by mail requires strict compliance in order to protect due process rights).

In the present case, the Debtor failed to serve the Objection and/or any related notices or pleadings on Citibank, via certified mail addressed to a named officer or by any other means. Instead, on or about April 4, 2010, notwithstanding the footnote in Citibank's Proof of Claim specifically reserving its right to receive service pursuant to Fed. R. Bankr. P. 7004, the Debtor served the Objection on Pite Duncan via U.S. Mail at a post office box, not the complete address listed on the Proof of Claim and/or the Request for Special Notice.  (See Req. J. N., **Exhibit E**). Although Debtor also served the Objection on EMC, Debtor served EMC at a P.O. Box, not the address listed for EMC on the Proof of Claim. (See Req. J. N., **Exhibit D**).  Accordingly, even assuming arguendo that Citibank waived its right to service pursuant to Rule 7004, Debtor altogether failed to serve the Objection pursuant to the addresses specified in either the Proof of Claim or the Request for Special Notice. As a result of the Debtor's improper service of the Objection, the Order Sustaining Objection is void and must be vacated.

> **a.  *The Exception Prescribed by Rule 7004(h)(1) is Not Applicable in this Case.***

Rule 7004(h)(1) prescribes an exception to the service requirements of Rule 7004(h) in instances where an institution has appeared by its attorney. However, this exception is inapplicable in the present case as Pite Duncan did not enter an appearance for purposes of Rule 7004(h). Specifically, Pite Duncan's filing of a Request for Special Notice and Proof of Claim in the Debtor's Chapter 11 bankruptcy case did not constitute an appearance for purposes of Rule 7004(h).  Court's have recognized that participation by a creditor's attorney in a bankruptcy case is not by itself sufficient to confer implied authority to accept service of a summons and complaint on that creditor's behalf. See e.g., Beloit Liquidating Trust v. Beloit Walmsley Limited (In re Harnischfeger Industries, Inc.), 288 B.R. 79 (Bankr. Delaware 2003). Likewise, participation by a creditor's attorney is not by itself sufficient to confer implied authority to accept service of pleadings in contested matters under Rule 9014.

1    In *Beloit*, the plaintiff-debtor attempted to serve a summons and complaint on the

2 creditor's attorney under Rule 7004(h)(1).  The creditor's counsel's involvement in the debtor's

3 bankruptcy case included: (1) entering an appearance; (2) attending three separate hearings; (3)

4 submitting three different motions; (4) entering into a stipulation and order; (5) filing an

5 administrative claim; and (6) objecting to confirmation of the debtor's reorganization plan, all

6 prior to commencement of the adversary complaint.  The court found the creditor's attorney's

7 level of participation did not constitute the level of "extensive participation" by an attorney

8 contemplated by the exception in Rule 7004(h)(1).

9    Pite Duncan's level of involvement was even less significant than the creditor's attorney

10 in the *Beloit* case.  More specifically, Pite Duncan's participation in the Debtor's bankruptcy

11 case regarding the Subject Loan included merely filing a Request for Special Notice and a Proof

12 of Claim. Pite Duncan requested ***notice*** of all pleadings in the Debtor's case and its address is

13 listed for ***notice*** purposes on Citibank's Proof of Claim. However, notice in bankruptcy

14 proceedings is different from authorization to accept service of process. <u>See</u> e.g., <u>Boykin v.</u>

15 <u>Marriott Int'l, Inc.</u>, 246 B.R. 825, 828 (Bankr. D. Va. 2000). Indeed, although Citibank

16 authorized Pite Duncan to monitor the Debtor's bankruptcy proceeding and receive notices in

17 connection with its Proof of Claim, it did not appoint Pite Duncan as its agent for purposes of

18 service of process, either expressly or impliedly.   Instead, as set forth more fully in the

19 aforementioned footnote on its Proof of Claim, Citibank explicitly reserved its right to receive

20 service pursuant to Fed. R. Bankr. P. 7004. (<u>See</u> Req. J. N., **Exhibit J**). Accordingly, Pite

21 Duncan was clearly unauthorized, either expressly or impliedly through its participation in this

22 proceeding, to act as Citibank's agent for purposes of service under Fed. R. Bankr. P. 7004.

23 Based upon the foregoing, the "attorney exception" prescribed by Rule 7004(h)(1) is

24 inapplicable in this case.

25        **b.  *The Exception Prescribed by Rule 7004(h)(3) is Not Applicable in this Case***

26    Rule 7004(h) provides for an additional exception where an institution has waived in

27 writing its entitlement to service via certified mail by designating an officer to receive service.

28 <u>See</u> Fed. R. Bankr. P. 7004(h)(3).  However, in this case, Citibank did not waive its right to

receive service pursuant to Rule 7004(h). To the contrary, Citibank expressly reserved its right to receive service pursuant to Rule 7004. (See Req. J. N., **Exhibit J**). Moreover, Pite Duncan's filing of the Request for Special Notice did not amount to an implied waiver of Citibank's rights under Rule 7004(h) as the filing of such a request has been recognized as being insufficient by itself to entitle a party to serve documents under Rule 7004 upon the attorney filing the notice. See 9 Collier on Bankruptcy ¶ 2002.02[2] (15th ed. 2008); see also In re Century Elec. Mfg., Inc., 284 B.R. 11 (Bankr. D. Mass. 2002); In re Reisman, 139 B.R. 797, 800-01 (Bankr. S.D.N.Y. 1992). Accordingly, the exception prescribed by Rule 7004(h)(3) is inapplicable in this case. Based upon the foregoing, the Order Sustaining Objection must be vacated on the grounds that the order is void due to the Debtor's failure to comply with the service requirements of Rule 7004(h).

### 4. The Order Sustaining Objection Should be Vacated Due to Citibank's Excusable Neglect

An order may be vacated on grounds of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). "Excusable neglect" is not defined by the Federal Rules, but is understood to encompass situations where the filing deadline was missed due to something within the control of the moving party. Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al., 507 U.S. 380, 394 (1993); see also Briones v. Riviera, 116 F.3d 379 (9th Cir. 1997). To determine the existence of excusable neglect, courts balance **all** relevant circumstances, including but not limited to: (1) whether the movant acted in good faith, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) the danger of prejudice to the debtor. Briones v. Riviera, 116 F.3d 379, 381 (9th Cir. 1997).

#### a. *Citibank Acted in Good Faith and Its Conduct Was Not Culpable*

The Ninth Circuit uses the same standard used to determine "good cause" in the context of setting aside entry of a default judgment under Fed. R. Civ. P. 55 to determine "excusable neglect" to vacate an order under Fed. R. Civ. 60(b). "A showing of lack of culpability sufficient to meet the Rule 55(c) 'good cause' standard for setting aside a default is ordinarily sufficient to

1   demonstrate as well the 'excusable neglect' or 'mistake' criteria under Rule 60(b)(1) to set aside

2   a judgment.  TGI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001).  See also

3   Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir.

4   2004).  If a party's conduct was not "culpable," then its failure to respond is ordinarily

5   "excusable," and in the interests of substantial justice the better course may well be to vacate the

6   judgment and decide the case on the merits.  TGI Group Life Ins. Plan, supra.  Conduct is

7   "culpable" if there is no explanation of the default inconsistent with a devious, deliberate,

8   willful, or bad faith failure to respond.  TGI Group Life Ins. Plan, supra citing Kingvision Pay-

9   Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999). As a general rule, Rule

10  60(b) is remedial in nature and must be liberally applied.  TGI Group Life Ins. Plan, supra.

11          In the present case, Citibank's failure to respond to the Debtor's Objection amounts to

12  excusable neglect for purposes of Rule 60.  Specifically, Citibank's actions in failing to respond

13  to the Debtor's Objection were not devious, deliberate, willful, or in bad faith.  Rather, Citibank

14  failed to respond to the Debtor's Objection because it was never made aware of the Objection as

15  a result of the Debtor's improper service of the Objection. Moreover, although Citibank's

16  counsel received notice of the Objection, due to an inadvertent calendaring error by the attorney

17  assigned to this case, Citibank's counsel did not timely file a response to the Debtor's Objection.

18  While Citibank and its counsel regrets this mistake, the mistake was certainly not devious,

19  deliberate, willful, or in bad faith. Finally, subsequent to Citibank's undersigned counsel

20  discovering the entry of the Order Sustaining Objection, it has taken remedial measures to

21  mitigate the mistake by, among other things, contacting the Debtor's counsel on at least eight (8)

22  separate occasions in an attempt to resolve the Debtor's concerns regarding the "actual owner" of

23  the Note without further court intervention.  However, as of the date of this motion, the parties

24  have been unable to reach a resolution regarding the Order Sustaining Objection.  Accordingly,

25  Citibank now moves the court to vacate and/or to reconsider the Order Sustaining Objection so

26  that issue regarding the owner of the Note may be resolved at the early stage of the Debtor's

27  Chapter 11 case and prior to the Debtor filing his Chapter 11 Plan. Since Citibank's failure to

28  respond to the Debtor's Objection was not "culpable," and was, instead, based on an act of

1    mistake and inadvertence, the Order Sustaining Objection should be vacated.

2        **5.    Citibank Has a Meritorious Defense to the Debtor's Objection**

3        As discussed more fully below, Citibank has a meritorious defense to the Debtor's

4    Objection that justifies vacating the Order Sustaining Objection. A Proof of Claim, if filed in

5    accordance with Section 501 of the Bankruptcy Code and the pertinent Federal Rules of

6    Bankruptcy Procedure, constitutes prima facie evidence of the validity and amount of the claim

7    pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and Section 502(a).    In re

8    Consolidated Pioneer Mortg., 178 B.R. 222 (9th Cir. BAP 1995).

9        After an objection is raised, the objecting party bears the burden of going forward to

10   produce evidence sufficient to negate the prima facie validity of the filed claim.  In re Allegheny

11   Intern. Inc., 954 F.2d 167, 173 (3rd Cir. 1992).   If the objecting party produces evidence

12   sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the

13   claimant to demonstrate by a preponderance of the evidence that the claim deserves to share in

14   the distribution of the debtor's assets.  Allegheny, 954 F.2d at 174; In re Holm, 931 F.2d 620,

15   623 (9th Cir. 1991); 3 Lawrence P. King, Collier on Bankruptcy § 502.02, at 502-22 (15th Ed.

16   1993).

17       Pursuant to the Debtor's Objection, the Debtor alleges that Citibank's claim should be

18   disallowed on the grounds that Citibank has failed to establish it has standing to enforce the Note

19   and Deed of Trust. However, Debtor does not otherwise dispute any of the amounts due under

20   the Proof of Claim.  For the reasons detailed more fully below, Citibank has standing to enforce

21   the terms of the Note and Deed of Trust.

22       **a.    *Citibank Qualifies as the Note Holder Under the California Commercial
23        Code and, Thus, Has Standing to Enforce the Note***

24       In bankruptcy proceedings, state substantive law controls the rights of note and

25   lienholders. See United States v. Butner, 440 U.S. 48 (1979). Accordingly, in order to determine

26   whether Citibank has standing to enforce the Note in this case, the court must look to the

27   California Commercial Code, which is the substantive state statutory law governing negotiable

28   instruments.

Cal. Com. C. § 3301 provides in pertinent part:

> [The] [p]erson entitled to enforce an instrument means (a) ***the holder of the instrument***, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. (emphasis added).

Cal. Com. C. § 1201(21)(a) defines "Holder" as the "person in possession of a negotiable instrument that is payable either ***to bearer*** or, to an identified person that is the person in possession..." (emphasis added). The payee of an instrument may negotiate it by indorsing it and delivering it to another person, who then becomes its holder. (See Cal. Com. C. § 3201). Cal. Com. C. § 3201 provides in pertinent part:

> (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

> (b) Except for negotiation by a remitter, ***if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder***. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone. (emphasis added).

In order to negotiate the Note, the holder is required to: (1) transfer possession of the Note; and (2) indorse the Note to the transferee or in blank. Once receiving holder status, a holder of note may also convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable. See Cal. Com. C. § 3205(c).

In this case, Bayrock Mortgage as the holder of note, and in connection with the sale of the Note to EMC, indorsed the note in blank thereby converting the note into a bearer instrument and transferred possession of the Note to EMC. Subsequently, SAMI, as Depositor, Citibank, as Trustee, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, Federal National Mortgage Association, as Guarantor, and EMC, as Sponsor and Company, entered into a PSA thereby creating the Trust. Concurrently with the execution and delivery of the PSA, SAMI sold, transferred, and assigned to the Trust, without recourse, all its

right, title and interest in and to the Mortgage Loans. During the creation of the trust, EMC remained the holder of the note endorsed in blank and thus had the ability to transfer physical possession of the note to Citibank. In connection with this transfer, the blank indorsed Note was converted into a special indorsed Note by writing Citibank's name above the signature of the indorser, Bayrock Mortgage. As Citibank is entitled to possession of the specially indorsed Note, it qualifies as the Note holder with standing to enforce the Note under California law.

### b.    *The Beneficial Interest in the Deed of Trust Necessarily Follows the Note*

It is well established that the transfer of a note secured by a deed of trust carries with it the security, without any formal assignment or delivery, or even mention of the latter. Carpenter v. Longan, 83 U.S. 271, 275 (1873). In fact, California codified this principle in Cal. Civ. Code § 2936, which provides that "[t]he assignment of a debt secured by a mortgage carries with it the security." It follows that "a mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation that the mortgage secures." Restatement (Third) of Property (Mortgages) § 5.4 (citing Carpenter v. Longan). Indeed, a recorded assignment of mortgage is not legally required to enforce the obligations of a note and mortgage. Restatement (Third) of Property: Mortgages § 5.4 (1997) specifically states:

> (a)    A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise;

> (b)    Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise;

> (c)    A mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation the mortgage secures.

In this case, the Note is the obligation that is secured by the Deed of Trust. Pursuant to Supreme Court precedent and California law, any transfer of the Note necessarily carries with it the security, without the need for any formal assignment. As previously discussed, Citibank qualifies as the Note holder with standing to enforce the Note. It necessarily follows that Citibank is the party entitled to enforce the Deed of Trust, regardless of whether there was a

valid assignment of the Deed of Trust.  As discussed further below, the MERS Membership agreement entered into by the parties show the parties' intention that MERS is to be the beneficiary as nominee for the note owner.  Furthermore, numerous courts in California and across the country have held that MERS may act as the beneficiary on the Deed of Trust on behalf of the lender and may assign its interest in the Deed of Trust.   Consistent with MERS role as agent for Citibank, an assignment from MERS to Citibank was recorded in the Placer County Recorder's Office wherein Citibank is reflected as the record beneficiary under the Deed of Trust. (See Declaration of Serey Tap, **Exhibit C**). Based upon the foregoing, Citibank has standing to enforce the Note and Deed of Trust and, therefore, the Order Sustaining Objection should be vacated.

### c.      *MERS Is Validly Named as Beneficiary in the Deed of Trust Signed by the Debtor*

It is well settled law in California that MERS is the valid legal beneficiary of a deed of trust and may act as a nominee for the lender when the deed of trust explicitly states that the borrower understands and agrees that MERS holds only legal title and has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the property.   See Derakhsham v. Mortgage Electronic Registration System, Inc., et al., 8:08-cv-01185, (C.D. Cal., 2009), aff'd 2009 CA Lexis 63176 (2009) (As the plaintiff explicitly authorized MERS to act as beneficiary with the right to foreclose on the property, the court held that MERS, as the named beneficiary, was entitled to foreclose on the real property); See, e.g., Kachlon v. Markowitz, 168 Cal.App.4th 316, 334-35 (2008); Castaneda v. Aurora Mortgage Services, Inc., 687 F.Supp.2d 1191, 1198 (E.D. Cal. 2009); Benham v. Aurora Loan Services, 2009 WL 2880232, 3 (N.D. Cal. 2009); Ramirez v. SCME Mortg. Bankers, Inc., 2010 WL 2839476, 3 (S.D. Cal., 2010).  See also Pfannenstiel v. Mortg. Elec. Reg. Sys., Inc., No. CIV S-08-2609, 2009 WL 347716 (E.D. Cal. Feb. 11, 2009) (rejecting plaintiff's claim that MERS lacked authority to commence foreclosure proceedings on plaintiff's property).

/././

/././

Recently, a bankruptcy court for the Western District of Missouri held in In re Tucker, 10-61004, that MERS, in its role as nominee and beneficiary, has the ability to assign its interest the Deed of Trust. Specifically, the court commented as follows:

> The legal definition of a nominee is a "party who holds bare legal title for the benefit of others." The Deed of Trust here states that MERS holds legal title in its capacity "as nominee for the Lender and the Lender's successors and assigns." The Deed of Trust also grants MERS broad rights, again as a nominee for Lender and Lender's successors and assigns, "to exercise any or all" of the interests granted by the Borrower under the Deed of Trust, "including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender.
>
> This is more than sufficient to create an agency relationship between MERS and the Lender and its successors in Missouri, regardless what term they used to describe that relationship. All that is required is a manifestation of the parties' assent that the agent will act on behalf of the principal and subject to his control. An agency relationship arises where, as here, one party is specifically authorized to act on behalf of another in dealings with third persons. The language of the recorded Deed of Trust clearly authorizes MERS to act on behalf of the Lender in serving as the legal title holder to the beneficial interest under the Deed of Trust and exercising any of the rights granted to the Lender thereunder.

The court then concluded,

> Assuming that the note-holder is a member of MERS, thereby creating an agency relationship, the fact that MERS is identified as the beneficiary under a deed of trust for the benefit of the note-holder does not create a split between the note and deed of trust. And, again, since the deed of trust follows the note, this is true for subsequent parties to whom the note is properly assigned, so long as the assignees are also members of MERS. Here, as stated above, the evidence was that Aurora has possession of the original Note, which it produced at the hearing, and which is endorsed in blank. As I stated in In re Box, in order to prove that the movant is the holder of a note entitled to enforce it and the corresponding deed of trust, the movant must provide sufficient evidence that is in possession of the original note, or comply with the lost note provisions. In addition, the evidence was that all of the assignees of the Note, including Aurora, were members of MERS who was, at all times, the beneficiary under the deed of trust as agent for each of the assignees, including Aurora. As such, Aurora established that it was the holder of the Note, and thus entitled to enforce both the Note and Deed of Trust, on the date Aurora moved for relief from stay. Therefore, it had standing to bring that motion.
>
> Since MERS here has shown that it held the mortgage on behalf of the note holders in this case, MERS has proven its agency relationship and has shown that it did not split the mortgage and note and made a valid assignment of the mortgage.

Other courts have specifically addressed MERS ability to assign a mortgage or Deed of Trust.   In US Bank, N.A. v. Flynn, 2010 N.Y. Slip Op. 20093, 897 N.Y.S.2d 855 (Sup. Ct. 2010), a New York court considered the issue of whether MERS may assign a mortgage.   In discussing the validity of the MERS assignment, and the standing of the purported assignor to foreclose, the court logically commented:

> This court finds that where, as here, an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender or a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void (see Merritt v. Bartholick, 36 N.Y. 44, supra ). A foreclosure plaintiff thus has standing where its ownership of the note and mortgage derives from an assignment issued by a nominee named in the mortgage indenture, qualified as above, and such assignment is complete prior to the commencement of such action.
>
> Here, the plaintiff established that the written assignment of the note and qualifying mortgage by MERS, as nominee of the original lender, was complete and pre-dated the commencement of this action. The defendant's claim that the plaintiff's assignment was defective due to the lack of an ownership interest in the note on the part of the assignor, MERS, is thus rejected as unmeritorious.   US Bank, N.A. v. Flynn, 897 N.Y.S.2d at 859.

Thus, as the New York court explained, MERS, as nominee of the lender (and/or as the mortgagee of record), may assign the mortgage and note.  See also HSBC v. MacPherson, et al, N.Y. Supreme Court, Suffolk County, 08-29742 (the court commented that "[c]ontrary to [defendants] assertion that MERS did not have the authority to assign the note and mortgage to HSBC, the mortgage signed by him expressly grants it 'all those rights that applicable laws gives [sic] to lenders who hold mortgages in real property.' Thus, in addition to the right to commence foreclosure proceedings, under the broad powers granted to it on the face of the instrument, as nominee MERS possessed the right to assign the mortgage and the underlying note.'"

1    Additionally, the court in <u>Gregory Taylor, Appellant v. Deutsche Bank National Trust</u>

2   <u>Company, Appellee</u>, 5th District Court of Appeal, Case No. 5D09-4035 (July 2010), ruled that

3   an assignment from MERS was valid and held that MERS was "lawfully acting in the place of

4   the holder and was given explicit agreed upon authority to make such an assignment."   Other

5   courts in non-judicial foreclosure states have interpreted language similar to the language in the

6   subject Deed of Trust at issue in this case as allowing MERS to assign a mortgage.   In

7   <u>Commonwealth Property Advocates, LLC v. MERS, CitiMortgage, et al.,</u>  (Case No. 100400594,

8   4th Jud. Dist., August 4, 2010), the court affirmed MERS ability to foreclose and found that

9   MERS had executed a valid assignment of the Deed of Trust to CitiMortgage.   The court wrote,

10   "Under the express Terms of the Deed of Trust, '[t]he beneficiary for this Security Instrument is

11   MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors

12   and assignees of MERS.'  Moreover, pursuant to the express powers given to MERS, MERS was

13   granted the right to act in the stead of Sterns, including foreclosing and selling the Property.'"   It

14   concluded, "... the express terms of the Deed of Trust unassailably provide that MRS has the

15   right to foreclose upon the property, even if Stearns had sold the note.  It is also evident, pursuant

16   to the valid assignment of Deed of Trust, that CITI now holds the beneficiary interest."   Further,

17   in addressing the nature of MERS interest in a mortgage or Deed of Trust, the Supreme Court of

18   Minnesota, <i>in</i> <u>Jackson v. Mortgage Electronic Registration Systems, Inc.,</u> 770 N.W.2d 487

19   (Minn. 2009), the court held that MERS can hold legal title to the security instrument without

20   holding any interest in the promissory note.  MERS may act as the mortgagee and this does not

21   split the promissory note from the mortgage since the mortgage follows the note.

22    In this case, the Debtor was specifically advised that MERS was the beneficiary under the

23   deed of trust and it was a separate corporation acting solely as nominee for the lender.   In

24   acknowledgment of the Debtor's acceptance as MERS as the beneficiary under the deed of trust,

25   the Debtor initialed the page in which the advisement appeared.  (Declaration of Sandra Garcia-

26   **Exhibit B, page 2 of 19)**.  The Debtor was further advised and subsequently agreed that MERS,

27   as the beneficiary of the Deed of Trust and as nominee for the lender, holds only legal title to the

28   interests granted to him in the Deed of Trust, but if necessary, MERS has the right to exercise all

1    of the lender's interests, including, but not limited to, the right to foreclose and sell the Subject

2    Property; and to take any action required of the lender(which includes the right to assign the

3    Deed of Trust).    The Debtor again initialed the page in which the advisement appeared.

4    (Declaration of Sandra Garcia- **Exhibit B, page 3 of 19**).  As California courts have been clear to

5    recognize MERS as a valid beneficiary of a deed of trust when the plain language of the deed of

6    trust expressly designates MERS as the beneficiary and distinctly grants MERS the same rights

7    as the original lender and the lender's successors and assigns to foreclose, assign, or release the

8    Deed of Trust, an argument to the contrary by the Debtor who expressly agreed to the

9    aforementioned designation of MERS is inequitable and meritless.

10          d.      *MERS Does Not Purport to Own the Note, But Rather Serves as an
                    Agent for the Owner of the Note and Acts as the Beneficiary Of the Deed*
11                  *of Trust in Accordance With Its Contract with the Lender and*
                    *Agreement with the Debtor*
12

13          MERS as the nominee for lender agreed with the lender, its successors and assigns (as

14    long the successors and/or assigns are also MERS members) to contractual rules and practices

15    that are to govern their relationship—that is, the relationship between MERS and the lender.

16    This relationship is more fully set forth in the Hultman affidavit, attached hereto as Exhibit _.

17    And when MERS is designated the beneficiary under a deed of trust, the lender and MERS have

18    agreed that, in so doing, MERS will not obtain an ownership interest **in the note** that the lender

19    makes to the borrower. Rather, as agreed to between MERS and its members, and as agreed to by

20    MERS and the borrower, MERS will act solely as the beneficiary on the deed of trust, as

21    nominee for the lender. The lender holds the ownership interest in the note, and it is MERS (as

22    the lender's nominee) who is the designated beneficiary under the deed of trust. MERS holds an

23    *in rem* interest as the legal title holder to the security instrument. It is perfectly appropriate for

24    the lender to hold the ownership interest in the note, and for its nominee, MERS, to hold the

25    legal interest in the deed of trust in its capacity as beneficiary, acting as a nominee or agent for

26    the lender.  Courts around the country, as well as in California, have routinely and consistently

27    held that MERS as the beneficiary of the deed of trust and nominee for the lender, has an interest

28    in the Deed of Trust and may hold the lien on behalf of the lender.

1    Ciardi v. Lending Company, Inc., 2010 WL 2079735 (D. Az. 2010), provides a clear,

2    simple explanation of how the same evidence presented here defeats the "splitting" argument.

3    The Ciardi plaintiffs, like the Trustee in this case, asserted that MERS' status as beneficiary of

4    the deed of trust severed the deed from the note.  In dismissing the complaint for failure to state a

5    cause of action, the District Court rejected that theory:

6

7        [T]he very language of the deed of trust, which Plaintiffs quote in their amended
         complaint, states that MERS will serve as the nominee for the original lender as
8        well as the original lender's successors and assigns.  Thus, from the very language
         of the deed of trust, to which Plaintiff Bianca Ciardi agreed to in entering into the
9        home loan transaction, MERS is still acting as the nominee for the current holder
         of the promissory note. Id. at 3.
10

11    The same is true of the instant case.  The Deed of Trust states that MERS is "the

12    beneficiary under this Security Instrument" as "nominee for Lender and Lender's successors and

13    assigns." (Declaration of Sandra Garcia-Harris **Exhibit B**).  MERS was the agent of the original

14    lender when it originated the loan.  When Citibank obtained possession of the note to enforce

15    same, MERS became CitiBank's agent as Citibank is the successor and assignee of the original

16    lender, Bayrock Mortgage.

17    The Ciardi plaintiffs also claimed that MERS had no right to enforce the deed of trust.

18    Based on the plain language of that deed, the Court again disagreed in stating "[t]he deed of

19    trust, as quoted in Plaintiffs' amended complaint, designates MERS as the beneficiary and

20    authorizes MERS to take any action to enforce the loan, including the right to foreclose and sell

21    the property." Id. At 3.

22    Here, the Deed of Trust authorizes MERS, as nominee, "to exercise any or all of those

23    interests, including, but not limited to, the right to foreclose and sell the Property." (Declaration

24    of Sandra Garcia-Harris **Exhibit B**).

25    /././

26    /././

27    /././

28    /././

1  Finally, the <u>Ciardi</u> plaintiffs argued that the failure to disclose the assignment of the note

2  somehow nullified MERS' status as beneficiary.  Once again, the Court disagreed is stating that

3  "[T]he language in the deed of trust confers an agency relationship between MERS and the

4  original and **successive** lenders without the need to produce a separate agency contract each time

5  the promissory note is sold."  <u>Id.</u> at 4 (emphasis added).   As previously explained, the Deed of

6  Trust here contains identical language.

7  Other courts in California and around the country have affirmed MERS ability to act as

8  the beneficiary or mortgagee.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. Mortg. Elec. Reg. Sys., Inc.</u>, 252 Fed.Appx.

9  293 (11th Cir. 2007) (affirming grant of summary judgment to MERS on its foreclosure of

10  plaintiff's property)); <u>Mansour v. Cal- Western Recon. Corp.</u>, 2009 U.S. Dist. LEXIS 64113, at

11  12 (D. Ariz. July 15, 2009) (denying relief from motion to dismiss where plaintiff alleged MERS

12  lacked ability to foreclose); <u>Trent v. Mortg. Elec. Regis. Sys., Inc.</u>, 2007 WL 2120262 (M.D. Fla.

13  July 20, 2007) (granting MERS' motion to dismiss plaintiff's complaint challenging property

14  foreclosure); <u>In re Sina</u>, No. A06- 200, 2006 WL 2729544, at  2 (Minn. App., Sept. 26, 2006)

15  ("Because MERS is the record assignee of the mortgage, we conclude that MERS had standing

16  to foreclose").

17  As discussed in Section II (B) above, as of the date of the Note and Deed of Trust,

18  Bayrock Mortgage was a MERS member, and pursuant to the MERS' Rules of Membership and

19  the Deed of Trust, Bayrock Mortgage appointed MERS to act as its agent to hold the Deed of

20  Trust as nominee of Bayrock Mortgage, its successors and assigns.  Bayrock Mortgage remained

21  a MERS member during the entire time that it was the holder of the Note. Thereafter, Bayrock

22  Mortgage transferred the Note to EMC.  As of the date the Note was transferred, EMC was a

23  MERS member and pursuant to the MERS' Rules of Membership, EMC appointed MERS to act

24  as its agent to hold the Deed of Trust as nominee of EMC and its successors and assigns.  EMC

25  subsequently transferred the Note to Citibank.  As of the date the Note was transferred to

26  Citibank, Citibank was a MERS member.  Pursuant to the MERS' Rules of Membership,

27  Citibank appointed MERS to act as its agent to hold the Deed of Trust as nominee of Citibank

28

and its successors and assigns.  Citibank remains a MERS member and has been during the entire time that it has been the holder of the Note.

Notwithstanding the foregoing, MERS is no longer the beneficiary on the Deed of Trust since it assigned its interest in the Deed of Trust to the current owner and holder of the note, Citibank.  (See Declaration of William C. Hultman **Exhibit F**).  Further, as provided above, as Citibank qualifies as the holder of the specially indorsed Note with standing the enforce the Note and as the Note necessarily carries with it the security, without the need for any formal assignment, Citibank is the party entitled to enforce the Deed of Trust,

**6.    Debtor Will Not Be Prejudiced if the Order Sustaining Objection is Vacated**

Although the Debtor will be forced to address the merits of Citibank's right to enforce the Note and Deed of Trust in the event that the court vacates the Order Sustaining Objection, the Debtor will not suffer any prejudice. Specifically, Debtor will remain free to litigate the issues regarding Citibank's standing to enforce the Note and Deed of Trust. Moreover, given the procedural status of the Debtor's case, (Debtor has yet to file a Disclosure Statement and/or a Chapter 11 Plan), vacating the Order Sustaining Objection will not cause any delay in the administration of this case. To the contrary, a resolution of the Objection on the merits will facilitate the administration of this case as the parties' respective rights with respect to the Subject Loan will have been definitively determined for purposes of this case. Considering Citibank's meritorious defense to the Debtor's Objection and the strong policy favoring a ruling on the merits, this court should set aside the Order Sustaining Objection.

**B.    IF THE COURT REFUSES TO VACATE THE ORDER SUSTAINING OBJECTION, IT SHOULD RECONSIDER THE DISALLOWANCE OF CITIBANK'S CLAIM PURSUANT TO 11 U.S.C. § 502(j)**

**1.    Legal Standard.**

Section 502(j) of the title 11 of the United States Code provides that "[a] claim that has been…disallowed may be reconsidered *for cause*." (emphasis added). A reconsidered claim may be allowed or disallowed according to the *equities of the case*. 11 U.S.C. § 502(j) (emphasis added). Federal Rule of Bankruptcy Procedure 3008, which implements section 502(j), provides

that "[a] party in interest may move for reconsideration of an order…disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed. R. Bankr. P. 3008.

The standards to be applied in determining "cause" and "the equities" of the case, as set forth in section 502(j), are not further defined in the Bankruptcy Code or the Bankruptcy Rules. In re Eglenna F. Cassell, 206 B.R. 853, 856 (Bankr. W.D. Va. 1997) ("Congress has given little guidance on the prerequisites to a finding of cause[.]").  Courts, however, have found similarity between relief requested pursuant to section 502(j) and Bankruptcy Rule 3008 and relief requested pursuant to other rules pertinent to relief from judgments generally (i.e., Bankruptcy Rule 9023, which incorporates Federal Rule of Civil Procedure 59, and Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil Procedure 60), both of which cite to Bankruptcy Rule 3008). United States v. Motor Freight Express (In re Motor Freight Express, 91 B.R. 705, 710 (Bankr. E.D. Pa. 1988).  While there is no time limit to seek reconsideration under Bankruptcy Rule 3008, one court has held that where a motion for reconsideration is filed within 10 days, the more lenient standards of Bankruptcy Rule 9023 apply, while if reconsideration is sought more than 10 days after entry, the standards of Bankruptcy Rule 9024, which is more narrow, will apply.  In re Pride Companies, L.P., 285 B.R. 366 (Bankr. N.D. Tex. 2002).

"[A]ccordingly, many courts faced with a motion for reconsideration have turned to the 'excusable neglect' standard of Federal Rule of Civil Procedure 60(b) for instruction.  In re Eglenna F. Cassell, 206 B.R. at 856; see also In re Motor Freight Express, 91 B.R. at 710-11 ("The circumstances in which the application pursuant to [Bankruptcy Rule] 3008 can be maintained should be construed broadly, and include 'cause' and 'equities' which would be grounds for relief under either Fed.R.Civ.P. 59 or 60(b).").  Although "[t]he 'cause standard of § 502(j) is not identical to the more stringent 'excusable neglect' standard of Fed.R.Civ.P. 60(b) [,] the factors considered in an excusable neglect analysis 'are likely applicable to a cause analysis.'" In re Eglenna F. Cassell, 206 B.R. at 856 (citations omitted).

/././

1    "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations

2    in which the failure to comply with a filing deadline is attributable to negligence." Pioneer

3    Investment Services Co. v. Brunswick Associates Limited Partnership et al., at 394. The

4    determination of whether a movant's failure to timely respond is excusable is an equitable one,

5    taking account of all of the relevant circumstances surrounding the movant's omission. Id. at 394;

6    In re JWP Information Services, Inc., 231 B.R. 209 (Bankr. S.D.N.Y. 1999) (considered

7    excusable neglect in the context of 502(j)). Under Rule 60(b), 'excusable neglect' is liberally

8    construed, especially in those instances where the order or judgment forecloses trial on the merits

9    of a claim. In re Magourik, 693 F.2d 948 (9th Cir. 1982).

10    Generally, the courts accept the proposition that parties should not be penalized for the

11    negligence of their attorneys except in extreme and unusual circumstances. Caruso v. Drake

12    Motor Lines, Inc., 78 F.R.D. 586, 588 (E.D.Pa., 1978), citing Hassenflu v. Pyke, 491 F.2d 1094

13    (5th Cir. 1974). Dismissing an action as a result of attorney error essentially punishes the party

14    seeking to exercise their rights. See Hassenflu, 491 F.2d at 1094 (parties should not be punished

15    for their counsel's neglect except in extreme and unusual circumstances. As such, courts should

16    seek to resolve actions on the merits whenever possible.); See also Caruso v. Drake Motor Lines,

17    Inc., 78 F.R.D. 586, 588 (E.D.Pa. 1978) ("[A] standard of 'liberality,' rather than 'strictness'

18    should be applied in acting on a motion to set aside a default judgment, and that any doubt

19    should be resolved in favor of the petition to set aside the judgment so that cases may be decided

20    on their merits.") (citing Medunic v. Lederer, 533 F.2d 891, 894 (3d Cir. 1976)).

21
        **2.    The Equities of this Case Support the Reconsideration of Citibank's
22              Disallowed Claim**

23    The Ninth Circuit has applied the approach of looking to the "excusable neglect" standard

24    of Federal Rule of Civil Procedure 60(b) for instruction on finding "cause" under section 502(j)

25    of the Bankruptcy Code. See In re Resources Reclamation Corp. of America, 34 B.R. 771 (9th

26    Cir. BAP1983). In In Resources Reclamation, the Bankruptcy Appellate Panel found that the

27    following factors, deemed relevant in a Federal Rule of Civil Procedure 60(b) analysis, are also

28    relevant in determining the existence of cause of for a reconsideration motion under section

502(j) and Bankruptcy Rule 3008:

   (i) whether granting the delay will prejudice the debtor or other creditors;

   (ii) the length of the delay and its impact on efficient court administration;

   (iii) whether the delay was beyond the reasonable control of the person whose duty it was

   to perform;

   (iv) whether the creditor acted in good faith;

   (v) whether clients should be penalized for their counsel's mistake or neglect; and

   (vi) whether the claimant has a meritorious claim.

In re Resources Reclamation Corp., 34 B.R. at 773-74. For the reasons detailed more fully below, each of these factors support the reconsideration of Citibank's disallowed claim.

### a. *Reconsidering the Disallowance of Citibank's Claim will not Prejudice the Debtor or other Creditors*

Reconsidering the Order Sustaining Objection will not prejudice the Debtor as the Debtor's Chapter 11 case has been pending for approximately seven (7) months and the Debtor has yet to file a Disclosure Statement and/or Chapter 11 Plan.  Moreover, there has been no liquidation of assets of the estate, no irrevocable modifications of the loans secured by real properties assets of the Debtor's bankruptcy estate, and the Debtor continues to retain all cash collateral in his debtor-in-possession account. Moreover, all of the remaining claims of Debtor's bankruptcy estate remain status quo.  (See Req. J. N., **Exhibit H**). Further, the court specifically ordered that the disallowance of claim No. 5 does not alter, amend, modify, or affect any trust deed referenced in the proof of claim or the rights of the actual owner of the note which is referenced in Proof of Claim No. 5.  Thus, the court making a definitive determination regarding the "actual owner" of the Note will facilitate the Debtor in preparing a Disclosure Statement and/or Chapter 11 Plan that provides for the repayment of debts, maintenance of real properties, and the future of his janitorial business. In addition, this determination will enable the Debtor to provide adequate protection payments to the real party in interest, thereby eliminating the necessity for the Debtor to maintain the cash-collateral generated from the Subject Property in his debtor-in-possession account.

1       Reconsidering the Order Sustaining Objection will not prejudice other creditors of the

2 Debtor's bankruptcy estate. As of the date of this motion, the Debtor has yet to affirmatively

3 determine the identity of the entity entitled to enforce the Note secured by the real property

4 located at 1518 Michael Drive, Tracy, California 95377 (the "Tracy Property"). Subsequent to

5 filing his Objection to Citibank's Proof of Claim, Debtor filed the BAC Objection wherein

6 Debtor made similar allegations regarding the only other secured creditor of the Debtor's estate,

7 BAC Home Loan Servicing, L.P.'s ("BAC") standing to assert its claim. Although Debtor also

8 appears to have failed to properly serve BAC pursuant to Fed. R. Bankr. P. 7004, the BAC

9 Objection was sustained without opposition.  (See Req. J. N., **Exhibit I**). However, the court's

10 July 9, 2010 Civil Minute Order on the BAC Objection was sustained without prejudice to the

11 filing of a proof of claim by the party entitled to assert a claim in this case and the court did not

12 set a deadline for such a party to file a proof of claim. Accordingly, notwithstanding the claims

13 bar deadline, the other secured creditor in this case has an indefinite amount of time to come

14 forward to prove ownership of the Note secured by the Tracy Property.  (See Req. J. N., **Exhibit

15 I**). Since the ultimate treatment of the BAC claim has yet to be determined, and the Order

16 Sustaining Objection did not invalidate the Note and/or Deed of Trust, none of the creditors of

17 the Debtor's bankruptcy estate will be prejudiced in the event the court reconsiders its Order

18 Sustaining Objection, as a ruling on the merits of the Debtor's Objection will foster, not hinder,

19 the administration of this case.

20               **b. *Citibank's Delay in Filing its Motion to Vacate will Not Have a Negative
Impact of Efficient Court Administration***

21

22       Citibank's short delay will not negatively impact efficient court administration as the

23 Order Sustaining Objection did not alter, amend, modify, or affect any trust deed referenced in

24 the proof of claim or the rights of the actual owner of the note as the court's Order Sustaining

25 Objection anticipated the "actual owner" would come forward at some point to enforce its

26 interest in the note.  Additionally, if the issue regarding the "actual owner" of the note is not

27 resolved at this stage of the case, it will likely be revisited again as an objection to confirmation

28 of the Debtor's Chapter 11 Plan or in response to a motion for relief from stay because the

Debtor is currently retaining all cash collateral in his debtor-in-possession account and not remitting any adequate protection payments to Citibank.    (See Req. J. N., **Exhibit H**). Accordingly, it is more efficient for the parties and the court to resolve the issue regarding the owner of the note at this early stage of the case rather than addressing it in the context of an objection to plan confirmation which would delay administration of this case or within the summary proceeding of a motion for relief from the automatic stay.

### c. *Citibank Acted Promptly in Filing its Motion to Vacate and Any Delay Was Minimal*

As discussed in Section A(2) above, the Order Sustaining Objection was entered on or about May 27, 2010, less than four (4) months from the date of this motion.   To date, no irrevocable acts have occurred in this case, as the Debtor has yet to file a Disclosure Statement and/or Chapter 11 Plan, and the court is not being asked to do undo that which was done. Moreover, Citibank's delay is reasonable in light of the fact that other courts have determined six and seven month delays to be reasonable, when one considers that the Debtor failed to properly serve the Objection in accordance with Rule 7004. Finally, Citibank's counsel took immediate action upon discovering the Order Sustaining Objection to attempt to resolve this matter without the need for court intervention, but was unable to obtain the Debtor's cooperation to avoid further litigation in the bankruptcy court.

### d. *Citibank Acted in Good Faith and Its Conduct Was Not Culpable*

An order may be vacated on grounds of mistake, inadvertence, surprise, or excusable neglect.  Fed. R. Civ. P. 60(b)(1).  "Excusable neglect" is not defined by the Federal Rules, but is understood to encompass situations where the filing deadline was missed due to something within the control of the moving party.   Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al., 507 U.S. 380, 394 (1993); see also  Briones v. Riviera, 116 F.3d 379 (9th Cir. 1997).

As previously discussed, at all times relevant herein, Citibank and its counsel have acted in good faith. Notwithstanding the Debtor's failure to properly serve the Objection on Citibank, Citibank's counsel acknowledges it received notice of the Objection. Through an act of mistake

of inadvertence, Citibank's counsel failed to calendar the response deadline and hearing on the Objection. However, a calendaring error does not amount to culpable conduct. Instead, Citibank's counsel's calendaring error falls directly within the conduct contemplated by the "excusable neglect" standard. Moreover, courts have expressly recognized that a party generally should not be penalized for the conduct of its counsel. Based upon the foregoing, this court should reconsider its Order Sustaining Objection.

### e. Citibank Has a Meritorious Defense to the Debtor's Objection

Debtor's Objection incorrectly states that Citibank does not have standing to enforce the terms of the Note and Deed of Trust. As discussed <u>supra</u>, Citibank has standing to enforce both the Note and Deed of Trust. Accordingly, Citibank has a meritorious defense to the Debtor's Objection to Claim and, thus, the balance of the equities demonstrate that this dispute should be decided after the court has the opportunity to conduct a full review of the merits rather than based on a default order.

### IV.

### <u>CONCLUSION</u>

Citibank is entitled to have the Order Sustaining Objection vacated on several grounds. First, the order should be vacated due to the Debtor's failure to properly serve the Objection pursuant to Fed. R. Bankr. P. 7004. Second, the order should be vacated on the grounds that Citibank's counsel's conduct regarding the lack of calendaring the Objection amounts to excusable neglect. Finally, the order should be vacated because Citibank does, in fact, have standing to enforce both the Note and Deed of Trust. In the alternative, the court should reconsider the Order Sustaining Objection as the balance of the equities favor the court reconsidering Citibank's disallowed claim.  The same grounds for vacating the Order Sustaining Objection support this court's reconsideration of the order. Moreover, the balance of the equities in this case weighs in favor of reconsidering the Order Sustaining Objection. Specifically, reconsidering the Order Sustaining Objection will not be a detriment to the Debtor and/or other creditors, as a determination regarding the "actual owner" of the Note will facilitate, not hinder, the administration of the Debtor's bankruptcy case. Finally, Citibank acted promptly and without

delay in bringing this motion upon its discovery of the Order Sustaining Objection and after all reasonable efforts to resolve this controversy with the Debtor were exhausted.

**WHEREFORE**, Citibank respectfully prays:

1.     That the court vacate and set aside the Order Sustaining Objection and set the issue for a briefing schedule;

2.     In the alternative, the Court should reconsider the Order Sustaining Objection and set a hearing on merits at a time convenient for the court and the parties;

3.     For reasonable attorneys' fees and costs; and

4.     For such other relief as the court deems just and proper.

PITE DUNCAN, LLP

Dated: September 24, 2010          By: /s/ *Eddie R. Jimenez*
                                   EDDIE R. JIMENEZ
                                   Attorneys for CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-3